**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA**,<br><br>Plaintiff,<br>v.<br><br>**STATE OF CALIFORNIA**,<br><br>Defendant.<br>_____/<br><br>**CHOWCHILLA (CHAUSHILHA) TRIBE OF YOKUTS**,<br><br>Putative Intervenors.<br>_____/ | 1:15-cv-00419-AWI-SAB<br><br>**ORDER DENYING PUTATIVE INTERVENOR DEFENDANT'S MOTION TO INTERVENE**<br><br>(Doc. #11) |

**I. Introduction**

Plaintiff North Fork Rancheria of Mono Indians of California ("North Fork") has brought suit against the State of California ("State" or "California") based on an alleged failure of the State to negotiate in good faith for the purpose of entering into a Tribal-State compact governing the conduct of class III gaming activities as required by the Indian Gaming Rights Act ("IGRA"). *See* 25 U.S.C. § 2710(d)(3)(A). The Chowchilla Tribe of Yokuts ("Chowchilla Tribe") have filed a motion to intervene in this suit as a matter of right, or in the alternative, permissively. Doc. 11. It is the subject of that motion that the Court now addresses. Based on the foregoing, this Court will deny the putative intervenor's motion to intervene.

1

**II. Background**

<u>Authorization of Tribal Gaming</u>

In response in part to the Supreme Court's decision in *California v. Cabazon Band of Mission Indians,* 480 U.S. 202 (1987), where the Supreme Court rejected an attempt by the State of California to enforce its penal code section prohibiting operation of bingo halls against an Indian tribe, Congress enacted IGRA. 25 U.S.C. §§ 2701, 2702; *See Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 714-715 (9th Cir. 2003). IGRA was designed "to provide a statutory basis for the operation and regulation of gaming by Indian tribes." *Idaho v. Coeur D'Alene* Tribe, --- F.3d ----, 2015 WL 4461055 (9th Cir. July 22, 2015) (citation omitted). IGRA created three classes of gaming, each subject to a different regulatory scheme. *Artichoke Joe's*, 353 F.3d at 715. Class I gaming consists of "social games sole for prizes of minimal value or traditional forms of Indian gaming … in connection with tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Class II gaming consists of bingo, and card games that are explicitly authorized or not explicitly prohibited by the State. 25 U.S.C. § 2703(7)(A).[1] Class III gaming activities are defined residually; all gaming activity that is not class I or class II activity falls within class III. In order for a tribe to conduct class III gaming it must, among other things, enter into a Tribal-State compact with the State.

On March 7, 2000, California voters approved Amendment 1A to the California Constitution, permitting federally recognized Indian tribes to operate certain specified betting games on Indian lands if authorized by the Governor in a Tribal-State compact that is then ratified by the legislature. 2000 Cal. Legis. Serv. Prop. 1A – Gambling on Tribal Lands (Ca. 2000); *adding* Cal. Const. Art. IV, §19(f).

<u>Gaming Site Acquisition History</u>

North Fork is a federally recognized Indian tribe, listed in the Federal Register.[2] Prior to the initiation of the plan to build a gaming facility, the Tribe possessed only a 61.5 acre-parcel in

---

[1] "Banking" card games – where the player plays against the house – and slot machines are categorically excluded from Class II gaming. 25 U.S.C. §2703(7)(B)

[2] *See* Bureau of Indian Affairs Tribal Leaders Directory at p. 68, located at http://www.bia.gov/cs/groups/public/documents/text/idc002652.pdf (last accessed August 14, 2015).

1  North Fork, California (which lies within the Sierra National Forest), held in trust by the United
2  States for development of a community center, a youth center, and homes. Complaint, Doc. 1.
3  ("Compl.") at ¶ 33; *but see* Compl. Exh. B, Dept. of the Interior, Bureau of Indian Affairs, Letter
4  to Gov. Brown, Sept. 1, 2011, Doc 1-4 ("BIA Letter") at 3 ("The Tribe currently possesses 80
5  acres of land (Rancheria) in Madera County, which is held in trust for its benefit by the United
6  States."); Compl at ¶ 31. In 2004, the Tribe put into action its plan to build a gaming facility by
7  starting down the path to acquisition of land in Madera County. Compl. at ¶ 36. A lengthy
8  environmental impact study ("EIS") – with opportunity provided for public notice and comment
9  – was conducted and the results published on August 6, 2010. BIA Letter at 20.

