KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
SARA J. DRAKE, State Bar No. 102565
Senior Assistant Attorney General
NEIL D. HOUSTON, State Bar No. 168058
Deputy Attorney General
WILLIAM P. TORNGREN, State Bar No. 58493
Deputy Attorney General
TIMOTHY M. MUSCAT, State Bar No. 148944
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 322-5184
  Fax: (916) 323-2319
  E-mail: Timothy.Muscat@doj.ca.gov
*Attorneys for Defendant State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA,**<br><br>                     Plaintiff,<br><br>      v.<br><br>**STATE OF CALIFORNIA,**<br><br>                 Defendant. | 1:15-cv-00419-AWI-SAB<br><br><br>**STATE OF CALIFORNIA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:        11/09/15<br>Time:       1:30 p.m.<br>Dept:       2<br>Judge:     The Honorable Anthony W. Ishii<br>Trial Date:  N/A<br>Action Filed: 3/17/2015 |

1

**TABLE OF CONTENTS**

2

**Page**

3 Introduction ..................................................................................................... 1

4 Argument ......................................................................................................... 1

5    I.    IGRA does not guarantee tribes the right to conduct class III gaming; in California, such gaming is only permitted subject to the terms of the California Constitution ................................................................................ 1

6

7         A.    IGRA does not specify or control the internal procedures states must follow to enter into gaming compacts ......................................... 4

8         B.    North Fork agreed to follow state law in the compact it signed ................. 6

         C.    The passage of time between compact signing and the referendum did not constitute bad faith negotiations by the state ............................... 7

9

10   II.    The State's refusal to negotiate as to the Madera parcel cannot constitute bad faith under IGRA ................................................................................... 8

11   III.    The Tribe's suit is barred by the State's Eleventh Amendment immunity ............. 9

Conclusion ...................................................................................................... 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
**Page**

3 CASES

4 *American Federation of Labor-Congress of Industries Organizations v. Eu*
   36 Cal. 3d 687 (1984) ..................................................................................................6
5

6 *Hotel Employees & Restaurant Employees Internat. Union v. Davis*
   21 Cal. 4th 585 (1999) ................................................................................................4

7

8 *In re Indian Gaming Related Cases*
   147 F. Supp. 2d 1011 (E.D.Cal. 2009)........................................................................7

9 *In re Indian Gaming Related Cases*
   331 F. 3d 1094 (9th Cir. 2003).....................................................................................7
10

11 *Independent Energy Producers Ass'n v. McPherson*
   38 Cal. 4th 1020 (2006) ..............................................................................................6

12 *Pueblo of Santa Ana v. Kelley*
   104 F. 3d 1546 (10th Cir. 1997)...............................................................................5, 6
13

14 *Seminole Tribe of Florida v. Florida*
   517 U.S. 44 (1996)......................................................................................................2, 9
15

16 *Wisconsin Winnebago Nation v. Thompson*
   22 F. 3d 719 (7th Cir. 1994)......................................................................................8, 9

17

18 STATUTES

19 25 U.S.C.
       § 2710(d)(1)(B).......................................................................................................1, 4
20    § 2710(d)(3)(A)........................................................................................................7, 8
      § 2710(d)(7)(A)(i)....................................................................................................8
21    § 2710(d)(7)(B)(ii) ..................................................................................................8
      § 2710(d)(7)(B)(iii)(I) .............................................................................................6
22    § 2710(d)(7)(B)(iii)-(vii).........................................................................................8

23 California Government Code
24    § 12012.5..................................................................................................................3
      § 12012.46................................................................................................................3
25    § 12012.48................................................................................................................3
      § 12012.49................................................................................................................3
26    § 12012.51................................................................................................................3
27    § 12012.53................................................................................................................2

28

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

California Government Code (Cont'd.)
§ 12012.54....................................................................................................................2
§ 12012.551..................................................................................................................2
§ 98005.....................................................................................................................9, 10

California Penal Code
§ 330a..........................................................................................................................4

**CALIFORNIA CONSTITUTIONAL PROVISIONS**
article II, § 9.....................................................................................................2, 3, 4, 6
article II, § 9(a)............................................................................................................2
article IV, § 19.............................................................................................................4
article IV, § 19(f).................................................................................................2, 4, 6

