**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA,** | 1:15-cv-00419-AWI-SAB |
| Plaintiff, | **ORDER DENYING PUTATIVE INTERVENOR DEFENDANT'S MOTION TO INTERVENE** |
| v. | (Doc. 31) |
| **STATE OF CALIFORNIA,** | |
| Defendant. | **ORDER REQURING BRIEFING ON WHETHER THE COURT SHOULD STAY THIS ACTION** |
| _____/ | |
| **PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS,** | |
| Putative Intervenors. | |
| _____/ | |

## I. Introduction

Plaintiff North Fork Rancheria of Mono Indians of California ("North Fork") has obtained judgment on the pleadings against the State of California ("State" or "California") based on the failure of the State to negotiate with the tribe for the purpose of entering into a Tribal-State compact governing the conduct of class III gaming activities as required by the Indian Gaming Rights Act ("IGRA"), *see* 25 U.S.C. § 2710(d)(3)(A), after the California electorate voted down Proposition 48, the referendum that would have ratified the gaming compact between North Fork and California. Doc. 31. The Picayune Rancheria of Chukchansi

Indians ("Chukchansi") has filed a motion to intervene in this suit as a matter of right, or in the alternative, permissively. Doc. 25. For the following reasons, this Court will deny Chukchansi's motion to intervene.

Based on the concerns Chukchansi has presented, the Court will permit the parties, and Chukchansi as *amicus curiae*, to brief the issue of whether a stay should be imposed.

## II. Background

The Court set forth a detailed summary of the background relevant to North Fork's Indian Gaming Regulatory Act ("IGRA") claim in its Order dated November 13, 2015. Doc. 25. Here, the Court will provide the facts relevant to the United States of American having taken the Madera parcel into trust for North Fork,[1] Assembly Bill 277, and Proposition 48.[2]

The Madera Parcel Fee-to-Trust and IGRA Two-Part Gaming Determinations

The Indian Reorganization Act ("IRA"), authorizes the Secretary of the Interior to acquire an "interest in land … within or without existing reservations … for the purpose of providing lands for Indians." 25 U.S.C. § 465.

IGRA precludes gaming on lands acquired by the Secretary of the Interior in trust for a tribe after October 17, 1988, except when the Secretary of the Interior, "after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination…." 25 U.S.C. 2719(a) & (b)(1)(A).

---

[1] The Court is mindful that whether the decision by the Secretary of the Department of the Interior to take the Madera parcel into trust was arbitrary and capricious, in violation of the Administrative Procedures Act ("APA"), in excess of his authority, or in abuse of his discretion, are the subject of the litigation now pending before the United States District Court for the District of Columbia. *Stand Up for California! v. United States Department of the Interior*, Case No. 1:12-cv-02039-BAH (D.D.C.). None of the Orders issued by this Court in this litigation should be read to speak to those issues.

[2] The Court is also mindful that whether ratification of a gaming compact is a legislative act, subject to a referendum vote under California law was one portion of the litigation pending before the California Court of Appeal, Fifth Appellate District. *Stand Up for California v. State of California*, Case No. F069302 (Cal. Ct. App. 5th Dist.). None of the Orders issued by this Court in this litigation should be read to speak to that issue.

As to the North Fork Tribe, on September 1, 2011, the Secretary of the Interior made the two-part determination under IGRA that gaming on the Madera parcel would be in the best interest of North Fork and not detrimental to the community. Doc. 1-4. The Governor of the State of California gave his concurrence on August 30, 2012. Doc 1-5 at 2-3. Next, on November 26, 2012, the Secretary of the Interior made the decision to take the Madera parcel into trust for North Fork under the IRA. *See* 77 Fed. Reg. 71,611. The land was actually accepted by United States in Trust for North Fork on February 5, 2013. Doc. 1-12 at 4. The gaming eligibility and fee-to-trust determinations by the Secretary of the Interior are both challenged as invalid in the United States District Court for the District of Columbia, in *Stand Up for California v. United States Department of the Interior*, D.D.C. Case Nos. 12-cv-2039, 12-cv 2071 ("The District of Columbia Action"). The Governor of the State of California's concurrence is challenged in the California Fifth District Court of Appeal, in *Stand Up for California v. State of California*, 5th DCA Case No. F069302.

