CHRISTOPHER E. BABBITT (SBN 225813)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
E-mail: christopher.babbitt@wilmerhale.com

JOHN A. MAIER (SBN 191416)
MAIER PFEFFER KIM GEARY & COHEN LLP
1440 Broadway, Suite 812
Oakland, CA  94612
Telephone:  (510) 835-3020
Facsimile:  (510) 835-3040
E-mail: jmaier@jmandmplaw.com

Attorneys for Plaintiff
THE NORTH FORK TRIBE OF MONO INDIANS OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NORTH FORK TRIBE OF MONO INDIANS OF CALIFORNIA,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA,<br><br>        Defendant. | Case No. 15-cv-00419<br><br><br>**PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF OPPOSING A STAY** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

     A.     Related Litigation..................................................................................................3

          1.     District Of Columbia Action (filed December 19, 2012 and December 31, 2012, and consolidated on January 9, 2013)..................................................3

          2.     California Third District Court Of Appeal Action (filed November 2012).5

          3.     California Fifth District Court Of Appeal Action (filed March 2013) ........6

          4.     California Superior Court Action (filed March 2016) ...............................7

          5.     Eastern District Of California Action (filed July 2016)............................7

     B.     Procedural History Of This Case ........................................................................7

LEGAL STANDARD...........................................................................................................8

ARGUMENT ........................................................................................................................9

I.     THERE IS NO RISK OF INCONSISTENT JUDGMENTS OR OBLIGATIONS THAT WOULD WARRANT STAYING THE ENFORCEMENT OF THIS COURT'S JUDGMENT ..................................................................................................................9

     A.     This Court's Judgment Does Not Depend On Whether The Madera Parcel Is Gaming-Eligible "Indian Lands" ........................................................................9

     B.     The Status Of The 2012 Compact Provides No Basis For A Stay.........................11

     C.     A Stay Is Unnecessary To Protect The Secretary Of The Interior.........................12

II.    A STAY WOULD INTERFERE WITH IGRA'S ORDERLY SCHEME FOR APPROVAL OF GAMING AND PREJUDICE NORTH FORK.....................................14

CONCLUSION.....................................................................................................................16

PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF OPPOSING A STAY

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)...........................................................................................15

*Big Lagoon Rancheria v. California*,
759 F. Supp. 2d 1149 (N.D. Cal. 2010) .............................................................10

*Big Lagoon Rancheria v. California*,
789 F.3d 947 (9th Cir. 2015) .................................................................9, 13, 15

*Confederated Tribes & Bands of Yakama Nation v. United States*,
296 F. App'x 566 (9th Cir. 2008) .......................................................................15

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ..............................................................................8

*Kickapoo Tribe v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995) ..............................................................................4

*Meras Eng'g, Inc. v. CH2O, Inc.*,
2013 WL 146341 (N.D. Cal. Jan. 14, 2013) .........................................................8

*Picayune Rancheria of Mono Indians v. U.S. Dep't of Interior*,
No. 16-00950 (E.D. Cal. July 1, 2016). No .................................................7, 16

*Rincon Band of Luiseno Mission Indians of Rincon Reservation v.
Schwarzenegger*,
602 F.3d 1019 (9th Cir. 2010) .............................................................8, 11, 15, 16

*United States v. Spokane Tribe of Indians*,
139 F.3d 1297 (9th Cir. 1998) .............................................................................11

*Stand Up for California! v. U.S. Dep't of Interior*,
919 F. Supp. 2d 51 (D.D.C. 2013) ........................................................................3

*Texas v. United States*,
497 F.3d 491 (5th Cir. 2007) ..............................................................................16

**State Cases**

*Picayune Rancheria of Chukchansi Indians v. Brown*,
229 Cal. App. 4th 1416 (Cal. Ct. App. 2014) ...............................................5, 11

*Picayune Rancheria of the Chukchansi Indians v. Brown*,
Case No. MCV072004 (Cal. Super. Ct. Madera Cty. Mar. 21, 2016)......................7

PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF OPPOSING A STAY

*Stand Up for California! v. Brown*,
    Case No. MCV062850 (Cal. Super. Ct. Madera Cty. Mar. 27, 2013)................................6, 11

*Stand Up for California! v. Brown*,
    Case No. F070327 (Cal. App. Dist. 5 May 18, 2016)................................................6, 12

**Federal Statutes**

25 U.S.C. § 2702(1) ...................................................................................................1

25 U.S.C. § 2703(4)(B) ..............................................................................................3

25 U.S.C. § 2710(d) ...................................................................................7, 8, 10, 11

25 U.S.C. § 2719(b) ...........................................................................................3, 10

**Rules**

Fed. R. App. P. 4(a)(1)(A) ..........................................................................................8

Fed. R. Civ. P. 58(c)(2)(B) ........................................................................................8

PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF OPPOSING A STAY

**INTRODUCTION**

The Indian Gaming Regulatory Act ("IGRA") is intended "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1).  The North Fork Rancheria of Mono Indians ("North Fork" or the "Tribe"), which currently has no gaming facility, has spent more than a decade seeking to develop a gaming project in Madera County to promote precisely those goals.  After an extensive administrative process that took years to complete, North Fork obtained the necessary approvals from the Secretary of the Interior and the Governor of California in a series of interrelated governmental decisions in 2011 and 2012.  North Fork has faced opposition from incumbent gaming tribes (including the Picayune Rancheria of Chukchansi Indians) at nearly every step of the process:  Opponents of the project have filed *six* separate lawsuits challenging the Governor's and Secretary's actions, only one of which has resulted in a final decision.  Indeed, Picayune itself has filed two new lawsuits since this Court's November 2015 ruling, including one filed just two weeks ago, after the Court requested briefing on whether this action should be stayed.  As the initial challenges were being litigated, North Fork filed its own suit to remedy one obstacle to the project—the State's refusal to enter into an enforceable gaming compact with the Tribe.  This Court correctly found that the State violated IGRA's good-faith negotiation mandate, triggering IGRA's remedial scheme.  That process is now nearly complete, and this Court should not take any action that could delay the Secretary of the Interior's issuance of procedures for class III gaming on the Madera Parcel.