10  After reviewing the results of the EIS, the submissions of state and local officials and
11  surrounding Indian tribes,[3] and the likely economic impact on North Fork and the surrounding
12  communities, the BIA recommended approval of (and requested the California Governor's
13  concurrence with) the Tribe's bid for acquisition in trust of an approximately 305 acre plot of
14  land in Madera County ("Madera Parcel") for the benefit of North Fork pursuant to the Indian
15  Reorganization Act ("IRA"), 25 U.S.C. § 465, in anticipation of North Fork's construction of a
16  class III gaming facility as contemplated by IGRA. *See* Compl. at ¶39-40; *see generally* BIA
17  Letter. California's Governor, Edmund Brown, Jr., gave his concurrence with the BIA
18  recommendation on August 30, 2012. His letter of concurrence detailed his reasoning for
19  supporting the plan: the thoroughness of the federal inquiry; the benefit to North Fork; the
20  benefit to surrounding tribes, as a result of the contributions to the Revenue Sharing Trust Fund;
21  the relatively rural nature of the area that would house the gaming facility; and the North Fork's
22  significant historical connection with the land.

23  On February 5, 2013, the federal government took an approximately 305 acre plot of land
24  in Madera County into trust for North Fork pursuant to the Indian Reorganization Act ("IRA"),

---

[3] The Assistant Secretary for the BIA made note that he considered the comments by the Picayune Rancheria of Chukchansi Indians ("Picayune") despite the fact that no tribe fell within the definition of "nearby Indian tribe" because no other recognized tribe possessed lands within the required 25-mile radius of the proposed gaming facility. BIA Letter at 42 (citing 25 C.F.R. § 292.2).

25 U.S.C. § 465, in anticipation of North Fork's construction of a class III gaming facility as contemplated by IGRA. Compl. at ¶¶ 2, 43.

Tribal-State Compact History

In July of 2004, soon after the Tribe started down the road to acquiring the Madera Parcel, it entered into discussions with representatives of the then-Governor, Arnold Schwarzenegger, regarding framing of a Tribal-State compact. Compl. at ¶ 44. Those discussions bore fruit in April of 2008 when Governor Schwarzenegger and the Tribe executed a gaming compact ("2008 Compact"). However, because the acquisition of the Madera Parcel was stalled due to the lengthy EIS process, the 2008 Tribal-State compact was never presented to the legislature.

A second draft of the Tribal-State compact prepared by the Governor's office and the North Fork Tribe was presented to Governor Brown.[4] That second draft addressed the concerns raised by the EIS by including provisions designed to minimize the environmental impact of the gaming facility. *See* Compl. Exh. L, Docs. 1-14 – 1-16 ("2012 Compact"). On the same date that the Governor gave his concurrence to the BIA recommendation for taking the Madera Parcel into trust, August 30, 2012, his office executed a Tribal-State compact with North Fork and forwarded that compact to the legislature for ratification. Compl. at ¶ 48. Ratification of the 2012 Compact was proposed in the 2013-2014 California Legislative Session as Assembly Bill 277 ("AB 277").[5] AB 277 (Hall), 2013-2014 Leg. Sess. (Cal. July 3, 2013) *chaptered at* 2013 Stat. Ch. 51; Cal. Govt. Code § 12012.59.

On May 2, 2013, the California Assembly passed AB 277; on June 27, 2013, the California Senate passed AB 277; and on July 3, 2013 the Governor approved AB 277 and it was filed with the Secretary of State. *See* Cal.Govt.Code. § 12012.59. At some time shortly

---

[4] Although not the focus of this case, a parallel compact was submitted along with the North Fork Compact; that compact was between the Wiyot Tribe and the State. Generally, the Wiyot compact provided that the Wiyot would not seek to build a gaming facility and in exchange they would receive a share of the profits obtained from the North Fork gaming facility.

[5] AB 277 also proposed ratification of the Wiyot Compact, as the two were tied to the same proposed gaming facility.

thereafter,[6] California's then-Secretary of State, Deborah Bowen, forwarded the compact to the Secretary of the Interior for review and approval pursuant to 25 U.S.C. § 2710(d)(8). Compl. at ¶ 49. *See* Cal. Govt. Code § 12012.25(f). On October 22, 2013, the Assistant Secretary of the Interior, Bureau of Indian Affairs, issued notice that the compact between the State and North Fork was approved (to the extent that it was consistent with IGRA). Notice of Tribal-State Class III Gaming Compact taking effect, 78 FR 62649-01 (Oct. 22, 2013).