**UNITED STATES CONSTITUTIONAL PROVISIONS**
Eleventh Amendment....................................................................................................9

Type Footer Info Here 2 («Matter Primary Court Case #»)

**INTRODUCTION**

This case's undisputed facts establish that the North Fork Rancheria of Mono Indians of California (North Fork or Tribe) and the State of California (State) negotiated a class III gaming compact (the North Fork Compact or Compact). Acting through its Governor in accordance with the California Constitution, the State negotiated the North Fork Compact pursuant to the Indian Gaming Regulatory Act (IGRA). But this Compact never took effect because the people rejected its ratification statute in a statewide referendum.

The fundamental issue before the Court is whether the people's exercise of their democratic and State constitutional right of referendum to reject a compact ratification statute justifies the imposition of IGRA's bad faith remedies. There is no factual or legal basis for this Court to hold that the outcome of a democratic election, conducted pursuant to state law, constitutes bad faith under IGRA. The referendum process provided for in the State Constitution, and the outcome of the vote, is not a negotiating position within the meaning of IGRA and therefore not subject to a bad faith determination.

The Tribe understood and accepted the process of executive compact negotiation, legislative ratification, and possible referendum under the California Constitution. Despite many previous referendum elections challenging other compact ratification statutes, this was the first time that the people of California rejected a compact at the ballot box. Accordingly, the State respectfully requests that its motion for judgment on the pleadings be granted, and that the Tribe's Complaint be dismissed.

**ARGUMENT**

I.     **IGRA DOES NOT GUARANTEE TRIBES THE RIGHT TO CONDUCT CLASS III GAMING; IN CALIFORNIA, SUCH GAMING IS ONLY PERMITTED SUBJECT TO THE TERMS OF THE CALIFORNIA CONSTITUTION**

IGRA does not guarantee Indian tribes the right to conduct class III gaming. For example, if a state prohibits class III gaming by all persons and entities, IGRA imposes no obligation upon that state to negotiate class III gaming compacts with tribes. No class III gaming occurs in such a state, and the tribes located there have no recourse other than to work through the state's democratic process to seek a change in the law. *See* 25 U.S.C. § 2710(d)(1)(B). In those states

1

that allow class III gaming, tribes may offer class III gaming under only two circumstances: 1) the tribe successfully negotiates a class III gaming compact with the state; or 2) the tribe obtains a federal court judgment with a finding of either bad faith negotiation, or a failure to negotiate, against a state, and subsequently obtains authority to conduct class III gaming pursuant to terms approved by the United States Secretary of the Interior (Secretary) rather than the state. But without a federal court judgment finding of bad faith by a state, the Secretary is not authorized to approve class III gaming in the absence of a valid tribal-state compact. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 50, 74-75 (1996).

In applying the above IGRA framework to California, the State's Constitution only permits class III gaming compacts pursuant to an expressly provided bifurcated process. Cal. Const. art. IV, § 19(f). First, the Governor negotiates with a tribe for a possible compact. *Id.* ("[T]he Governor is authorized to negotiate and conclude compacts, subject to ratification by the Legislature . . . .") Second, if a compact is successfully negotiated between the Governor and a tribe, then the Legislature either approves or rejects the compact by exercising the power of ratification. *Id.* But this ratification process does not always end with the Legislature. If the Legislature ratifies the compact with a statute that is not constitutionally exempt from referendum, the statute is subject to the people's referendum power. Cal. Const. art. II, § 9.[1]