Assembly Bill 277

The California Legislative Counsel's Digest describes, in relevant part, the impact that AB 277: if passed, the "bill would ratify the tribal-state gaming compact entered into between the State of California and the North Fork Rancheria Band of Mono Indians, executed on August 31, 2012…. The bill would provide that, in deference to tribal sovereignty, certain actions are not projects for purposes of [the California Environmental Quality Act ("CEQA")]." Legis. Counsel's Dig., Assem. Bill. No. 277 (2013-2014 Reg. Sess.).[3] Similarly, the language of AB 277 purports to ratify "[t]he tribal state gaming compact … between the State of California and … North Fork…." AB 277 (Hall), 2013-2014 Leg. Sess. (Cal. July 3, 2013) *chaptered at* 2013 Stat. Ch. 51; Cal. Govt. Code § 12012.59. It also purports to exclude some actions—for example, execution of a gaming compact, execution of agreements between a tribe and the Department of Transportation, etc.—from the reach of CEQA. *Id*.

---

[3] The Legislative Counsel's Digest, though not binding, is entitled to great weight in determining the intent of a statute (or proposed statute) because "is the official summary of the legal effect of a bill and is relied upon by the [California] Legislature throughout the legislative process." *Joannou v. City of Rancho Palos Verdes*, 219 Cal.App.4th 746 759 (Cal. Ct. App. 2013) (citation omitted).

AB 277 was passed by the California Assembly on May 2, 2013, California Assembly Journal, 2013-2014 Reg. Sess., No. 65 at 1224-1225, and the Senate on June 27, 2013, California Senate Journal, 2013-2014 Reg. Sess., No., 98, at 1581-1582. AB 277 was signed by the Governor on July 3, 2013 and chaptered by the then-Secretary of State on the same date. AB 277 (Hall); 2013 Stat. Ch. 51. The then-Secretary of State forwarded the Tribal-State Compact to the United States Secretary of the Interior.

On October 22, 2013, the Assistant Secretary of the Interior, Bureau of Indian Affairs, issued notice that the compact between the State and North Fork was approved (to the extent that it was consistent with IGRA). Notice of Tribal-State Class III Gaming Compact taking effect, 78 FR 62649-01 (Oct. 22, 2013).

Proposition 48

On July 19, 2013, a ballot summary and title were issued by the Attorney General of California's office for what would be commonly known as California Proposition 48 – Referendum on Indian Gaming Compacts (2014).[4] On October 1, 2013, proponents of the referendum submitted 784,571 signatures in support of placing Proposition 48 on the ballot for the November 2014 election.[5] The then-Secretary of State, Debra Bowen, certified that the signatures submitted contained a sufficient number of valid votes to place the matter on the ballot. *Id.*; *see* Cal. Const. Art. II, § 9(b).

On November 4, 2014, California voters rejected Indian Gaming Compacts Referendum, labeled Proposition 48, to ratify the North Fork and Wiyot Tribe compacts.[6] Based on that referendum vote, the State of California's position in the action was that no valid Tribal-State compact exists between the State and North Fork.

Judgment on the Pleadings

---

[4] Title and Summary located at https://www.oag.ca.gov/system/files/initiatives/pdfs/Title%20and%20Summary%20%2813-0007%29.pdf? (last accessed June 27, 2016); Title and summary proposal located at https://oag.ca.gov/system/files/initiatives/pdfs/13-0007%20(13-0007%20(Referendum%20of%20AB%20277)).pdf (last accessed June 27, 2016).

[5] Referendum Signatory Recognition Letter, Debra Bowen, November 20, 2013, located at https://web.archive.org/web/20141028155549/http://www.sos.ca.gov/elections/ccrov/pdf/2013/november/13101km.pdf (last accessed June 27, 2016) ("Recognition Letter").

[6] Index of California Referenda located at http://www.sos.ca.gov/elections/ballot-measures/referendum/ (last accessed June 27, 2016).