There is no risk of inconsistency if the Court does not grant a stay.  *First*, this Court's judgment does not depend on whether the Madera Parcel is gaming-eligible "Indian lands."  As this Court has recognized, a good-faith suit under IGRA is limited in scope and is not the proper forum for collateral attacks on Secretarial decisions.  Instead, challenges to the Secretary's determinations should be—and already have been—brought under the Administrative Procedure Act ("APA").  Secretarial procedures by themselves would not be sufficient to confer the power to conduct Class III gaming if the Secretary's decision to acquire the Madera Parcel in trust were unlawful.  Accordingly, if an opponent of the project successfully challenged the trust decision in

PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF OPPOSING A STAY

the pending APA action, North Fork would be barred from gaming on the Madera Parcel even if Secretarial procedures have issued.

*Second*, the status of the 2012 Compact provides no basis for a stay.  As this Court recognized, the State and Tribe have not entered into an agreement that the Tribe has any prospect of being able to enforce:  The State does not recognize the 2012 Compact as binding, and North Fork has abandoned its only direct challenge to the State's position.  The State is not a party to the APA suit in the U.S. District Court for the District of Columbia, and North Fork has sought dismissal of the plaintiffs' compact-related claims under Rule 19 on the basis that the State is an indispensable party that cannot be joined.  In any event, as the Secretary has argued, the compact-related claims in that suit will become moot when Secretarial procedures issue.

*Third*, a stay is not needed to protect the Secretary, who is fully aware of the pending litigation and has not asked for a stay.  Instead, the Secretary has urged the Court in the District of Columbia Action to refrain from ordering any further briefing until the Secretary issues procedures, which would moot any claims related to the validity of the 2012 Compact.

Furthermore, a stay would not advance the efficient administration of justice.  To the contrary, a stay risks preventing the other cases from moving forward and leaving North Fork's project in a state of indefinite suspense.  As noted, the United States has asked the D.C. Court to postpone supplemental briefing until Secretarial procedures are issued—and any legal challenge to the forthcoming Secretarial procedures will be unripe until they are actually issued.  Consistent with Congress's intent that IGRA provide an expedited process for tribal gaming, the Court should permit the Secretary to complete the remedial process and issue procedures and allow the pending challenges to the Secretary's and Governor's actions to be resolved in their respective fora.  Further delay could seriously harm North Fork's project, potentially denying North Fork its rights under IGRA, even if the opponents' challenges ultimately fail.

## BACKGROUND

This Court is familiar with the facts of this case and the relevant legal framework, as described in its most recent order denying Picayune's motion to intervene and requiring briefing

- 2 -

on whether to stay the action, Dkt. 36, its order on cross-motions for judgment on the pleadings, Dkt. 25, and its order denying an earlier motion to intervene by the Chowchilla Tribe, Dkt. 20.

### A.    Related Litigation

As North Fork has previously noted, several plaintiffs—including Picayune—have brought cases in other fora challenging North Fork's gaming project, both before and after North Fork brought this action.  *See* Dkt. 1, ¶¶ 42, 56; Dkt. 1-2, at 2; Dkt. 15, at 5-7, 9-10; Dkt. 32, at 3-4, 12-14.  For the Court's convenience—and in light of recent developments of which this Court may not be aware—North Fork summarizes the status of the pending cases below.

### 1.    District Of Columbia Action (filed December 19, 2012 and December 31, 2012, and consolidated on January 9, 2013)

In December 2012, an organization called Stand Up for California! and several other plaintiffs (collectively, "Stand Up") brought a federal APA challenge to the Interior Department's two-part determination and its trust decision in the U.S. District Court for the District of Columbia.  *Stand Up for California! v. U.S. Dep't of Interior*, 919 F. Supp. 2d 51, 54-55, 60 (the "District of Columbia Action").  Picayune brought a similar challenge, and in January 2013, the district court consolidated Picayune's case with Stand Up's case.  *Id.* at 55 & n.5.  The district court denied the Stand Up plaintiffs' motion for a preliminary injunction against the trust acquisition of the Madera Parcel, ruling that the plaintiffs were not likely to succeed on any of their claims.  *Id.* at 65-81.  The plaintiffs did not appeal the denial of the preliminary injunction.  The Interior Department acquired the Madera Parcel for North Fork in February 2013.  Compl. ¶ 3 (Dkt. 1).  Since then, it has been "Indian lands" within the meaning of IGRA, 25 U.S.C. § 2703(4)(B), and is eligible for gaming pursuant to IGRA's two-part determination exception to the bar on gaming on after-acquired lands, *id.* § 2719(b)(1)(A).