On July 19, 2013, a ballot summary and title were issued by the Attorney General of California's office for what would be commonly known as California Proposition 48 – Referendum on Indian Gaming Compacts (2014).[7] On October 1, 2013, proponents of the referendum submitted 784,571 signatures in support of placing Proposition 48 on the ballot for the November 2014 election.[8] The then-Secretary of State, Debra Bowen, certified that the signatures submitted contained a sufficient number of valid votes to place the matter on the ballot. *Id.*; *see* Cal. Const. Art. II, § 9(b).

On November 4, 2014, California voters rejected Indian Gaming Compacts Referendum, labeled Proposition 48, to ratify the North Fork and Wiyot Tribe compacts.[9] Based on that referendum vote, the State of California refuses to recognize the existence of a valid Tribal-State compact with North Fork. The validity of the referendum and compact is the subject of litigation now pending before the California Fifth District Court of Appeal. *See Stand Up for California v. State of California et al.*, 5th DCA Case No. F070327, filed Dec. 27, 2014.

---

[6] The record is unclear as to the exact date that the California Secretary of State submitted the 2012 Compact to the United States Secretary of the Interior. However, based on the notice of approval issued by the Secretary of the interior – issued 45 days after its submission to the secretary by the Tribe and the State – it is likely that the California Secretary of State submitted the compact on or about September 7, 2013.
[7] Title and Summary located at https://www.oag.ca.gov/system/files/initiatives/pdfs/Title%20and%20Summary%20%2813-0007%29.pdf? (last accessed August 14, 2015); Title and summary proposal located at https://oag.ca.gov/system/files/initiatives/pdfs/13-0007%20(13-0007%20(Referendum%20of%20AB%20277)).pdf (last accessed August 14, 2015).
[8] Referendum Signatory Recognition Letter, Debra Bowen, November 20, 2013, located at https://web.archive.org/web/20141028155549/http://www.sos.ca.gov/elections/ccrov/pdf/2013/november/13101km.pdf (last accessed August 14, 2015) ("Recognition Letter").
[9] Index of California Referenda located at http://www.sos.ca.gov/elections/ballot-measures/referendum/ (last accessed August 14, 2015).

After the 2014 referendum, the State refused to enter into negotiations with North Fork regarding a new Tribal-State compact, concluding that any attempt would be futile. Compl. at ¶ 60, Exh. G. On that basis, North Fork brings the instant action, contending that the State's failure to negotiate is a breach of the "good faith" requirement of 25 U.S.C. § 2710(d)(3)(A).

IGRA Remedial Framework

Section 2710(d)(3)(A) of Title 25 of the United States Code provides:

> Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

The good faith negotiation section of IGRA is not without teeth. Sections 2710(d)(7)(B)(i)-(vii) provide a detailed remedial scheme designed to prevent a State from seeking to wrongfully inhibit an Indian tribe from engaging in Class III gaming activity. Under that procedure, 180 days after an Indian tribe requests the opening of negotiations with the state, that Indian tribe may bring suit to (1) compel the State to enter into negotiations with the tribe for the purpose of entering into a compact, or (2) to compel a state to negotiate in good faith. 25 U.S.C. § 2710(d)(7)(B)(i); 25 U.S.C. § 2710(d)(7)(A)(i).[10] In one such action, an Indian tribe must first introduce evidence that (1) a Tribal-State compact has not been entered, and (2) the state (a) did not respond to the request to negotiate, or (b) did not respond to the request in good faith. 25 U.S.C. § 2710(d)(7)(B)(ii). Thereafter, the burden shifts to the State to prove that it negotiated in good faith to conclude a compact. *Id*.

Based on the submissions of the Indian tribe and the State, the court must determine whether the State failed to negotiate in good faith. In making that determination the court may

---

[10] In *Seminole Tribe v. Florida*, 517 U.S. 44 (1996) the Supreme Court held that Congress sought to impermissibly abrogate Eleventh Amendment immunity in authorizing Indian tribes to sue the state pursuant to IGRA. In order to avoid offending the Eleventh Amendment, a State must explicitly consent to suit. *Id*. California has consented to suit. Cal. Govt. Code § 98005 ("[T]he State of California … submits to the jurisdiction of the courts of the United States in any action brought against the state by any federally recognized California Indian tribe asserting any cause of action arising from the state's refusal to enter into negotiations with that tribe for the purpose of entering into a different Tribal-State compact pursuant to IGRA or to conduct those negotiations in good faith….")

consider "public interest, public safety, criminality, financial integrity, and adverse economic impacts on existing gaming activities"; the court "shall consider any demand for taxation" by the State as evidence that negotiation was not conducted in good faith. 25 U.S.C. § 2710(d)(7)(B)(iii). If the court finds an absence of good faith, it "shall order the state and Indian Tribe to conclude … a compact within a 60-day period." *Id.*