---

[1] The State filed an opening brief for judgment on the pleadings on September 17, 2015, entitled "Defendant State of California's Memorandum of Points and Authorities in Support of Opposition and Cross Motion for Judgment on the Pleadings" (State's Opening Brief). As discussed in this brief, the California Constitution exempts "urgency statues, statutes calling elections, and statutes providing for tax levies or appropriations for usual current expenses of the State." Cal. Const. art. II, § 9(a). Pursuant to this exemption provision in the State Constitution, the Legislature has previously adopted compact ratification statutes that went into immediate effect under California law, and were not subject to the people's referendum power. Examples include compact ratification statutes for the Shingle Springs Band of Miwok Indians (Cal. Gov't Code § 12012.53; *see* Historical and Statutory Notes, 32E Pt.1 West's Ann. Cal. Gov't Code (2011 ed.) foll. § 12012.53 at 36 [stating in section 3 that the act was an "urgency statute"]); the Habematolel Pomo of Upper Lake (Cal. Gov't Code § 12012.54; *see* Historical and Statutory Notes, 32E Pt. 1 West's Ann. Cal. Gov't Code (2015 supp.) foll. § 12012.54 at 8 [stating in section 4 that the act was an "urgency statute"]); and the Pinoleville Pomo Nation (Cal. Gov't Code § 12012.551; *see* Historical and Statutory Notes, 32E Pt. 1 West's Ann. Cal. Gov't Code (2015 supp.) foll. § 12012.551 at 9 [same]). (State's Opening Brief, 6-8).

1    North Fork's opposing brief[2] does not directly challenge the State's summary of

2  California's constitutional framework of referenda under article II, section 9, of the California

3  Constitution.  (State's Opening Brief, 5-8.)  Nor does the Tribe dispute that prior compacts have

4  been subjected to referendum elections.[3]  Instead, North Fork frames an argument that requires

5  this Court to rule that California's constitutional process for referenda, when applied to non-

6  exempt IGRA compact ratification statutes, violates IGRA if the compacts are rejected by the

7  voters.  This Court should reject North Fork's novel and undemocratic interpretation of IGRA for

8  the following  reasons.

9

10

11

12

13    [2]  The full title of North Fork's opposing brief, filed on October 8, 2015, is "Reply
Memorandum of Law in Support of Plaintiff the North Fork Rancheria of Mono Indians of
14  California's Motion for Judgment on the Pleadings and Opposition to the State of California's
Cross-Motion for Judgment on the Pleadings" (North Fork's Opp'n).

15
    [3]  On March 7, 2000, the people of California voted on Proposition 29, a referendum that
16  challenged a ratification statute that approved eleven compacts that the State of California had
entered into with various tribes in 1998. (Cal. Gov. Code, § 12012.5, see Historical and Statutory
17  Notes, 32E Pt. 1 West's Ann. Cal. Gov. Code (2011 ed.) foll. § 12012.5, p. 18 [stating that the
compact ratification statute, S.B. 287, was subject to an approved referendum on March 7,
18  2000].)  On February 5, 2008, the people again voted on four separate referendum measures
challenging compact ratification statutes.  Proposition 94 challenged California Government Code
19  section 12012.49, the ratification statute for the Pechanga Band of Luiseno Mission Indians
compact. (Cal. Gov. Code, § 12012.49; see Historical and Statutory Notes, 32E Pt. 1 West's Ann.
20  Cal. Gov. Code (2011 ed.) foll. § 12012.49, p. 32.)  Proposition 95 challenged California
Government Code section 12012.48, the ratification statute for the Morongo Band of Mission
21  Indians compact. (Cal. Gov. Code, § 12012.48; see Historical and Statutory Notes, 32E Pt. 1
West's Ann. Cal. Gov. Code (2011 ed.) foll. § 12012.48, p. 31.)  Proposition 96 challenged
22  California Government Code section 12012.51, the ratification statute for the Sycuan Band of
Kumeyaay Nation compact. (Cal. Gov. Code, § 12012.51; see Historical and Statutory Notes, 32E
23  Pt. 1 West's Ann. Cal. Gov. Code (2011 ed.) foll. § 12012.51, p. 34.)  Proposition 97 challenged
California Government Code section 12012.46, the ratification statute for the Agua Caliente Band
24  of Cahuilla Indians compact. (Cal. Gov. Code, § 12012.46; see Historical and Statutory Notes,
32E Pt. 1 West's Ann. Cal. Gov. Code (2011 ed.) foll. § 12012.46, p. 28.)  All four of these
25  compact ratification statutes were also approved by the voters, and became effective on February
6, 2008, the date after the election on February 5, 2008. (Cal. Gov. Code, §§ 12012.46, 12012.48,
26  12012.49, 12012.51.)