This Court's prior order made clear that "[i]t [was] undisputed in this case that the Madera parcel," although taken into trust after October 17, 1988, "falls within [the 25 U.S.C. § 2719(b)(1)(A)] exception to the general prohibition of use of after-acquired land" for gaming. Doc. 25 at 13 n. 16. Indeed, North Fork and the State contend that the Secretary of the Interior's two-part, gaming on after-acquired land determination and fee-to trust determination are valid. Similarly, North Fork and the State also agreed that Governor Brown's concurrence with the two-part determination was equally valid. Additionally, North Fork and the State agreed that no Tribal-State compact was in effect.  However, it is now apparent that the Secretary's two-part determination, the governor's concurrence with the Secretary's two-part determination, the fee-to-trust determination, and whether a Tribal-State compact is in effect are each the subject of pending litigations.

That the Madera parcel is Indian Land that is not otherwise gaming-ineligible is a statutory prerequisite to suit in an IGRA action, upon which this Court's judgment on the pleadings rests. An Indian tribe can only demand that a state negotiate in good faith toward an enforceable compact if it "possesses Indian land—defined by section 2703(4)(B) to include 'any lands title to which is held in trust by the United States for any Indian [t]ribe'—not otherwise ineligible for gaming…." Doc. 25 at 13 (quoting, *inter alia*, *Mechoopda Indian Tribe of Chico Rancheria v. Schwarzenegger*, 2004 WL 1103021, *5 (E.D. Cal. Mar. 12, 2004)).

Similarly, that a Tribal-State compact had not been entered into was a statutory prerequisite to suit in an IGRA action, upon which this Court's judgment on the pleadings rested. Doc. 25 at 12 ("In order to prevail on this [IGRA] claim, [North Fork] must 'introduce evidence that "a Tribal-State compact has not been entered into…." ' [I]t is undisputed that the State and the Tribe have not entered into an enforceable compact.")

The District of Columbia Action

The District of Columbia action and the action before this Court proceed from two dramatically different starting points. This Court was apprised by the State of California and North Fork that it was both parties' position that the Tribal-State compact between the parties was not in effect. Doc. 1 at ¶ 6; Doc. 9 at ¶ 6. It is the Secretary of the Interior's position in the

1   District of Columbia action that the Tribal-State compact between North Fork and California is

2   in effect. *Stand Up for California! v. United States Department of the Interior*, Case No. 1:12-cv-

3   02039-BAH, Doc. 112-1 at 37-45 (D.D.C. Feb. 13, 2015).

4        The District of Columbia action also involves, among other things, to propriety of the

5   Secretary of the Interior having made the two-part IGRA determination, the Governor of the

6   State of California having given his concurrence, and the Secretary having taken the Madera

7   parcel into trust for the North Fork. Chukchansi is a party to that action.

8   The Fifth District Court of Appeal Action

9        As of Chukchansi's filing of its motion to intervene, the impact of the referendum on the

10  compact between North Fork and the State is one subject of litigation pending before the

11  California Fifth District Court of Appeal. *See Stand Up for California v. State of California et*

12  *al.*, 5th DCA Case Nos. F070327 *consolidated with* F069302, filed Dec. 27, 2014. The Fifth

13  District Court of Appeal was asked by North Fork to reverse the judgment of the Madera County

14  Superior Court, holding that the referendum against AB 277 was valid. On June 2, 2016, North

15  Fork dismissed its appeal.

16       A second subject of the Fifth District Court of Appeal Action is whether the Governor

17  had the authority to give his concurrence to the Secretary of the Interior's two-part after-acquired

18  lands determination. *See Stand Up for California v. State of California et al.*, 5th DCA Case No.

19  F069302. The Madera County Superior Court held that the Governor's authority to concur with

20  the Secretary's determination is implicit in the Governor's authority to negotiate and conclude

21  Tribal-State compacts on behalf of the state. That decision is presently pending before

22  California's Fifth District Court of Appeal.

23                           **III. Discussion**

24  A. Motion to Intervene

25       Federal Rule of Civil Procedure 24 provides for both intervention as a matter of right and

26  permissive intervention. A court must permit an applicant to intervene when:

27       (1) it has a significant protectable interest relating to the … subject of the action;

28       (2) the disposition of the action may, as a practical matter, impair or impede the

applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. [citation] [¶] Each of these four requirements must be satisfied to support a right to intervene. [citation] While Rule 24 traditionally receives liberal construction in favor of applicants for intervention. [citation], it is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met. [citation].

*Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (quotation marks and citations omitted); *accord Smith v. Los Angeles Unified School Dist.*, --- F.3d ----, 2016 WL 2956915 (9th Cir. May 20, 2016); *see* Fed. R. Civ. P. 24(a)(2). Even where a party does not have a right to intervene, a district court may permit intervention where the party "has a claim or defense that shares with the main action a common question of law or fact" and such intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

*1. Adequacy of Present Representation*

In determining the adequacy of representation of the existing parties to an action, a district court should consider:

"(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect."

Doc. 20 at 8 (quoting *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1498-99 (9th Cir. 1995)); *accord Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). Normally, this element turns on whether present representation "may be inadequate" to represent the putative intervenor's interest. *Smith*, 2016 WL 2956915 at * 14. However, at this phase in the litigation, it is clear which arguments the State has made. No further action by the Court is expressly authorized by IGRA, *see* 25 U.S.C. § 2710(d)(7), and the Court expects no further argument from the State. As a result, the Court need only compare the arguments that the State has made with the arguments that Chukchansi claims that it would have advanced to protect its own interest. If that State neglected to advance meritorious arguments that Chukchansi now advances, the Court would determine that the State did not adequately represent Chukchansi's interest.

1   As a preliminary matter, Chukchansi and the State both seek to prevent North Fork from

2   operating a Class III gaming activity at the Madera parcel.[7]

3   Chukchansi has identified multiple arguments that it contends that the State should have

4   presented in this action: "that Proposition 48 creates a legal impediment under federal law to the

5   classification of the [Madera parcel] as Indian lands under [IGRA]," Doc. 31 at 16, that "the …

6   [Governor's] concurrence" with the Secretary's two-part determination was ineffective, Doc. 31

7   at 12, and that the "Madera [parcel] [is otherwise not properly classified as] 'Indian lands' under

8   IGRA" and, as a result, the Court lacks jurisdiction over this action, Doc. 31 at 12; Doc. 34 at 25.

9   The scope of an action pursuant to 25 U.S.C. § 2710(d)(7)(A)(1) is circumscribed by statute.

10  None of the challenges that Chukchansi identifies are subject to determination in this action.

11  "This action is limited to the issue of whether the State has violated the duty imposed by IGRA

12  to negotiate with North Fork in good faith." Doc. 20 at 8 (citing 25 U.S.C. § 2710(d)(3)(A); 25

13  U.S.C. § 2710(d)(7)(B)(ii)).

14  The Ninth Circuit has made clear that challenges to whether an Indian tribe "is *properly*

15  recognized as a tribe and whether [a parcel of Indian land] is *properly* held in trust are irrelevant

16  to whether the State was obliged to negotiate in good faith." *See Big Lagoon Rancheria*, 789

17  F.3d at 955 (emphasis added); *see also Big Lagoon Rancheria*, 759 F.Supp.2d at 1160 (holding

18  that the fact that the status of the Indian lands "may be in question does not change th[e]"

19  requirement that the State negotiate in good faith toward a gaming compact regarding those

20  lands). The Ninth Circuit explained that such arguments—even if framed as jurisdictional or

21  standing issues—are collateral attacks on the BIA's decision to take lands into trust for a tribe.

22  *Big Lagoon Rancheria*, 780 F.3d at 952; *see Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.

23  2003) (A putative intervenor may not "inject new, unrelated issues into the pending litigation.").

24  A challenge to the BIA's decision to take lands into trust for a tribe is a "garden-variety APA

25  claim." *Big Lagoon Rancheria*, 789 F.3d at 953 (quoting *Match-E-Be-Nash-She-Wish Band of*

26  _____

27  [7] Chukchansi suggests that "the Governor's ultimate purpose is something other than preventing gaming at the Madera [p]arcel…. [T]he Governor, as his actions show, never intended to take any action that would actually jeopardize North Fork's ability to conduct gaming at the Madera [p]arcel. " Doc. 34 at 29. As explained in more

28  depth in this section, the State's decision not to attempt to litigate the issues that Chukchansi seeks to introduce is not an indication that the State put forth straw arguments—designed to be defeated by North Fork.