Stand Up has since amended its APA complaint to challenge the trust decision based on arguments that (1) the Governor's concurrence was invalid, First Amended Complaint, *Stand Up v. Dep't of Interior*, No. 12-2039, Dkt. 56 (D.D.C. June 27, 2013), and (2) the November 2014 referendum rendered the 2012 Compact between North Fork and the State of California invalid, Third Amended Complaint, *id.*, Dkt. 103 (D.D.C. Dec. 3, 2014).  Because these claims relate to

the Governor's authority and the validity of the Compact to which the State is a party, the district court ordered supplemental briefing on whether the State of California is a party required to be joined under Rule 19, and whether any claims should be dismissed as a result. *Id.*, Dkt. 135 (D.D.C. Sept. 30, 2015). The district court has not yet issued a decision or scheduled oral argument on that issue or on the parties' previously filed motions for summary judgment.

The district court and all parties to the District of Columbia Action—including the Secretary of the Interior—are well aware of this litigation, this Court's judgment on the pleadings, and the pendency of the Secretarial procedures before the Department of the Interior. Indeed, for its part, North Fork informed the Court in the District of Columbia Action of this Court's ruling at its first opportunity to do so last year, and it has kept that Court informed of subsequent developments over the course of this year. *See, e.g.,* Dkt. 141 at 2 (D.D.C. Dec. 2, 2015) (North Fork filing: "If a new compact is concluded [pursuant to this Court's November 20, 2015 order], that may well moot Stand Up's current challenge to the validity of the existing compact; the fact that North Fork and California have been ordered to negotiate a new compact counsels strongly against resolving the question of their rights and obligations under the old compact unnecessarily."); Dkt. 146 at 4 (D.D.C. Feb. 18, 2016) (North Fork filing: "In light of the judgment of the U.S. District Court for the Eastern District of California and the remedial process that court has ordered, terms governing North Fork's conduct of class III gaming on the Madera Parcel will become effective in the near future, either pursuant to a new compact with the State or, failing that, pursuant to procedures imposed by the Secretary of the Interior."); Dkt. 154 at 1-2 (D.D.C. Apr. 28, 2016) (North Fork filing: "Accordingly, any gaming on the Madera Parcel will occur under Secretarial procedures, not the 2012 Compact that is the subject of Stand Up's fifth and sixth claims for relief.").[1]

---

[1] North Fork had argued in summary judgment briefs filed in spring 2015 in the District of Columbia Action that the 2012 Compact was enforceable as a matter of federal law. In the fall of 2015, however, the Court *sua sponte* requested briefing on whether the State was an indispensable party to the compact-related claims. After considering the issue, North Fork has taken the position that the State is indispensable and the Court should not adjudicate the claims in the State's absence, in light of the D.C. Circuit's controlling decision in *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995). Dkt. 137 (D.D.C. Nov. 4, 2015); Dkt. 141 (D.D.C. Dec. 2, 2015).

The United States has also informed the Court in the District of Columbia Action of its views regarding the effect of the remedial process underway as a result of this Court's decision. *See, e.g.,* Dkt. 155 at 1-2 (D.D.C. Apr. 29, 2016) (U.S. filing: "The effect [of the E.D. Cal. judgment] is that while [the D.C. Court] considers Stand Up's challenge to the compact deemed approved by the Secretary in 2014, there is now another process taking place under IGRA, which will require the Secretary to issue new procedures governing Class III gaming for the North Fork Tribe and supplant the deemed approved compact that is challenged by Stand Up. …. Stand Up's fifth and sixth claims for relief, which concern the deemed approved compact … *will be mooted when the Secretary issues procedures that supplant the deemed approved compact*. This outcome is mandated by IGRA.") (emphasis added).

Moreover, Picayune has recently moved for supplemental briefing in the District of Columbia Action regarding the effect of this Court's decision. North Fork did not oppose Picayune's request. Rather, it stated that it would "continue to apprise the Court of developments in the remedial process in *North Fork v. California* and will defer to the Court on whether additional argument is required to address the legal consequences" of that process. Dkt. 160 at 2 (D.D.C. June 20, 2016). The United States opposed Picayune's request for further briefing at this time, stating: "The United States believes that the appropriate time to brief the issues raised in Picayune's motion is *after the Department of the Interior issues secretarial procedures* and there is an appropriate motion, such as a motion to dismiss, before the Court." Dkt. 159 at 1 (D.D.C. June 20, 2016) (emphasis added). The Court in the District of Columbia Action has not yet ruled on Picayune's request for supplemental briefing.

### 2.    California Third District Court Of Appeal Action (filed November 2012)

In November 2012, Picayune brought an action in California state court alleging that the Governor's concurrence in the Secretary's decision to take the Madera Parcel into trust for North Fork constituted "approval" of a "project" subject to the California Environmental Quality Act ("CEQA"). *See Picayune Rancheria of Chukchansi Indians v. Brown*, 229 Cal. App. 4th 1416, 1421 (Cal. Ct. App. 2014). Picayune sought a mandate ordering the Governor to set aside his

1  concurrence pending environmental review under CEQA, and an injunction prohibiting the other

2  defendants (the Department of Transportation, the Department of Fish and Wildlife, the City of

3  Madera, and the County of Madera) from approving any activities related to the proposed

4  development pending the CEQA review process.  *Id*.  The superior court ruled in favor of the

5  Governor, holding that the Governor was not a "public agency" for CEQA purposes and that the

6  concurrence was not subject to CEQA.  The Court of Appeal affirmed.  *Id*. at 1431.  In reaching

7  that conclusion, the Court of Appeal reasoned that "the supreme executive power of the state is

8  vested in the *individual* who is elected to hold the office of Governor, and it is that *individual*

9  who is charged with the power to concur (or not) in the two-part determination made by the

10  Secretary of the Interior."  *Id*. at 1426 (emphasis in original).  Picayune filed a petition for review

11  in the California Supreme Court, which denied discretionary review in January 2015.