If, after 60 days, no compact has been entered, the parties will submit to mediation wherein each party will submit a proposed compact to the mediator and the mediator will select the compact most in line with federal law and the findings of the court. 25 U.S.C. § 2710(d)(7)(B)(iv). Thereafter the State has 60 days to consent to the compact selected. 25 U.S.C. § 2710(d)(7)(B)(vi)-(vii). If the State fails or refuses to do so, the mediator will forward the selected compact to the Secretary of the Interior who prescribes, in consultation with the Indian tribe, procedures under which Class III gaming may be conducted. 25 U.S.C. § 2710(d)(7)(B)(vii).

### III. Discussion

Federal Rule of Civil Procedure 24 provides for both intervention as a matter of right and permissive intervention.

*a. Intervention by Right*

A court must permit an applicant to intervene when:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. [citation] [¶] Each of these four requirements must be satisfied to support a right to intervene. [citation] While Rule 24 traditionally receives liberal construction in favor of applicants for intervention. [citation], it is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met. [citation].

*Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (quotation marks and citations omitted); *see* Fed. R. Civ. P. 24(a)(2).

The fourth consideration is fatal to the Chowchilla Tribe's bid for intervention as a matter of right.[11] "The 'most important factor' to determine whether a proposed intervenor is adequately represented by a present party to the action is 'how the [intervenor's] interest compares with the interests of existing parties.'" *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950-951 (9th Cir. 2009) (citation omitted). Under Ninth Circuit precedent, the putative interveror's burden is to show that representation "may be inadequate." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1498 (9th Cir. 1995); *see Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (citation omitted). The Court further noted:

> In determining adequacy of representation, we consider [three factors: (1)] whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; [(2)] whether the present party is capable and willing to make such arguments; and [(3)] whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Forest Conservation Council,* 77 F.3d at 1498-99; *accord Perry*, 587 F.3d at 952; *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir 2003).

This action is limited to the issue of whether the State has violated the duty imposed by IGRA to negotiate with North Fork in good faith. *See* 25 U.S.C. § 2710(d)(3)(A); 25 U.S.C. § 2710(d)(7)(B)(ii). There are only two possible outcomes that this Court could come to in deciding that question; either the State negotiated in good faith or the State did not negotiate in good faith.[12] It is North Fork's position that the State did not negotiate in good faith. The Chowchilla Tribe seems to believe that the State shares the same interest as North Fork. The Chowchilla Tribe draws the Court's attention to Governor Brown's support of the North Fork gaming compact and facility, the California Legislature's ratification of the compact, and the statements attributed to Governor Brown after the referendum vote to the effect that the State "has not carried through [its] negotiations all the way in good faith" because the voters voted

---

[11] The Court does not address or decide the remaining considerations for intervention.

[12] There is an argument to be made that "negotiation" and "good faith" are two separate analytical requirements such that the State's refusal to negotiate, regardless of whether that refusal was in good faith or not in good faith, is actionable under the remedial procedures of 25 U.S.C. § 2710(d)(7)(B)(ii)-(vii). In either case, the outcomes available to the Court are the same; to compel mediation (based on a refusal to negotiate or bad faith negotiation) or not to compel mediation (based on a good faith attempt at negotiation).

8

"No" on Proposition 48. Doc. 11-1 at 20.[13] For the following reasons, the Chowchilla Tribe's position that the State will seek to advance the Governor's alleged motivations over the will of the people as expressed in the voters' "No" vote to Proposition 48 is unavailing.

Since the referendum vote, the State of California has and does maintain the position that the referendum vote was valid under California law and rendered any future negotiation with North Fork futile, such that the State's refusal to negotiate is not in bad faith. Doc 16 at 5-7; Doc 9 ("State's Answer") at ¶¶ 6, 78; *see Stand Up for California v. State of California, et al.*, 5th DCA Case No. F070327. Despite the Chowchilla Tribe's concerns that the State is putting forth a false defense – all the while secretly intending to fail, permitting the construction of the North Fork gaming facility – there is no evidence before this Court that anything of the like is taking place. The Defendant and the Chowchilla Tribe share the same objective in this case – namely, defending the referendum vote and the State's subsequent decision not to engage in further negotiations with North Fork.