27

28

3

1    **A.    IGRA Does Not Specify or Control the Internal Procedures States Must Follow To Enter into Gaming Compacts**

2

3      North Fork's attack on California's referendum process should be rejected.  IGRA does not

4  mandate a ban on direct democracy.  The requirement of IGRA is that a state must, under

5  specified circumstances, negotiate in good faith for a compact when requested to do so by a tribe.

6  But IGRA is silent about the internal procedures a state may require in order to enter into a tribal-

7  state class III gaming compact.  North Fork concedes that, as long as state law does not

8  undermine the purposes of IGRA, the Act "allows states to determine their internal processes for

9  approval of gaming compacts . . . ." (North Fork's Opp'n, 10.)  Under California's bifurcated

10 constitutional process for entering into a compact, the Governor negotiates and then the

11 Legislature ratifies, or rejects, compacts for tribal class III gaming in California.  Cal. Const. art.

12 IV, § 19(f).  And part of this bifurcated process includes the opportunity for the people to exercise

13 their right of referendum to challenge ratification statutes.  Cal. Const. art. II, § 9.  If such a

14 challenge occurs, the statutory ratification occurs and the proposed compact only becomes

15 effective under state law if it survives the vote of the people.  This constitutional process provides

16 a check and balance among the State's executive, the legislative branch, and the power of the

17 people to exercise their own legislative authority.

18    California's above described constitutional process for negotiating and ratifying compacts

19 is an *exception* to the State's otherwise absolute prohibition of class III gaming.  The State's

20 power to prohibit class III gaming, including by Indian tribes, in its entirety if it chooses, does not

21 arise from IGRA as "delegated powers of national sovereignty." (North Fork's Opp'n, 8).

22 Instead, this power is an attribute of state sovereignty that Congress did not invade.[4]  Class III

23 gaming activities are not lawful on Indian lands located in states that do not permit class III

24 gaming, 25 U.S.C. § 2710(d)(1)(B); IGRA's negotiation and compacting requirements relating to

25      [4] Prior to the amendment of article IV, Section 19 of the California Constitution by
26 Proposition 1A in 2000 to permit limited tribal class III gaming, slot machines and banking and
percentage card games had been absolutely prohibited in California since no later than the
enactment of California Penal Code section 330a in 1911. *See Hotel Employees & Restaurant
27 Employees Internat. Union v. Davis*, 21 Cal. 4th 585, 592-93 (1999) (banking games prohibited in
1872; percentage games prohibited in 1885; slot machines prohibited in 1911).
28

4

1    class III gaming do not apply to such states.  California has provided a limited exception to its

2    otherwise absolute prohibition of class III gaming specifically to allow tribal class III gaming.

3    But, critically, that exception is entirely conditioned upon the State's constitutionally mandated

4    bifurcated compacting process and direct democracy.  This exception, and its conditions, arise

5    from the State's inherent authority to prohibit class III gaming entirely, and to permit such

6    gaming only subject to its specified limitations and procedures.

7         As discussed in the State's opening brief, the requirement that a state must comply with its

8    own laws when entering into a tribal-state gaming compact was decided in *Pueblo of Santa Ana v.*

9    *Kelley*, 104 F. 3d 1546 (10th Cir. 1997) (*Pueblo of Santa Ana*).  (State's Opening Brief, 9-10.)  In

10    regard to the North Fork Compact, California has done nothing more than follow its own

11    constitutional mandates respecting ratification.  Pursuant to this process, the North Fork Compact

12    was negotiated by the Governor, ratified by the Legislature, and voted upon by the people in a

13    valid referendum election.  Because the Compact was defeated in the referendum election, its

14    ratification statute never went into effect under California law.  For this reason, neither the

15    Governor nor the Legislature possessed the constitutional power to either recognize or enforce the

16    North Fork Compact.  This is not a state negotiation position subject to a finding of bad faith

17    under IGRA.  It is a requirement of the California Constitution.