8

*Pottawatomi Indians v. Patchak*, --- U.S. ---, 132 S.Ct. 2199, 2208 (2012)).  Arguments

contending that lands are not properly considered Indian lands "might not be irrelevant in a case

involving a timely APA claim." *Big Lagoon Rancheria*, 789 F.3d at 955. The District of

Columbia Action contains such claims.

As it exists now, the Madera parcel is Indian land that is eligible for gaming. Indian lands

within the meaning of IGRA include "any lands title to which is … held in trust by the United

States for the benefit of any Indian tribe … and over which an Indian tribe exercises

governmental power." 25 U.S.C. § 2703(4)(B). The Secretary of the Interior made the two-part

after-acquired lands determination under IGRA that gaming on the Madera parcel would be in

the best interest of North Fork and not detrimental to the community. Doc. 1-4. The Governor of

the State of California concurred. Doc. 1-5. The Secretary of the Interior took the Madera parcel

into trust for North Fork under the IRA. *See* 77 Fed. Reg. 71,611. Unless and until the District of

Columbia orders the Secretary of the Interior to take the Madera parcel out of trust for North

Fork or determines that the Secretary's two-part after-acquired lands determination was in error,

those decisions stand; the Madera parcel is Indian land, eligible for Class III gaming.

This action does not involve resolution of questions relating to whether the Secretary of

the Interior erred in taking land into trust for the tribe or in making the two-part after-acquired

lands determinations. The State's decision not to litigate those issues in this action is not an

indication that the State inadequately defended this action or that the State's interest was not

aligned with Chukchansi's interest. Chukchansi has identified no argument within the

appropriate scope of this action that the State failed to raise. The State has adequately

represented Chukchansi's interest in this action.

Chukchansi's motion to intervene as a matter of right will be denied on that ground.

As to Chukchansi's motion for permissive intervention: unlike intervention as of right,

"[t]he decision to grant or deny [permissive] intervention is discretionary, subject to

considerations of equity and judicial economy." *Garza v. County of Los Angeles*, 918 F.2d 763,

777 (9th Cir. 1990). That said, Ninth Circuit courts regularly deny requests for permissive

intervention based on the movant's inability to satisfy the requirements of Rule 24(a), for

1 intervention as a matter of right. *E.g., Perry*, 587 F.3d at 955; *United States ex rel. Richards v.*

2 *De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir.1993); *see Viet Bui v. Sprint Corp.*, 2015 WL

3 3828424 at *3 (E.D. Cal. June 19, 2015).

4        Because the State has adequately represented Chukchansi's interest in this matter—

5 Chukchansi has identified no argument within the scope of this action that the State did not

6 address—allowing intervention based on the issues presented would not serve judicial economy

7 or add anything of value to the proceedings.

8        Chukchansi's motion for permissive intervention will be denied.

9 B. Additional Briefing on Whether the Court Should Stay this Action

10        Although the issues that Chukchansi seeks to litigate in this action are outside of the

11 appropriate scope of this action, their close relation begs the question of whether this action

12 should be stayed pending resolution of the District of Columbia Action and/or the Fifth District

13 Court of Appeal Action. Chukchansi suggests that a decision regarding the status of the Madera

14 parcel as Indian lands might divest this Court of jurisdiction. Specifically, if it is determined that

15 the Secretary of the Interior's determination to take the Madera parcel into trust for the tribe was

16 void,[8] then North Fork did not validly hold jurisdiction over that land at the time of compact

17 negotiations. Similarly, the District of Columbia action involves a challenge to the Secretary of

18 the Interior's two-part after-acquired lands determination and a determination of whether the

19 Tribal-State compact between North Fork and California is in effect. If the court in the District of

20 Columbia Action determines that the Secretary's two-part determination was in error or that the

21

22

23 [8] Chukchansi draws the Court's attention to the Secretary of Interior's statement that, "the Department of the Interior will take the land out of trust if ordered to do so by the [District of Columbia] Court…." Doc. 31 at 20 (citing *Stand Up for California! v. United States Department of the Interior*, No. 1:12-cv-02039-BAH, Doc. 30 at 39 (D.D.C. Jan.