### 3.   California Fifth District Court Of Appeal Action (filed March 2013)

13      In March 2013, Stand Up brought an action in California state court that also challenged

14  the Governor's concurrence.  Compl., *Stand Up for California! v. Brown*, Case No. MCV062850

15  (Cal. Super. Ct. Madera Cty. Mar. 27, 2013).  On March 3, 2014, the superior court sustained

16  demurrers filed by the Governor and North Fork, holding that the Governor acted within the

17  scope of his constitutional authority in concurring in the Secretary of Interior's decision.  Order

18  Granting Demurrers, *Stand Up v. Brown* (Cal. Super. Ct. Madera Cty.  Mar. 3, 2014), *appeal

19  docketed*, Case No. F069302 (Cal. App. Dist. 5).[2]  Stand Up appealed the superior court's

20  decision, and oral argument in the Fifth District Court of Appeal is scheduled for July 26, 2016.

---

[2] In February 2014, North Fork filed a cross-complaint challenging the validity of the proposed
referendum on AB 277, which ratified the 2012 Compact, but the superior court sustained the
demurrers to the cross-complaint, Ruling On Demurrers, *Stand Up v. Brown*, Case No.
MCV062850 (Cal. Super. Ct. Madera Cty. June 26, 2014), and North Fork has since dismissed
its appeal of that decision.  Stipulation for Dismissal, *Stand Up v. Brown*, Case No. F070327
(Cal. App. Dist. 5 May 18, 2016).

1

### 4.   California Superior Court Action (filed March 2016)

2

On March 18, 2016, Picayune filed another complaint in California state court re-

3

challenging the Governor's concurrence.  Compl., *Picayune Rancheria of the Chukchansi*

4

*Indians v. Brown*, Case No. MCV072004 (Cal. Super. Ct. Madera Cty. Mar. 21, 2016).  The

5

complaint seeks a declaration that the Governor's concurrence did not take effect, a writ of

6

mandate directing the Governor to vacate the concurrence and notify the Secretary, and

7

injunctive relief to prevent the Governor from acting in reliance on the concurrence.  *Id*. at 9.

8

The State demurred to the Complaint on May 13, 2016.  On July 8, 2016, North Fork was

9

granted leave to intervene in that action—over Picayune's opposition—and filed its own

10

demurrer.  Oral argument on the demurrers is scheduled for October 27, 2016.

11

### 5.   Eastern District Of California Action (filed July 2016)

12

On July 1, 2016, Picayune filed a complaint in this Court seeking declaratory and

13

injunctive relief against the Secretary related to the status of the Madera Parcel as gaming-

14

eligible "Indian lands," again asserting that the Governor's concurrence was invalid, and seeking

15

to enjoin the Secretary from taking any action based on the Madera Parcel's status as "Indian

16

lands" under IGRA.  Compl., *Picayune Rancheria of Mono Indians v. U.S. Dep't of Interior*, No.

17

16-00950, Dkt. 1 (E.D. Cal. July 1, 2016).  No further proceedings have taken place in that

18

litigation.

19

### B.   Procedural History Of This Case

20

On March 17, 2015, while the District of Columbia Action and the California Fifth

21

District Court of Appeal Action were pending, North Fork filed this action, seeking a

22

determination that "the State ha[d] failed to negotiate in good faith with [North Fork] to conclude

23

a Tribal-State compact governing the conduct of gaming activities."  25 U.S.C.

24

§ 2710(d)(7)(B)(iii).  The parties cross-moved for judgment on the pleadings, and on November

25

13, 2015, this Court granted North Fork's motion, triggering IGRA's remedial process.  Dkt. 25,

26

27

28

PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF OPPOSING A STAY

1  at 23.  The State declined to appeal this Court's ruling, and this Court's judgment has now

2  become final.[3]

3           The remedial process is now nearly complete, and the only remaining step is for the

4  Secretary to prescribe procedures "which are consistent with the proposed compact selected by

5  the mediator under clause (iv), the provisions of [IGRA], and the relevant provisions of the laws

6  of the State."  25 U.S.C. § 2710(d)(7)(B)(vii).  North Fork understands that the Secretary is well

7  along in the process of drafting such procedures, and would expect her to be in a position to issue

8  procedures well before the pending litigation could be resolved.  As explained below, the

9  issuance of Secretarial procedures will moot any pending litigation over the legal status of the

10  2012 Compact.  Notice of Proposed Compact Submission at 2, *Stand Up v. Dep't of Interior*,

11  Dkt. 155 (D.D.C. Apr. 29, 2016).

12                                        **LEGAL STANDARD**

13           A court may grant a stay pending the outcome of other legal proceedings pursuant to "its

14  inherent power to control the disposition of its cases in the interests of efficiency and fairness to

15  the court, counsel and litigants."  *Meras Eng'g, Inc. v. CH2O, Inc.*, 2013 WL 146341, at *3

16  (N.D. Cal. Jan. 14, 2013).  In determining whether to grant a stay, courts consider "'the possible

17  damage which may result from the granting of a stay, the hardship or inequity which a party may

18  suffer in being required to go forward, and the orderly course of justice measured in terms of the

19  simplifying or complicating of issues, proof, and questions of law which could be expected to

20  result from a stay.'"  *Id.* at 4.  A district court's discretion to grant a stay is not "unfettered," and

21  a stay is inappropriate where there is a "fair possibility" of damage to a party or "undue delay."