Because the State and the Chowchilla Tribe "share the same 'ultimate objective,' a presumption of adequacy of representation applies…." *Perry v. Proposition 8 Official Proponents*, 587 F.3d at 951 (citation omitted). The Chowchilla Tribe can rebut that presumption only with a "compelling showing" to the contrary. *Id.*

There is a further assumption that a State adequately represents its citizens. *Gonzales v. Arizona,* 485 F.3d 1041, 1052 (9th Cir. 2007) (denying intervention where the State had a history of defending the ballot measure that the putative intervenor sought to intervene in support of); *Prete*, 438 F.3d at 956 (rejecting a bid for intervention by supporters of a ballot measure when those putative intervenors alleged inadequate representation by the state defendant as a result of

---

[13] According to the Chowchilla Tribe, Governor Brown made the following statement about whether the United States Department of the Interior might permit construction of the North Fork gaming facility despite the referendum vote:
> "The case is, we negotiated in good faith and got a compact … and the Legisalture voted for it, and the people in a referendum voted "No." So, the legal question is very simple: What is the authority and what should the decision be of the Interior Department when a state has not carried through their negotiations all the way in good faith?"

The Chowchilla Tribe cited to the Complaint for this quotation. Doc. 11-1 at 20 (citing Doc. 1 at ¶ 4). No such quotation is present in the Complaint.

"budget constraints," a narrower interest in upholding the measure, and a lack of specialized knowledge in signature gathering); *Arakaki*, 324 F.3d at 1086. The Chowchilla Tribe's reliance on pre-referendum support of the compact and a single statement made by the Governor during a press conference do not rise to the requisite level – a "very compelling showing" – to overcome the assumption that the State adequately represents its constituents. *See Id*.

Further, despite the Chowchilla Tribe's assertion that it "intends to raise claims that may not be raised by the [S]tate," (*see* Doc. 11-1 at 6) it has not articulated any arguments that it would raise on the issue of whether the State negotiated in good faith. From Chowchilla Tribe's briefing, it appears that the majority of the argument that it would introduce involve issues outside of the limited scope of this litigation, including: the environmental impact of a gaming facility, the Chowchilla Tribe's attempts at federal recognition, and the historical boundaries of the North Fork and the Chowchilla Tribe. Injection of those unrelated issues into this action would serve only to muddy the waters; such action is not permitted. *Arakaki*, 324 F.3d at 1086 (citing *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993).

Next, this Court has not been presented with any evidence that the State is not capable of or willing to make any of the available arguments toward defending its refusal to negotiate after the referendum. [14] The Chowchilla tribe is an outsider to the negotiations between the State and North Fork. If anything, the Chowchilla tribe would be in a worse position than the State to argue or offer proof of necessary elements to the proceedings.

On these grounds, the Chowchilla tribe's motion for intervention as a matter of right will be denied.

*b. Permissive Intervention*

Permissive intervention, governed by Rule 24(b), provides that the court may permit a party to intervene if (i) there is a conditional right to intervene provided in a federal statute, (ii) the party's claim or defense shares a "common question of law or fact" with the main action, and

---

[14] The Chowchilla Tribe has also noted that it will "raise …[questions] including whether North Fork may upset the balance IGRA established, by using the 'Secretarial Provisions' to circumvent California's gaming compact ratification process." Based on the State's position in *Stand Up for California*, and its present briefing, the State will advance that position.

Case 1:15-cv-00419-AWI-SAB   Document 20   Filed 08/26/15   Page 11 of 11

(iii) the intervention will not unduly "delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

Unlike intervention as of right, "[t]he decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy." *Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990). That said, Ninth Circuit courts regularly deny requests for permissive intervention based on the movant's inability to satisfy the requirements of Rule 24(a), for intervention as a matter of right. *E.g., Perry*, 587 F.3d at 955; *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir.1993); *see Viet Bui v. Sprint Corp.*, 2015 WL 3828424 at *3 (E.D. Cal. June 19, 2015).

Because the Chowchilla Tribe and the State share the same interest, and because this Court expects that the State will make all relevant defenses available to it, allowing intervention would not serve judicial economy or add anything of value to the proceedings. Further, because the Chowchilla Tribe cannot meet the requirements of Rule 24(a), its motion for permissive intervention will be denied.

### IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Chowchilla Tribe's motion for intervention as a matter of right is DENIED;
2. The Chowchilla Tribe's motion for permissive intervention is DENIED;
3. The Clerk of the Court is respectfully directed to change the party designation for the Chowchilla Tribe to "Non-Party" but not to remove it from the service list.

IT IS SO ORDERED.

Dated: __August 26, 2015__  _____
   SENIOR DISTRICT JUDGE