18         Despite the California Constitution's prohibition against enforcing the North Fork Compact

19    following the people's referendum, the Tribe argues that the referendum constituted bad faith

20    bargaining under IGRA.  In support of this argument, the Tribe alleges that the duty to negotiate

21    applies to the entire State (North Fork's Opp'n, 2-3), that complying with state law is not a

22    defense (*id.* at 10), and that the voters relied upon impermissible grounds for rejecting the

23    Compact (*id.* at 12-14).  But the flaw in the Tribe's argument, and its rationale, is that it would

24    convert the people's distinct and constitutionally protected referendum power into a duty to

25    participate with the Governor in compact negotiations.  This suggestion, derived from the field of

26    labor negotiation under the National Labor Relations Act, is inapposite.  (State's Opening Brief,

27    12-15).

28

State of California's Reply Memo of Points and Authorities to
Plf's Opp to Cross Motion for Judgment on the Pleadings (1:15-cv-00419-AWI-SAB)

1    Moreover, the Tribe's bad faith argument is contrary to article IV, section 19(f), and article

2    II, section 9 of the California Constitution.  Because *Pueblo of Santa Ana* establishes that a state

3    must comply with its own laws when entering into gaming compacts, California cannot be in bad

4    faith for adhering to the requirements of its own Constitution.  The Governor and the Legislature

5    cannot do otherwise.  Indeed, a contrary holding by this Court would abrogate a significant aspect

6    of state sovereignty by altering the fundamental conditions and limitations of the underlying

7    authorization of tribal class III gaming in California.

8        Finally, even if this Court extends IGRA's good faith duty beyond negotiations (which it

9    should not), IGRA's own statutory standard for determining good faith supports California's

10   faithfulness to the people's constitutional right of referendum.  While IGRA does not define the

11   term "good faith," the statute provides that a court "may take into account" several factors when

12   making a good faith determination, including "the public interest . . . ." 25 U.S.C.

13   § 2710(d)(7)(B)(iii)(I).  IGRA's "public interest" standard should include support for direct

14   democracy.  Under the California Constitution, there remains an unwavering "'duty of the courts

15   to jealously guard' the people's right of initiative and referendum." *American Federation of*

16   *Labor-Congress of Industries Organizations v. Eu*, 36 Cal. 3d 687, 708 (1984) (quoting *Martin v.*

17   *Smith*, 176 Cal. App. 2d 115, 117 (1959)).  In articulating this duty, the California Supreme Court

18   has declared that "[i]f doubts can reasonably be resolved in favor of the use of this reserve power,

19   courts will preserve it." *Independent Energy Producers Ass'n v. McPherson*, 38 Cal. 4th 1020,

20   1032 (2006) (quoting *Associated Home Builders Inc. v. City of Livermore*, 18 Cal. 3d 582, 591

21   (1976).  Article II, section 9, of the California Constitution, which defends the voice of the

22   people, is a "public interest" worthy of protection.  In passing IGRA, Congress could not have

23   reasonably intended otherwise.

24       **B.       North Fork Agreed To Follow State Law in the Compact it Signed**

25       The second reason for rejecting North Fork's claims is that its position ignores the Compact

26   it negotiated with the State.  The North Fork Compact provided that it would not be effective until

27   the Compact was "ratified *in accordance with State law*" and notice of approval is published.

28   (Compl., ¶ 44, Ex. L 106, emphasis added.)  These compact terms show that North Fork

6

1    recognized California's constitutional framework for entering into compacts.  (*Id.*)  And as

2    footnote 3 of this brief discusses in detail, this process has included a history of the people voting

3    upon several compact ratification statutes in referendum elections.

4         Given both the people's established right of referendum under the California Constitution,

5    along with the prior application of this right to several other tribal-state gaming compact

6    ratification statutes, North Fork agreed to, understood, and accepted the risks regarding

7    ratification and referendum under the California Constitution.  In light of this record, this Court

8    should not find that the mutually agreed upon state law ratification process constituted bad faith

9    bargaining by the State within the meaning of IGRA.

10
11
         **C.        The Passage of Time Between Compact Signing and the Referendum
                     Did Not Constitute Bad Faith Negotiations by the State**

12        Finally, North Fork's "impermissible delay" argument against California's referendum

13   process (North Fork's Opp'n, 14-15) should be rejected for the following two reasons.