24 18, 2013). Assuming D.C. District Court determines that the Secretary's act of taking the land into trust for the tribe is *void ab initio*, *see City of Santa Clara v. Andrus*, 572 F.2d 660, 677 (9th Cir.1978) (citing, *inter alia, Utah Power*

25 *& Light Co. v. United States*, 243 U.S. 389, 392 (1917)) ("[A]dministrative actions taken in violation of statutory authorization or requirement are of no effect."), then a question would be presented as to whether North Fork had

26 standing to bring this action in the first instance. If, for whatever reason, the D.C. District Court orders the Secretary of the Interior to remove the Madera parcel from trust—as opposed to determining that the land acquisition was a nullity—this Court's judgment on the pleadings would be mooted; IGRA does not authorize gaming on land that is

27 not Tribal land. Whether void or simply voidable, a determination that the Secretary erred in taking the Madera parcel into trust would likely impact the outcome ordered in this litigation.

28

1  compact is in effect, the factual representations made by the parties to this Court would no longer

2  be correct.

3       For the reasons that the Court will now explain, it holds federal question jurisdiction over

4  this matter regardless of the status of the Madera parcel as Indian land, the correctness of the

5  Secretary's two-part determination, and whether the compact is in effect. Those determinations

6  may impact a different aspect of this Court's jurisdiction—whether the Article III requirement,

7  that a case or controversy exist throughout the proceeding, is met. *See Timbisha Shoshone Tribe*

8  *v. U.S. Dept. of Interior*, --- F.3d ----, 2016 WL 3034671, *4 (9th Cir. May 27, 2016) (quoting

9  *Steffel v. Thompson*, 415 U.S. 452, 459, n. 10 (1974). As a result of the contested determinations

10 noted above, it is possible that the Court could encounter standing and/or mootness issues.

11 Although the parties have not raised such questions, the Court has an independent obligation to

12 ensure that it does not "exceed the scope of [its] jurisdiction, a therefore must raise and decide

13 jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex. rel*

14 *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (citation omitted); *B.C. v. Plumas Unified*

15 *School District*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required to *sua*

16 *sponte* examine jurisdictional issues such as standing.")

17      The Supreme Court recently clarified that section 2710(d)(7)(A),[9] despite appearing to be

18 couched in jurisdictional terms, is not a limited statutory grant federal jurisdictional but a limited

19 abrogation of sovereign immunity. *Michigan v. Bay Mills Indian Community*, ---U.S.----, 134

20 S.Ct. 2024, 2029 n.2 (2014); *accord Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1042 (9th Cir.

21 2015) ("[A]nalyzing §2710(d)(7)(A)(ii) in jurisdictional terms is 'wrong.'") (quoting *Bay Mills*).

---

[9] Section 2710(d)(7)(A)(i) provides:
> The United States district courts shall have jurisdiction over … any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in good faith.

Paragraph (3)—section 2710(d)(3)—reads, in relevant part:
> Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

25 U.S.C. § 2710(d)(3)(A).

The Supreme Court went on to explain that "[t]he general federal-question statute, 28 U.S.C. § 1331, gives a district court subject matter jurisdiction to decide any claim alleging a violation of IGRA." *Id.* "[A]lthough [failing to meet a requirement of section 2710(d)(3)(A)] may indicate that a party has no statutory right of action," it does not limit a district court's jurisdiction to hear a case alleging a violation of IGRA. *Id.*; *see Oklahoma v. Hobia*, 775 F.3d 1204, 1213 (10th Cir. 2014) (characterizing a failure to meet the statutory perquisites of IGRA as a failure to state a claim).  This Court has subject matter jurisdiction over this matter pursuant to § 1331 because North Fork alleged a violation of IGRA. *See Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1042 (9th Cir. 2015).