22  *Dependable Highway Exp., Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1066 (9th Cir. 2007).

23

24  [3] In its reply in support of its motion to intervene (Dkt. 34 at 2), Picayune argued that the time to
    appeal did not run from November 13, 2015 because judgment was not set forth in a "separate

25  document," citing Federal Rule of Civil Procedure 58.  This is incorrect.  *See Rincon Band of
    Luiseno Mission Indians of Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019, 1026 (9th

26  Cir. 2010) (State's appeal, filed within 30 days of summary judgment ruling that State negotiated
    in bad faith in violation of IGRA, was "timely").  But even accepting Picayune's position,

27  judgment would have been deemed entered on April 11, 2016 (150 days from entry in the civil
    docket), Fed. R. Civ. P. 58(c)(2)(B), and the appeal deadline would have passed on May 11,

28  2016, Fed. R. App. P. 4(a)(1)(A).

**ARGUMENT**

I.  **THERE IS NO RISK OF INCONSISTENT JUDGMENTS OR OBLIGATIONS THAT WOULD WARRANT STAYING THE ENFORCEMENT OF THIS COURT'S JUDGMENT**

   A.  **This Court's Judgment Does Not Depend On Whether The Madera Parcel Is Gaming-Eligible "Indian Lands"**

The pending litigation over the trust status of the Madera Parcel provides no basis to stay the effectiveness of this Court's judgment.[4]  As the Court has already recognized (Dkt. 36 at 9:12-15):  "Unless and until the District of Columbia orders the Secretary of the Interior to take the Madera parcel out of trust for North Fork or determines that the Secretary's two-part after-acquired lands determination was in error, those decisions stand; the Madera parcel is Indian land, eligible for Class III gaming."  That was true when North Fork filed this action in March 2015; it was true when this Court entered judgment on the pleadings in November 2015; it was true during the negotiations and mediation between the State and the Tribe that occurred earlier this year; and it remains true today.  Any subsequent change in the status of the Madera Parcel would not alter the soundness of this Court's decision, for two reasons.

First, as a threshold matter, this Court has already observed that challenges to whether a parcel of land "is properly held in trust are irrelevant to whether the State was obligated to negotiate in good faith."  Dkt. 36 at 8:15-16.  Rather, such challenges must be brought pursuant to the APA—and, indeed, Picayune has brought just such a challenge in the District of Columbia Action, and a parallel challenge in this Court filed on July 1, 2016.  It would not have been appropriate to consider any collateral attacks to the Secretary's decisions in this litigation, *see Big Lagoon Rancheria v. California*, 789 F.3d 947, 953-55 (9th Cir. 2015) (en banc), and the pendency of other litigation raising those issues provides no grounds for staying the effectiveness of the judgment in this case.  By statutory design, this remedial suit is designed to proceed on an expedited basis and is limited to a single issue:  "'whether the State has violated the duty

---

[4] Given the Court's observation that "[n]o further action by the Court is expressly authorized by IGRA," Dkt. 36 at 7:22, North Fork understands the stay to which the Court's order refers to be a stay of the effectiveness of the Court's November 2015 judgment.

1  imposed by IGRA to negotiate with North Fork in good faith.'"  Dkt. 36 at 8:11-12.

2  Accordingly, in the *Big Lagoon* litigation, the district court denied the State's motion to stay the

3  litigation pending the adjudication of the status of the Tribe and its land "[b]ecause the status of

4  the Tribe and its eleven-acre parcel has no bearing on whether the State negotiated in good

5  faith." *Big Lagoon Rancheria v. California*, 759 F. Supp. 2d 1149, 1160 (N.D. Cal. 2010).

6      Second, a decision in the District of Columbia Action to set aside the Secretary's two-

7  part determination under 25 U.S.C. § 2719(b)(1)(A) and order the Madera Parcel to be taken out

8  of trust would *independently* preclude the Tribe from gaming on that land.  It would be of no

9  moment that the Secretary had issued procedures for the conduct of class III gaming on such

10  land, because the Madera Parcel would, at that point, no longer be "Indian lands" on which

11  gaming could be conducted under IGRA.  That outcome would be mandated by the express

12  terms of IGRA and would require no further action from this Court or the D.C. Court.  *See* 25

13  U.S.C. § 2710(d)(7)(B)(vii)(II) (limiting the conduct of class III gaming under secretarial

14  procedures to "Indian lands over which the Indian tribe has jurisdiction").