14        First, there is no deadline under IGRA for the completion of negotiations under 25 U.S.C.

15   § 2710(d)(3)(A).  (State's Opening Brief, 13-14); *see In re Indian Gaming Related Cases*, 147 F.

16   Supp. 2d 1011, 1015 (E.D.Cal. 2009) ("IGRA does not specify the time period that should be

17   evaluated in determining whether a State negotiated in good faith . . . .")  North Fork does not

18   challenge this reality.  Indeed, the Ninth Circuit has held that delay in the compact negotiation

19   process does not, by itself, constitute bad faith.  *In re Indian Gaming Related Cases*, 331 F. 3d

20   1094, 1109-10 (9th Cir. 2003).  Given that the undisputed facts in this case show that North Fork

21   agreed in the Compact to follow the State law ratification process (Compl., ¶ 44, Ex. L 106),

22   delays associated with the ratification did not constitute an IGRA violation.

23        Second, no "impermissible delay" took place in holding the referendum election regarding

24   the North Fork Compact.  While the Tribe complains about the over two year period of time

25   between the date the Compact was signed and the date of the statewide referendum election, the

26   undisputed facts show that the parties to the Compact anticipated that it could take a significant

27   period of time for the Compact to take effect.  Specifically, even though the final version of the

28   North Fork Compact was completed in August 2012 (Compl., ¶ 44, Ex. L 111), the parties

                                                            7

anticipated that the Compact would likely be subject to challenge.  As a result, the Compact

explicitly provided that if it did not take effect "by July 1, 2014, it shall be deemed null and void

unless the Tribe and the State agree in writing to extend the date." (*Id.*, Ex. L 107.)  Accordingly,

because the parties anticipated, planned for, and approved of a potential multi-year ratification

process for the North Fork Compact, the Tribe cannot now persuasively argue that the referendum

election's timing constituted bad faith bargaining under IGRA.

## II.   THE STATE'S REFUSAL TO NEGOTIATE AS TO THE MADERA PARCEL CANNOT CONSTITUTE BAD FAITH UNDER IGRA

When a negotiated compact fails for a reason unrelated to negotiations, 25 U.S.C.

§ 2710(d)(3)(A) provides the remedy—the Tribe may, once again, request that the State enter into

negotiations for a tribal-state class III gaming compact.  If it does, the State must negotiate and do

so in good faith.  If the State does not do so, the Tribe may have a claim under 25 U.S.C.

§ 2710(d)(7)(A)(i).  If the Tribe is able to make the showing required under 25 U.S.C.

§ 2710(d)(7)(B)(ii), it may obtain IGRA's bad faith remedies. *See* 25 U.S.C. § 2710(d)(7)(B)(iii)-

(vii).

North Fork concedes that its request for negotiations following the Tribe's referendum

defeat was limited to the Madera parcel. (North Fork's Opp'n, 17-18.)  The Tribe argues that the

State "failed to propose" alternative locations to the Madera parcel, and that this failure "to make

a reasonable counterproposal about alternative gaming locations" constituted bad faith bargaining

under IGRA. (*Id.*, 19.)  The State respectfully disagrees.

In its opening brief, the State cited *Wisconsin Winnebago Nation v. Thompson*, 22 F. 3d

719, 723-724 (7th Cir. 1994) (*Wisconsin Winnebago*) for the proposition that a state does not fail

to act in good faith when it refuses to enter into Class III gaming compact negotiations where a

prior compact excluded gaming at a favored site. (State's Opening Brief, 15.)  Here, the record

clearly establishes that (1) the State and the Tribe negotiated a previous Compact, (2) the agreed

upon favored site in the Compact was the Madera parcel, and (3) although the Governor and the

Legislature approved the Compact, the people rejected it in the referendum election.  Given this

undisputed record, *Wisconsin Winnebago* applies here because a tribe cannot demand that a state

8

1   negotiate over the location of a class III gaming casino immediately after the parties had

2   concluded a compact that purported "to settle the terms and conditions under which Class III

3   gaming will be conducted on that tribe's lands." *Wisconsin Winnebago*, 22 F. 3d at 724.  In

4   particular, the Seventh Circuit held in *Wisconsin Winnebago* that a governor could, consistent