Despite the fact that section 2710 does not limit district court's assertion of subject matter jurisdiction, whether a claimant has Article III standing[10] to litigate is a threshold question in every case, *Warth v. Seldin*, 422 U.S. 490, 498 (1975), an IGRA action is no exception. In this context, the actual inquiry requirement may require North Fork to satisfy IGRA's statutory prerequisites. Although the Ninth Circuit has not directly spoken to the issue (and Chukchansi presents no authority in support of the proposition), authority exists for the proposition that holding Indian lands is an Article III standing requirement for an Indian tribe alleging an IGRA claim. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Engler*, 304 F.3d 616, 618 (6th Cir. 2002) (The "statutory prerequisite" of holding Indian lands before entering into negotiation is "an entirely reasonable standing requirement.") ("*Engler*"); *Mechoopda Indian Tribe of Chico Rancheria, Cal. v. Schwarzenegger*, 2004 WL 1103021, *7 (E.D. Cal. Mar. 12, 2004); *see also Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 778 (9th Cir. 2008) (citing with approval *Engler* and *Mechoopda*); *but see KG Urban Enterprises, LLC v. Patrick*, 693 F.3d 1, 23-24 (1st Cir. 2012) (The Secretary of the Interior's "views on whether

---

[10] Article III standing requires a plaintiff to show that "(1) [it] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181 (2000).

1  tribal-state compacts may be approved before the tribe possesses land that is taken into trust have

2  varied over the years.")[11]

3        In *Engler*, the Sixth Circuit explained that because section 2710(d)(7)(A)(i) incorporates

4  section 2710(d)(3), a party bringing an IGRA action pursuant to section 2710(d)(7)(A)(i) must

5  make a showing that at the time of filing suit it is "an Indian tribe **and** it [has] land over which it

6  exercises jurisdiction **and** it must be operating or contemplating the operation of a gaming

7  casino." *Engler*, 304 F.3d at 618 (emphasis original). That said, the *Engler* court was explicit that

8  it affirmed dismissal based only on lack of standing as a result of the "Tribe's [failure] to fulfill

9  the statutory prerequisite" of holding Indian lands. *Id.* at 618.

10        In a related vein, because IGRA only authorizes gaming on Indian land, if the land is

11  taken out of trust then IGRA would not govern, *United States v. Livingston*, 725 F.3d 1141, 1146

12  n. 2 (9th Cir. 2013) ("Tribal gaming on non-Indian lands is not authorized by or regulated under

13  IGRA."), and this IGRA action would likely be moot.[12]

14        The court in the District of Columbia Action might conclude that the Madera parcel is not

15  Indian land or that it is otherwise ineligible for gaming. If it comes to such a conclusion then this

16  matter may become non-justiciable (because either (1) the issue presented is moot because IGRA

17  does not impact gaming on non-Indian land or (2) North Fork did not have standing in the first

18  instance because it did not exercise jurisdiction over the land it sought negotiation over). Even if

19  holding Indian lands does not impact justiciability, a determination—based on more than the

20  facts agreed upon by the parties to this action—that the Madera parcel is not Indian lands is

21  inconsistent with this Court's determination. The parties will be afforded an opportunity to

22  present their positions on the impact on this litigation of a determination that the Madera parcel

23  is not Indian land.

24

25  _____

[11] The value of that authority after *Bay Mills* may be subject to doubt. *Compare Engler*, 304 F.3d at 617 (In dicta,
26  the Sixth Circuit noted that "under section 2710(d)(7)(A) … federal jurisdiction seems to depend on 'any Indian
tribe having jurisdiction over the lands upon which' a casino is to be 'conducted.'") *with Idaho v. Coeur d'Alene*
27  *Tribe*, 794 F.3d 1039, 1042 (9th Cir. 2015) ("[A]nalyzing §2710(d)(7)(A)(ii) in jurisdictional terms is 'wrong.'")
(quoting *Bay Mills*).
28  [12] "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in
the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).