15      Until such time, however, there is no reason to stay the effectiveness of this Court's

16  judgment based on the mere possibility that opponents of the North Fork project might prevail in

17  either of the pending suits against the Secretary challenging the Secretary's decision to take land

18  into trust for the Tribe.  That is especially true here, given that the D.C. Court denied Stand Up's

19  motion for a preliminary injunction barring the Secretary from taking the Madera Parcel into

20  trust on the ground that plaintiffs failed to "demonstrate[] a likelihood of success on the merits of

21  any of [their] claims."  Mem. Op. at 20, *Stand Up v. Dep't of Interior*, Dkt. 42 (D.D.C. Jan. 29,

22  2013).  A stay of this Court's order based on the pending challenge to the trust acquisition, to the

23  extent it hindered the Secretary from issuing procedures, would effectively grant plaintiffs in the

24  District of Columbia Action the very preliminary relief to which the D.C. Court has already

25  decided they are not entitled.[5]

26

27  [5] Nor does the Fifth District Court of Appeal Action provide a basis for a stay.  That litigation

28  concerns a state-law challenge to the Governor's concurrence in the Secretary's decision to take the Madera Parcel into trust for North Fork to develop a gaming facility under IGRA.  As noted above, Stand Up is not likely to succeed:  The superior court sustained the demurrers to Stand

**B.     The Status Of The 2012 Compact Provides No Basis For A Stay**

The litigation over the status of the 2012 Compact in the District of Columbia Action likewise provides no reason to stay the effectiveness of this Court's judgment. This Court's judgment was correct when entered and it remains correct today. Indeed, as reflected in the summary of that litigation above, the U.S. Department of Justice has already informed the D.C. Court that issuance of Secretarial procedures will moot further litigation over the status of the 2012 Compact.

As a threshold matter, the "starting point[]," Dkt. 36 at 5:26, for this litigation has never changed. At the time North Fork filed its complaint in this case, the State of California refused to recognize the validity, or perform any terms, of the 2012 Compact. Dkt. 1 at ¶¶ 6, 9. That remained the State's position throughout the litigation—and, as far as the Tribe is aware, that remains the State's position today. Where a sovereign state refuses to recognize an agreement, that agreement cannot, as a practical matter, "govern[] the conduct of gaming activities" on the tribe's land, as required by 25 U.S.C. § 2710(d)(7)(A). *Cf. United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1299 (9th Cir. 1998) (IGRA's procedures are "designed to protect tribes from recalcitrant states"); *Rincon Band of Luiseno Mission Indians of Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019, 1027 (9th Cir. 2010) (purpose of IGRA's good-faith remedial scheme "to restrain aggression by powerful states"). Thus, the Court correctly observed in its November 13 judgment that it was "undisputed that the State and the Tribe have not entered into an enforceable compact," Dkt. 25 at 12.

To be sure, North Fork had pursued separate litigation in California state court seeking a declaration that the compact was enforceable against the State in early 2014 and had urged the

---

Up's complaint—and both the State and North Fork are defending the superior court's decision on appeal. Order Granting Demurrers at 7, *Stand Up v. Brown*, Case No. MCV062850 (Cal. Super. Ct. Madera Cty. Mar. 3, 2014) ("The court finds Plaintiffs' argument … to be beyond the plain meaning of the language of [the California constitution."). Furthermore, the California Third District Court of Appeal has already rejected a narrow interpretation of the Governor's power in Picayune's first challenge to the concurrence. *Picayune v. Brown*, 229 Cal. App. 4th 1416 (2014). But in the event that Stand Up were to prevail on its claims and the Madera Parcel were subsequently taken out of trust as a consequence of federal APA litigation, that outcome would itself preclude gaming on the land under 25 U.S.C. § 2710(d)(7)(B)(vii)(II).

1  Court in the District of Columbia Action to uphold the validity of the compact in early 2015—

2  but North Fork did not prevail in its state-court litigation, and after the D.C. Court ordered

3  supplemental briefing on whether the State was an indispensable party, North Fork took the

4  position in the District of Columbia Action that the Court cannot adjudicate the compact's

5  validity in the State's absence.  Moreover, even if the D.C. Court rejected North Fork's position

6  that the State is an indispensable party to any such adjudication, North Fork is bound by this

7  Court's judgment and would not now assert that the 2012 Compact is enforceable against the

8  State.  Moreover, North Fork has dismissed its appeal in its state-court case against the State

9  regarding the status of the 2012 Compact.  Stipulation for Dismissal, *Stand Up v. Brown*, Case

10  No. F070327 (Cal. App. Dist. 5 May 18, 2016).

11         And the plaintiffs in the District of Columbia Action (including Picayune) have taken the

12  position that the D.C. Court could not make the 2012 Compact binding on the State.  *See* Dkt.

13  140 at 2 (D.D.C. Nov. 4, 2015) (Picayune filing: "Regardless of the outcome here, no decision

14  by this court will as a practical matter impede or impair California's ability to continue to assert

15  as a party to separate litigation that its compact with North Fork never took effect under state

16  law."); Dkt. 143 at 1 (D.D.C. Dec. 2, 2015) (Stand Up filing: "There is no circumstance where a

17  decision by this Court will validate or invalidate the compact under California law and against

18  the State's interests."); Dkt. 144 at 3 (D.D.C. Dec. 2, 2015) (Picayune filing: "As explained  in

19  Picayune's opening brief, a grant of relief here is consistent with California's position regarding

20  the compact, and a denial of relief is not binding on California and has no effect on its

21  interests.").

22         In any event, as noted above, issuance of the forthcoming Secretarial procedures will

23  moot the issue of the enforceability of the 2012 Compact, relieving the D.C. Court from any

24  obligation to resolve the issue and foreclosing any possibility that the D.C. Court's judgment

25  could be inconsistent with this Court's judgment.