5   with IGRA's good faith negotiation requirements, refuse to enter into new compact negotiations

6   with a tribe regarding class III gaming at a particular location when that location was the subject

7   of a recently concluded compact.  *Id.*  Under that record, a governor's refusal "cannot, as a matter

8   of law, be considered an act of bad faith."  *Id.*

9        North Fork contends that *Wisconsin Winnebago* is inapplicable because that case involved a

10   tribe that possessed an existing compact that was recognized by the state.  (North Fork's Opp'n,

11   18.)  While the State acknowledges this difference, it remains immaterial to *Wisconsin*

12   *Winnebago*'s holding.  No tribe should be permitted under IGRA to unilaterally insist on a

13   particular location for its gaming casino, and claim bad faith if the state fails to acquiesce.  North

14   Fork maybe correct in believing that developing a class III gaming facility on any location other

15   than the Madera parcel would be difficult and may not produce comparable economic benefits to

16   the Tribe.  Further, the Tribe could be correct in assuming that the parties may not reach an

17   agreement regarding other possible gaming sites due to environmental, economic, or other

18   possible concerns.  But these concerns could never be addressed, much less negotiated under

19   IGRA, so long as North Fork refuses to make a negotiation request to the State for all possible

20   sites.  Under the very narrow allegations contained in Count II of North Fork's complaint, the

21   Tribe has failed to state facts sufficient to constitute a claim upon which relief may be granted in

22   light of its specifically limited negotiation request.  As such, the State's motion for judgment on

23   the pleadings should be granted.

24   **III.    THE TRIBE'S SUIT IS BARRED BY THE STATE'S ELEVENTH AMENDMENT IMMUNITY**

25        Absent a waiver of sovereign immunity, a state is immune from suits to enforce IGRA.  *See*

26   *Seminole Tribe of Florida v. Florida, supra,* 517 U.S. at 47 (1996).  The Tribe's argues that

27   California Government Code section 98005 waives the State's immunity from the claims made in

28   this case.  This is false.  The limited waiver of immunity in Government Code section 98005

9

1   applies only to actions arising from the State's "refusal to enter into negotiations" or refusal to

2   "conduct those negotiations in good faith . . . ." Cal. Gov't Code § 98005. As the facts alleged in

3   the North Fork complaint show, the State, acting through the Governor, did enter into

4   negotiations with North Fork for a class III gaming compact, and, acting through the Governor,

5   did negotiate in good faith, as evidenced by the execution of the North Fork Compact in August,

6   2012. (Compl., ¶ 44, Ex. L.) For the reasons stated above and in the State's moving papers, the

7   people's rejection of the North Fork Compact does not, indeed cannot, constitute bad faith in

8   negotiations within the meaning of IGRA. Accordingly, none of the possible predicates for a

9   waiver of the State's immunity is present under California Government Code section 98005. This

10   Court therefore lacks subject matter jurisdiction over North Fork's claims, and the Complaint

11   fails to state a claim upon which relief may be granted.

## CONCLUSION

13       For all the foregoing reasons, the State respectfully requests that North Fork's motion for

14   judgment on the pleadings be denied, and that the State's motion for judgment on the pleadings

15   be granted.

17   Dated:  October 29, 2015            Respectfully Submitted,

18                         KAMALA D. HARRIS
                      Attorney General of California
                      SARA J. DRAKE

19                         Senior Assistant Attorney General
                      NEIL D. HOUSTON

20                         Deputy Attorneys General
                      WILLIAM P. TORNGREN

21                         Deputy Attorneys General

22                         /s/ TIMOTHY M. MUSCAT

23                         TIMOTHY M. MUSCAT
                      Deputy Attorney General

24                         *Attorneys for Defendant State of California*

25                                       SA2015102399

10

# CERTIFICATE OF SERVICE

Case Name:   **North Fork v State of California**        No.    **1:15-cv-00419-AWI-SAB**

I hereby certify that on <u>October 29, 2015</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE OF CALIFORNIA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>October 29, 2015</u>, at Sacramento, California.

| | |
|---|---|
| TIMOTHY M. MUSCAT | /s/ Timothy M. Muscat |
| Declarant | Signature |