1    Next, whether the Tribal-State compact between North Fork and California is in effect

2    appears to also be at issue in the District of Columbia Action. *See Stand Up for California! v.*

3    *United States Department of the Interior*, Case No. 1:12-cv-02039-BAH, Doc. 112-1 at 37-45

4    (D.D.C. Feb. 13, 2015) (It is the Secretary of the Interior's position that "[t]he Tribal-State

5    [g]aming [c]ompact [r]emains in [e]ffect.") Chukchansi suggests that whether a Tribal-State

6    compact has been validly entered into is an issue that might undermine the Court's judgment on

7    the pleadings. *See* Doc. 31 at 21. Chukchansi is certainly correct that a determination that an

8    enforceable compact had been entered into would be in conflict with this Court's judgment on

9    the pleadings. *See* Doc. 25 at 12 ("[I]t is undisputed that the State and the Tribe have not entered

10   into an enforceable compact.") Again, the Ninth Circuit has not spoken directly to whether non-

11   existence of a compact is a standing requirement or simply an element of a cause of action under

12   IGRA. However, insofar as the requirement that a Tribe have jurisdiction over Indian lands is a

13   standing requirement (despite the fact that it is only incorporated by reference in section

14   2710(d)(7)(A)(i)), the Court is also compelled to determine that the explicit language of section

15   2710(d)(7)(A)(i)— "failure of a State to enter into negotiations … for the purpose of entering

16   into a … compact"—also sets the non-existence of a compact as a standing requirement.

17   The parties will also be afforded an opportunity to present their positions on the impact

18   on this litigation of a determination that the Tribal-State compact between California and North

19   Fork is in effect.

20   A district court may stay a proceeding pending the resolution of a matter before another

21   court that may impact standing to litigate the matter before the district court. *Errington v. Time*

22   *Warne Cable Inc.*, 2016 WL 2930696, *3-4 (C.D. Cal. May 18, 2016); *Larroque v. First*

23   *Advantage Lns Screening Solutions, Inc.*, 2016 WL 39787, *2 (N.D. Cal. Jan. 4, 2016); *see*

24   *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 863 (9th Cir. 1979) ("A trial court may,

25   with propriety, find it is efficient for its own docket and the fairest course for the parties to enter

26   a stay of an action before it, pending resolution of independent proceedings which bear upon the

27   case.") *see also*, *Dependable Highway Exp. Inc. v. Navigators Ins Co*. 498 F.3d 1059, 1066 (9th

28   Cir. 2007) ("[A] district court possesses the inherent power to control its docket and promote

14

1 efficient use of judicial resources."). The late stage in the proceedings does not impact the

2 Court's jurisdiction to stay this proceeding. *See Big Lagoon Rancheria*, 2012 WL 298464, *3

3 (noting that it had jurisdiction to stay the proceedings even after all of the issues that IGRA

4 required the court to address had been addressed) *rev'd in part on other grounds* by *Big Lagoon*

5 *Rancheria*, 789 F.3d 947.

6        If nothing else, imposing a stay would likely lessen the risk of potentially inconsistent

7 requirements being imposed upon the Secretary of the Interior by this Court and the D.C. District

8 Court. However, the Court will not impose a stay before giving the parties an opportunity to brief

9 the issue. Despite the Court's denial of Chukchansi's motion to intervene, Chukchansi will be

10 permitted to brief the issue as *amicus curiae*. The State and North Fork shall and Chukchansi

11 may file briefing presenting their respective position on the issues of whether and how the issues

12 litigated in the District of Columbia Action and the California Fifth District Court of Appeal

13 Action impact this action and whether a stay should be imposed. Any such brief must be filed on

14 or before Friday, July 15, 2016.  Any responsive briefs must be filed on or before Friday, July

15 22, 2016.

16 ///

17 ///

18 ///

19

20

21

22

23

24

25

26

27

28

# IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Chukchansi's motion for intervention as a matter of right is DENIED;

2. Chukchansi's motion for permissive intervention is DENIED;

3. The Clerk of the Court is respectfully directed to change the party designation for Chukchansi to "Non-Party" but not to remove it from the service list;

4. The State of California and North Fork are ordered and Chukchansi is authorized to file briefing regarding the impact on this action of the District of Columbia Action and the California Fifth District Court of Appeal action, and whether a stay should be imposed in this action;

    a. The briefing will proceed in two phases: each party may file a brief no later than July 15, 2016, setting out its position on the issues identified; each party may file a responsive brief no later than July 22, 2016.

IT IS SO ORDERED.

Dated:   June 27, 2016

_____
SENIOR DISTRICT JUDGE