26     **C.     A Stay Is Unnecessary To Protect The Secretary Of The Interior**

27         The Court expressed the view that "imposing a stay would likely lessen the risk of

28  potentially inconsistent requirements being imposed upon the Secretary of the Interior by this

- 12 -

Court and the D.C. District Court." Dkt. 36 at 15:6-8.  North Fork respectfully submits that there is no legal or practical risk of the Secretary facing inconsistent obligations.  First, as discussed above, a decision in the District of Columbia Action to set aside the Secretary's two-part determination and order the Madera Parcel taken out of trust would independently preclude gaming on the land, irrespective of any Secretarial procedures imposed pursuant to this Court's judgment; there is accordingly no risk that the Secretary would be obligated to permit gaming on land that did not qualify as "Indian lands" under IGRA.  Second, the Secretary of the Interior has already taken the position in the District of Columbia action that the issuance of such procedures would moot the pending litigation over the status of the 2012 Compact, as any gaming would occur pursuant to those procedures rather than under the compact; there is accordingly no risk that the Secretary would be obligated to enforce both the 2012 Compact and any procedures she issues.

But there is a more basic reason why a stay is unnecessary:  The Secretary is fully aware of the pending litigation and outstanding challenges to North Fork's gaming project and has not asked for a stay.  The circumstances here are thus distinguishable from the situation in *Big Lagoon Rancheria*, 2012 WL 298464 (N.D. Cal. Feb. 1, 2012), where the State moved for a stay of IGRA's remedial process, which the court granted while the State and the Tribe were still at the negotiation stage and while the State's appeal of the district court's order finding that the State had failed to negotiate in good faith was pending.  In that case, a stay was necessary to protect the State's rights, as the State's appeal would be rendered moot if Secretarial procedures were issued while the appeal was pending.  The stay was also necessary to preserve the integrity of the remedial process, as the State's 60-day timeline to consent to the mediator-selected compact would otherwise have expired during the pendency of the appeal.  Here, the State chose not to appeal this Court's judgment, no party has asked for a stay, and no one's rights will be lost in the absence of a stay.

## II.   A STAY WOULD INTERFERE WITH IGRA'S ORDERLY SCHEME FOR APPROVAL OF GAMING AND PREJUDICE NORTH FORK

Rather than contributing to the efficient administration of justice, a stay in this case risks bringing the already slow process of obtaining approval to game pursuant to a two-part determination to a complete halt.  Gaining approval for a project like North Fork's is a multi-year process that requires multiple, interrelated governmental actions, each of which may give rise to its own set of legal challenges, some of which may take years to resolve.  Among other steps, the tribe must receive a favorable two-part determination from the Secretary, obtain concurrence in that determination from the Governor, undergo an extensive environmental impact review, have land taken into trust by the Secretary, negotiate and conclude an enforceable compact with the State (or, as here, prevail in litigation against the State to force it to return to the bargaining table, and either obtain consent to a compact selected by a court-appointed mediator or have the Secretary of the Interior impose procedures in the absence of a compact).  It bears noting that North Fork began that process *twelve years ago*—North Fork first acquired rights to the Madera Parcel in 2004, Compl. ¶ 36, and since 2012, opponents of the project have filed *six* separate lawsuits in state and federal court attacking the decisions by both the Governor and the Secretary, all but one of which remain pending.[6]  Indeed, Stand Up has already indicated in the District of Columbia Action that it intends to continue litigating in the D.C. Circuit— further delaying the ultimate resolution of its challenges.  *See Stand Up v. Dep't of Interior*, No. 12-2039, Dkt. 106-1 at 11 n.9 (D.D.C. Jan. 9, 2015).  By contrast, this litigation under IGRA's remedial provision took just eight months from start to finish.  *See* Dkt. 1 (Complaint filed March 17, 2015); Dkt. 25 (judgment on the pleadings entered November 20, 2015).

Because of the interrelated nature of the government actions involved in a project like this, staying one case may keep others from moving forward—and there is a real possibility that

---

[6] To date, opponents have had no success in any of these lawsuits.  One of them (the CEQA action) has been finally decided in North Fork's favor.  North Fork has also received favorable decisions in the other cases that were not filed in the past few months, prevailing at the trial court level in state court and defeating the plaintiffs' request for a preliminary injunction in federal court on the ground that plaintiffs were unlikely to succeed on the merits.  And the two recently filed cases largely reformulate arguments that have already been put forward in the others.

1    a stay by this Court could result in just such a standstill here.  In the District of Columbia Action,

2    the United States has taken the position (which North Fork supports) that the issuance of

3    Secretarial procedures will moot two of Stand Up's claims.  Notice of Compact Submission at 2,

4    *Stand Up v. Dep't of Interior*, Dkt. 155 (D.D.C. April 29, 2016).  In response, Picayune moved

5    the court for supplemental briefing on the recent developments arising out of this case and the

6    IGRA remedial process.  Mot. for Supp. Briefing, *Stand Up v. Dep't of Interior*, Dkt. 158

7    (D.D.C. June 3, 2016).  The United States opposed that request, arguing that those issues should

8    be briefed only "after the Department of the Interior issues secretarial procedures."  Opp. to Mot.

9    for Supp. Briefing, *Stand Up v. Dep't of Interior*, Dkt. 159 at 1 (D.D.C. June 20, 2016).  As a

10   result, staying this case may leave both cases in indefinite suspense, each on hold for the other.

11   This is not the process Congress intended.  *See Rincon Band*, 602 F.3d at 1041 ("[T]he function

12   of the good faith requirement and judicial remedy is to permit the tribe to process gaming

13   arrangements on an expedited basis.").

14       These problems are compounded by the necessarily limited scope of this good-faith

15   litigation.  Picayune's collateral challenges to previous actions by the Secretary and the State

16   cannot be litigated in this case.  *Big Lagoon Rancheria v. California*, 789 F.3d 947, 953-55 (9th

17   Cir. 2015).  Moreover, to the extent opponents have any valid challenge to the issuance of

18   Secretarial procedures, that challenge cannot be resolved until procedures issue.  *See*

19   *Confederated Tribes & Bands of Yakama Nation v. United States*, 296 F. App'x 566, 568 (9th

20   Cir. 2008) ("[I]t is difficult to review an agency decision that has yet to be made."); *see also*

21   *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) ("[The] basic rationale [of the ripeness

22   doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling

23   themselves in abstract disagreements over administrative policies, and also to protect the

24   agencies from judicial interference until an administrative decision has been formalized and its

25   effects felt in a concrete way by the challenging parties.").  Again, the process will be left in

26   limbo, with this Court unable to resolve the relevant issues in the case, and no mechanism to

27   resolve the issues externally.  As a result, North Fork would continue to suffer the financial costs

28   of its delayed project, without any hope of timely resolution.  The Court can avoid this

possibility by simply allowing the IGRA remedial process and the many legal challenges to play out on their own.

Nor would declining to issue a stay cause anyone any harm.  If this case proceeds and the Secretary issues class III gaming procedures, those procedures can be challenged just like any other final agency action.  *See, e.g.*, *Texas v. United States*, 497 F.3d 491 (5th Cir. 2007) (challenge to class III gaming procedures issued under 25 C.F.R. part 291).  Indeed, Picayune has already taken steps to halt Secretarial procedures, filing a complaint earlier this month seeking a declaration that "the Secretary cannot prescribe procedures regarding the conduct of class III gaming on the Madera Parcel" and "[i]njunctive relief prohibiting the Department from taking any action required or authorized or otherwise permitted by or under IGRA based upon, in whole or in part, the Madera Parcel constituting 'Indian Lands' under IGRA."  Compl. at 16, 18, *Picayune v. Dep't of Interior*, No. 16-00950, Dkt. 1 (E.D. Cal. July 1, 2016).  If a stay in this case were to stop the Secretary from issuing the procedures it is poised to release, the Court would effectively be granting Picayune the relief it seeks in its new complaint, without requiring Picayune to satisfy the legal requirements for injunctive relief, and without giving North Fork— or the Secretary—an opportunity to litigate the merits.

This delay causes real and substantial harm to North Fork.  Aside from the potential gaming project on the Madera Parcel, North Fork has no economic development activities or revenue source other than federal grants and the California Revenue Sharing Trust Fund.  The longer this expensive and burdensome litigation goes on, the longer North Fork will lack the resources to support its self-sufficiency, tribal government, and citizens' needs.  IGRA "holds out the hope of providing tribes with the economic prosperity that has so long eluded their grasp," *Rincon Band*, 602 F.3d at 1027, but this chance at prosperity will remain out of reach as long as the process is delayed.

## CONCLUSION

For the foregoing reasons, North Fork respectfully requests that this Court not stay the case pending the resolution of related litigation.

1  DATED:  July 15, 2016                    Respectfully submitted,

2

3                                            By:  /s/ Christopher E. Babbitt

4                                            CHRISTOPHER E. BABBITT (SBN 225813)
                                             WILMER CUTLER PICKERING
5                                              HALE AND DORR LLP
                                             1875 Pennsylvania Avenue, N.W.
6                                            Washington, D.C.  20006
                                             Telephone:  (202) 663-6000
7                                            Facsimile:  (202) 663-6363
                                             E-mail: christopher.babbitt@wilmerhale.com
8

9                                            JOHN A. MAIER (SBN 191416)
                                             MAIER PFEFFER KIM GEARY & COHEN LLP
10                                           1440 Broadway, Suite 812
                                             Oakland, CA  94612
11                                           Telephone:  (510) 835-3020
                                             Facsimile:  (510) 835-3040
12                                           E-mail: jmaier@jmandmplaw.com

13

14                                           Attorneys for Plaintiff THE NORTH FORK TRIBE OF
                                             MONO INDIANS OF CALIFORNIA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

THE NORTH FORK TRIBE OF MONO
INDIANS OF CALIFORNIA,

        Plaintiff,

      v.

STATE OF CALIFORNIA,

        Defendant.

Case No. 15-cv-00419

**CERTIFICATE OF SERVICE**

     I hereby certify that, on July 15, 2016, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Eastern District of California using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

            /s/ Christopher E. Babbitt

            CHRISTOPHER E. BABBITT (SBN 225813)
            WILMER CUTLER PICKERING
              HALE AND DORR LLP
            1875 Pennsylvania Avenue, N.W.
            Washington, D.C.  20006
            Telephone:  (202) 663-6000
            Facsimile:  (202) 663-6363
            E-mail: christopher.babbitt@wilmerhale.com