John M. Peebles (SBN 237582)
Steven J. Bloxham (SBN 96384)
Michael A. Robinson (SBN 214666)
Tim Hennessy (SBN 233595)
James Qaqundah (SBN 270700)
Fredericks Peebles & Morgan LLP
2020 L Street, Suite 250
Sacramento, CA 95811
Telephone:  (916) 441-2700
Facsimile:  (916) 441-2067
mrobinson@ndnlaw.com

*Attorneys for Amicus Curiae*
*Picayune Rancheria of Chukchansi Indians*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA,<br><br>           Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>           Defendant. | Case No. 1:15-cv-00419-AWI-SAB<br><br>**AMICUS BRIEF OF PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY**<br><br>Date:      TBA<br>Time:     TBA<br>Court:    2, 8th Floor<br>Judge:    Hon. Anthony W. Ishii |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

I.   FACTS AND PROCEDURAL HISTORY ....................................................................... 1

   A.   Background ............................................................................................................ 1

   B.   The Court's Order for Briefing Regarding a Stay ............................................... 3

II.   ARGUMENT ................................................................................................................. 4

   A.   Each of the related pending actions may impact North Fork's Article III
standing in this case. ...................................................................................................... 4

     1.   The District of Columbia Action impacts the Madera Site's "Indian lands"
status and eligibility for gaming, and the whether the 2012 Compact is in effect............... 8

     2.   The Fifth District Court of Appeal Action impacts the Madera Site's
eligibility for gaming. ................................................................................................... 11

     3.   The Chukchansi Madera Action impacts the Madera Site's eligibility for
gaming. ........................................................................................................................ 13

     4.   The Chukchansi Eastern District Action impacts the Madera Site's eligibility
for gaming. ................................................................................................................... 14

   B.   The Court should impose a stay to ensure judicial efficiency and integrity. ............... 15

CONCLUSION ......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Big Lagoon Rancheria v. California*, 2012 WL 298464 (N.D.Cal. Feb. 1, 2012) ...................... 15

*Big Lagoon Rancheria v. California*, 789 F.3d 947 (9th Cir. 2015) (en banc)................ 3, 7, 8, 15

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962).......................................................... 15, 16, 17

*Confederated Tribes Siletz Indians of Oregon v. United States*, 729 F.3d 688 (9th Cir. 1997) ..................................................................................................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) .......................................................................................................................................... 5

*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767 (9th Cir. 2008)................ 7

*Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039 (9th Cir. 2015) ...................................................... 5

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States*, 367 F.3d 650 (7th Cir. 2004) ...................................................................................................................... 11

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................................. 15

*Larroque v. First Advantage Lns Screening Solutions, Inc.*, 2016 WL 39787 (N.D.Cal. Jan. 4, 2016) ........................................................................................................................... 15

*Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1979).................................. 15, 18

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ...................................................... 15, 16

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Engler*, 304 F.3d 616 (6th Cir. 2002).............................................................................................................................. 7

*Mechoopda Indian Tribe v. Schwarzenegger*, 2004 WL 1103021 (E.D.Cal. Mar. 12, 2004)............................................................................................................................................ 7

*Michigan v. Bay Mills Indian Community*, --- U.S. ----, 134 S.Ct. 2024 (2014) .......................... 5

*Patel v. City of Los Angeles*, 594 Fed.Appx. 415 (9th Cir. 2015) ................................................ 15

*Picayune Rancheria of Chukchansi Indians v. Brown*, Madera County Superior Court Case No. MCV 072004 (filed March 21, 2016) (the "Chukchansi Madera Action")................. 2

*Picayune Rancheria of Chukchansi Indians v. U.S. Dept. of Interior*, E.D.Cal. Case No. 16-cv-00950 (filed July 1, 2016) (the "Chukchansi Eastern District Action") .......................... 2

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997) .................................................. 12

*Stand Up for California v. State of California*, Cal. Court of Appeal, Fifth Appellate District, Case No. F069302 (the "Fifth District Court of Appeal Action") .............................. 2

*Stand Up for California v. State of California*, Madera County Superior Court Case No. MCV062850 (Order, Mar. 3, 2014) .................................................................... 11, 13

*Stand Up for California v. U.S. Dept. of Interior*, D.D.C. Case Nos. 12-cv-02039, 12-cv-2071 (the "District of Columbia Action") ........................................................... 2, 11, 18

*Timbisha Shoshone Tribe v. U.S. Dept. of Interior*, --- F.3d ----, 2016 WL 3034671 (9th Cir. May 27, 2016) .......................................................................................................... 5

*TOMAC v. Norton*, 193 F.Supp.2d 182 (D.D.C. 2002) ....................................................... 7

*United Auburn Indian Community of the Auburn Rancheria v. Edmund G. Brown*, Sacramento County Superior Ct. Case No. 34-2013-80001412 (Order, August 19, 2013) ........................................................................................................................ 13

**Statutes**

25 U.S.C. § 2703(4) .............................................................................................................. 6

25 U.S.C. § 2710(a) .............................................................................................................. 6

25 U.S.C. § 2710(b)(1) .......................................................................................................... 6

25 U.S.C. § 2710(d)(1) ...................................................................................................... 6, 10

25 U.S.C. § 2710(d)(1)(C) ...................................................................................................... 1

25 U.S.C. § 2710(d)(3) .......................................................................................................... 6

25 U.S.C. § 2710(d)(3)(A) ...................................................................................................... 1

25 U.S.C. § 2710(d)(7)(A) ...................................................................................................... 5

25 U.S.C. § 2710(d)(7)(B) ................................................................................................. 6, 10

25 U.S.C. § 2710(d)(7)(B)(iii) ................................................................................................ 6

25 U.S.C. § 2710(d)(7)(B)(iii)-(vii) ........................................................................................ 3

25 U.S.C. § 2710(d)(7)(B)(iv) ................................................................................................ 6

25 U.S.C. § 2710(d)(7)(B)(v) ................................................................................................. 7

25 U.S.C. § 2710(d)(7)(B)(vi) ................................................................................................ 7

25 U.S.C. § 2710(d)(7)(B)(vii) ............................................................................ 3, 7

25 U.S.C. § 2719 ................................................................................................... 8

25 U.S.C. § 2719(a) .............................................................................................. 1

25 U.S.C. § 2719(b)(1) ........................................................................................ 12

25 U.S.C. § 2719(b)(1)(A) .............................................................................. 1, 12

**Constitutional Provisions**

Cal. Const. art. IV, § 19(f) ............................................................................. 2, 13

U.S. Const., art III, § 2, cl. 1 ............................................................................... 4

**Federal Regulations**

25 C.F.R. § 292.23 .............................................................................................. 12

## INTRODUCTION

At the Court's invitation (Doc. 36 at 15), the Picayune Rancheria of Chukchansi Indians ("Chukchansi") files this brief as *amicus curiae* to discuss how the issues being litigated in other actions will impact this case. Chukchansi urges the Court to impose a stay on this case in the interests of judicial economy until the related issues pending in the other actions are finally resolved.

## I.      FACTS AND PROCEDURAL HISTORY

### A.      Background

The relevant facts and procedural history are accurately set forth in the Court's Order of June 27, 2016. Doc. 36. In short, this case concerns one facet of the efforts by the North Fork Rancheria of Mono Indians ("North Fork") to open an off-reservation casino on newly-acquired trust land near the City of Madera (the "Madera Site").

In general, the Indian Gaming Regulatory Act ("IGRA") expressly prohibits gaming on trust land acquired after October 17, 1988. 25 U.S.C. § 2719(a). Therefore, to conduct class III gaming on the Madera Site, North Fork had to obtain a positive "two-part determination" by the Secretary of the Interior, and the Governor of California's affirmative concurrence in that determination. 25 U.S.C. § 2719(b)(1)(A).[1] Additionally, North Fork needed to negotiate a Tribal-State Gaming Compact with the Governor. 25 U.S.C. §§ 2710(d)(1)(C), 2710(d)(3)(A).

---

[1] A "two-part determination" gives an Indian tribe an exception to the general prohibition against IGRA-regulated gaming on newly-acquired trust lands where "the Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination[.]" 25 U.S.C. § 2719(b)(1)(A).

1    The Assistant Secretary for Indian Affairs issued a positive "two-part determination" on

2    September 1, 2011, and requested that Governor Brown give his concurrence.  The two-part

3    determination is currently the subject of a legal challenge in the United States District Court for

4    the District of Columbia in *Stand Up for California v. United States Department of the Interior*,

5    D.D.C. Case Nos. 12-cv-02039, 12-cv-2071 (the "District of Columbia Action").

6        On August 30, 2012, Governor Brown issued a letter to the Secretary of the Interior

7    stating his concurrence in the two-part determination.  The Governor's concurrence is currently

8    the subject of legal challenges in separate actions in three courts:  *Stand Up for California v.*

9    *State of California*, Cal. Court of Appeal, Fifth Appellate District, Case No. F069302 (the "Fifth

10   District Court of Appeal Action"); *Picayune Rancheria of Chukchansi Indians v. Brown*, Madera

11   County Superior Court Case No. MCV 072004 (filed March 21, 2016) (the "Chukchansi Madera

12   Action"); and *Picayune Rancheria of Chukchansi Indians v. U.S. Dept. of Interior*, E.D.Cal.

13   Case No. 16-cv-00950 (filed July 1, 2016) (the "Chukchansi Eastern District Action").

14       On August 31, 2012, the day after his concurrence, Governor Brown executed a gaming

15   compact between the State and North Fork (the "2012 Compact").  The state legislature passed

16   Assembly Bill 277 ("AB 277") on June 27, 2013, to ratify the 2012 Compact, as provided by the

17   state constitution.  *See* Cal. Const. art. IV, § 19(f).  California voters petitioned for a statewide

18   referendum on AB 277, which was placed on the November 4, 2014, general election ballot as

19   Proposition 48.  By a vote of 61%, the voters rejected AB 277.  As a result of the Proposition 48

20   vote, AB 277 never went into effect.  The State took the view that without the legislative

21   ratification, the 2012 Compact also did not take effect.   (The Interior Department has since taken

22   the opposite position, arguing in the District of Columbia Action that the 2012 Compact is in

23

24

---

effect.[2])   The State thereafter refused North Fork's requests to negotiate a new compact for class III gaming at the Madera Site.  Consequently, on March 17, 2015, North Fork initiated this lawsuit.

North Fork's suit alleged that the State of California failed to negotiate a gaming compact in good faith, in violation of IGRA.  On November 13, 2015, the Court granted Judgment on the Pleadings in favor of North Fork.  The Court ordered the Governor and North Fork to undertake the remedial process set forth in IGRA.  *See* 25 U.S.C. § 2710(d)(7)(B)(iii)-(vii).  North Fork and the Governor did not agree on a compact on their own or through the court-appointed mediator, so the remedial process has now reached its final step, Secretarial Procedures.[3]  "[O]nce the Secretary of the Interior prescribes procedures to govern gaming," North Fork "will be authorized to build the casino and engage in the gaming that it seeks."  *Big Lagoon Rancheria v. California*, 789 F.3d 947, 956 (9th Cir. 2015) (en banc).

**B.    The Court's Order for Briefing Regarding a Stay**

On June 27, the Court denied Chukchansi's motion to intervene.  Doc. 36.  The Court also addressed certain matters raised in Chukchansi's intervention motion and suggested that a number of issues currently being litigated in other actions could impact this action and that it

---

[2] Informing the D.C. District Court of the developments in this action, the Interior Department stated, "the deemed approved compact challenged by Stand Up that is currently in effect will be replaced by the procedures issued by the Secretary.  The Secretary does not know exactly when, but it is inevitable.  Until then, the deemed approved compact remains in effect."  D.C. District Ct. Action, Doc. 155 at 2.

[3] Under IGRA, "the Secretary shall prescribe, in consultation with the Indian tribe, procedures – (I) which are consistent with the proposed compact selected by the mediator under clause (iv), the provisions of this chapter, and the relevant provisions of the laws of the State, and (II) under which class III gaming may be conducted on the Indian lands over which the Indian tribe has jurisdiction."  25 U.S.C. § 2710(d)(7)(B)(vii).

may be appropriate to stay this action until those issues are resolved.  *Id.* at 10-15.  The Court

requested briefing from the parties and Chukchansi as *amicus curiae*.  *Id.* at 15.

     The Court recounted that its November 2015 order granting North Fork judgment on the

pleadings rested upon the existence of certain facts that are "statutory prerequisite[s] to suit in an

IGRA action."  Doc. 36 at 5.  It was "undisputed in this case" that the Madera site was eligible

for gaming pursuant to the Secretary's two-part determination and the Governor's concurrence,

and the Secretary's trust acquisition of the site.  *Id.*  The parties also "agreed that no Tribal-State

compact was in effect."  *Id.*  "However," the Court continued, "it is now apparent that the

Secretary's two-part determination, the governor's concurrence with the Secretary's two-part

determination, the fee-to-trust determination, and whether a Tribal-State compact is in effect are

each the subject of pending litigations."  *Id.*

     The Court explained that although these issues "are outside the appropriate scope of this

action, their close relation begs the question of whether this action should be stayed pending

resolution of the District of Columbia Action and/or the Fifth District Court of Appeal Action."

Doc. 36 at 10.  The questions to be resolved in those actions – as well as in the Chukchansi

Madera Action and the Chukchansi Eastern District Action – will impact whether the "case or

controversy" required by Article III exists at all times throughout this proceeding.  *See id.* at 11.

"As a result of the contested determinations noted above, it is possible that the Court could

encounter standing and/or mootness issues."  *Id.*

## II.    ARGUMENT

###     A.    Each of the related pending actions may impact North Fork's Article III standing in this case.

     Article III of the Constitution confines the federal courts' judicial power to deciding

cases and controversies.  U.S. Const. art III, § 2, cl. 1; *see Timbisha Shoshone Tribe v. U.S. Dept.*

*of Interior*, --- F.3d ----, 2016 WL 3034671, *3 (9th Cir. May 27, 2016).  Article III standing

must persist throughout the litigation, or the case becomes moot.  *Timbisha Shoshone Tribe* at

*4.  Article III standing requires a plaintiff to show that "(1) [it] has suffered an 'injury in fact'

that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81

(2000).  In an IGRA bad faith action, both the "actual injury" and "redressability" prongs require

a plaintiff to satisfy IGRA's statutory prerequisites.

IGRA authorizes bad faith lawsuits in § 2710(d)(7)(A), which provides that the federal

district courts "shall have jurisdiction over – (i) any cause of action initiated by an Indian tribe

arising from the failure of a State to enter into negotiations with the Indian tribe for the purposes

of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in

good faith[.]"  25 U.S.C. § 2710(d)(7)(A).[4]

Paragraph (3) reads in relevant part:

> Any Indian tribe having jurisdiction over the Indian lands upon which a class III
> gaming activity is being conducted, or is to be conducted, shall request the State
> in which such lands are located to enter into negotiations for the purpose of
> entering into a Tribal-State compact governing the conduct of gaming activities.
> Upon receiving such a request, the State shall negotiate with the Indian tribe in
> good faith to enter into such a compact.

---

[4] As the Court has explained, although this section appears "couched in jurisdictional terms, [it] is not a limited statutory grant [of] federal jurisdiction[] but a limited abrogation of sovereign immunity."  Doc. 36 at 11, citing *Michigan v. Bay Mills Indian Community*, --- U.S. ----, 134 S.Ct. 2024, 2029 n.2 (2014), and *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1042 (9th Cir. 2015).

25 U.S.C. § 2710(d)(3).[5]

Section 2710(d)(7) continues:

(B)(i)  An Indian tribe may initiate a cause of action described in subparagraph (A)(i) [i.e., a bad faith action] only after the close the 180-day period beginning on the date on which the Indian tribe requested the State to enter into negotiations under paragraph (3)(A).

(ii)  In any action described in subparagraph (A)(i), upon the introduction of evidence by an Indian tribe that –

(I) a Tribal-State compact has not been entered into under paragraph (3), and

(II) the State did not respond to the request of the Indian tribe negotiate such a compact or did not respond to such request in good faith,

the burden of proof shall be upon the State to prove that the State has negotiated with the Indian tribe in good faith the conclude a Tribal-State compact governing the conduct of gaming activities.

25 U.S.C. § 2710(d)(7)(B).

Section 2710(d)(7) finally provides the remedial measures the court is to order if it finds that the State has failed to negotiate a gaming compact in good faith.  First, "the court shall order the State and the Indian Tribe to conclude such a compact within a 60-day period."  25 U.S.C. § 2710(d)(7)(B)(iii).  If within that time they "fail to conclude a Tribal-State compact governing the conduct of gaming activities on the Indian lands subject to the jurisdiction of such Indian tribe," then the parties shall each submit a proposed compact to a court-appointed mediator.  25 U.S.C. § 2710(d)(7)(B)(iv).  The mediator selects one proposed compact and submits it to the

---

[5] IGRA defines the term "Indian lands" as follows:

(A) all lands within the limits of any Indian reservation; and

(B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4).  IGRA governs class II and class III gaming "on Indian lands."  25 U.S.C. §§ 2710(a), 2710(b)(1), 2710(d)(1).

parties.  25 U.S.C. § 2710(d)(7)(B)(v).  The State may consent to the selected compact, 25

U.S.C. § 2710(d)(7)(B)(vi), or not, 25 U.S.C. § 2710(d)(7)(B)(vii).  If the State does not consent,

then the Secretary of the Interior –

> shall prescribe, in consultation with the Indian tribe, procedures – (I) which are
> consistent with the proposed compact selected by the mediator under clause (iv),
> the provisions of this chapter, and the relevant provisions of the laws of the State,
> and (II) under which class III gaming may be conducted on the Indian lands over
> which the Indian tribe has jurisdiction.

*Id.*

From the foregoing statutory provisions, it is apparent that the prerequisites for bringing a

bad faith suit and obtaining the available relief include:  **(1)** the plaintiff must be an Indian tribe

**(2)** *which has jurisdiction over Indian lands* **(3)** *on which it may conduct class III gaming*, and

**(4)** after requesting compact negotiations, *no gaming compact has been entered into under §*

*2710(d)(3).  See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Engler*, 304 F.3d

616, 618 (6th Cir. 2002) (the "statutory prerequisite" of holding Indian lands when seeking

compact negotiations "is an entirely reasonable standing requirement" for an IGRA bad faith

suit); *Mechoopda Indian Tribe v. Schwarzenegger*, 2004 WL 1103021, *4-12 (E.D.Cal. Mar. 12,

2004) (statutory prerequisites for standing to bring an IGRA bad faith action include having

jurisdiction over Indian land and that the land is eligible for gaming); *TOMAC v. Norton*, 193

F.Supp.2d 182, 193 (D.D.C. 2002) (noting that "a tribe gains authority to compel a state to

negotiate concerning Class III gaming only *after* it has obtained 'Indian lands' suitable for a

casino site").  *See also Big Lagoon Rancheria v. California*, 789 F.3d at 950 ("[G]aming is

confined to 'Indian lands' and negotiations are begun by a tribe with jurisdiction over such

lands."); *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 778 (9th Cir.

2008).

As the Court has recognized, the three italicized prerequisites are are still in doubt.  If any of the prerequisites are absent, the plaintiff has not actually suffered the injury the IGRA provision aims to prevent, and, in addition, cannot obtain the ultimate relief available under IGRA, effective gaming procedures prescribed by the Secretary of the Interior.[6]

### 1.      The District of Columbia Action impacts the Madera Site's "Indian lands" status and eligibility for gaming, and the whether the 2012 Compact is in effect.

The District of Columbia Action is an Administrative Procedure Act ("APA") action initiated more than two years before North Fork commenced its bad faith case.  It was consolidated from two suits brought against the U.S. Department of the Interior by Chukchansi and the advocacy group Stand Up for California.  North Fork intervened as a defendant.  The plaintiffs claim the two-part determination was arbitrary and capricious for a variety of reasons, including the Interior Department's failure to adequately consider the detrimental impact that a new off-reservation casino would have on Chukchansi, its tribal members, and its casino, and the Department's failure to conduct an adequate environmental review.  If the D.C. district court concludes that the two-part determination is invalid for any reason, then under IGRA the Madera site would be ineligible for gaming.  *See* 25 U.S.C. § 2719.  (Importantly, without a valid two-part determination, the site would not be eligible for gaming whether or not the land remained in

---

[6] In *Big Lagoon Rancheria*, the Ninth Circuit held, *en banc*, that the State of California could not defend itself from an Indian tribe's IGRA bad faith suit by claiming that the tribe lacked standing because the land in question had been improperly taken into trust and because the tribe was not properly recognized as an Indian tribe. 789 F.3d at 952.  The court held that these arguments "amount to collateral attacks" on decisions of the Bureau of Indian Affairs dating back to 1994 and 1979. *Id.*  "The proper vehicle to make such a challenge is a petition for review pursuant to the APA[.]" *Id.* at 953.  The issues were not only barred by the statute of limitations for APA actions, but because the federal agency that made the decisions was not a party to the bad faith action. *Id.* at 953-54.  These concerns, however, do not affect the Court's discretion to impose a stay in this case, where the standing issues are properly the subject of timely APA actions and other appropriate separate suits.

1  trust.)  Without a valid two-part determination, North Fork would not have standing to bring this

2  suit.  Further, Secretarial Procedures would be ineffective and contrary to IGRA if they

3  purported to allow gaming on ineligible land.

4       The clear consequences that could arise from such a scenario are that the  Interior

5  Department could face contradictory orders from the D.C. District Court and this Court.  In one

6  instance, this Court's existing order, unless stayed, requires the Interior Department to develop

7  and issue procedures under which gaming could occur, in the other instance, the Interior

8  Department could be instructed that the Madera site is not "Indian lands" giving rise to a

9  prohibition against gaming under any circumstances and barring the Interior Department from

10  issuing the procedures required by this Court's existing Order.  Thus, the Interior Department

11  would face contradictory rulings and conflicting Court mandates with which it could not

12  reasonably comply.

13       The District of Columbia Action also involves an APA challenge to the Interior

14  Department's decision to take the Madera site into trust for the benefit of North Fork.  If the D.C.

15  District Court rules against the Department with respect to the trust acquisition, the Madera site

16  would either be removed from trust or the acquisition would treated as a nullity.  Removing the

17  land from trust would render the Madera Parcel ineligible for gaming because it could not

18  qualify as "Indian lands" under 25 U.S.C. 2703(4).  Rather, the land would be ordinary fee land

19  located well outside the boundaries of the North Fork Rancheria and thus subject to the

20  regulatory jurisdiction of California—including the California Constitution's bar against Las

21  Vegas style gaming.  Cal. Const. Art. IV, § 19(e).  In this event, North Fork would lack standing

22  to bring this action for two reasons: (1) the lands are not "Indian lands"; and (2) North Fork

23

24

would not exercise the governmental jurisdiction over the land necessary under IGRA.  25 U.S.C. § 2710(d)(1).

Finally, Stand Up for California's claims in the District of Columbia Action also include a challenge to the Interior Department's publication and "deemed approval" of the 2012 North Fork gaming compact, on grounds that the 2012 compact had not legally been "entered into"  at the time, and indeed never went into effect, because the voter referendum vetoed the compact's legislative ratification.  The Interior Department has defended the 2012 Compact and argues that it was, and remains, in effect.  Accordingly, neither the Interior Department nor the National Indian Gaming Commission has ever recognized the impact California voters' rejection of AB 277 had on the 2012 Compact.  The Interior Department has never issued any notice in the Federal Register that the 2012 Compact is no longer valid or in effect.  Similarly, the National Indian Gaming Commission still includes the 2012 Compact on its list of current tribal-state gaming compacts.  *See* www.indianaffairs.gov/WhoWeAre/AS-IA/OIG/Compacts/index.htm; and http://www.indianaffairs.gov/cs/groups/xasia/documents/text/idc1-027178.pdf.   This, of course, is inconsistent with the Interior Department prescribing Procedures, which IGRA only authorizes as part of the remedial process after it has been proven that a "Tribal-State compact has not been entered into under [25 U.S.C. § 2710(d)(3)]."  25 U.S.C. § 2710(d)(7)(B)(ii)(I).  If the D.C. District Court rules for the Interior Department on this issue then, again, the Procedures would be disallowed or invalidated, and North Fork would lose its standing in this action.

The parties in the District of Columbia Action have filed and fully briefed dispositive motions.  At the D.C. District Court's request, they have also fully briefed the question of whether the State of California is a required party under Rule 19 as to claims concerning the effectiveness of the 2012 Compact.  The court has stayed further proceedings in the case in order

to focus on addressing the motions and briefs already submitted.  District of Columbia Action, Doc. 135. However, it goes without saying that the District of Columbia Action has direct and serious implications for the propriety of this action in the first instance, and the need to impose a stay on the issuance of Secretarial procedures.

### 2. The Fifth District Court of Appeal Action impacts the Madera Site's eligibility for gaming.

The Fifth District Court of Appeal Action will address the question of the California Governor's authority under California law to concur in the Secretary's two-part determination. The plaintiff, Stand Up for California, argues that California law does not give the Governor authority to concur.  The lower court sided with the State and ruled that the Governor's power to concur derives from his authority under the California  Constitution to negotiate and conclude gaming compacts.  *Stand Up for California v. State of California*, Madera County Superior Court Case No. MCV062850 (Ruling on Demurrers, Mar. 3, 2014).  If the Court of Appeal holds that the Governor lacked the authority to concur in the two-part determination, then the determination lacks a valid gubernatorial concurrence and is invalid.  Moreover, the invalidity of the concurrence has direct consequences for the Secretary's previous favorable two-part determination for the Madera Site.

As *Confederated Tribes Siletz Indians of Oregon v. United States*, 729 F.3d 688, 697 (9th Cir. 1997) and *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States*, 367 F.3d 650, 664-665 (7th Cir. 2004) instruct, when a Governor issues a concurrence in a Secretarial two-part determination he does so under State law.  Thus, just as with a compact, a concurrence is only valid if State law authorizes the Governor to concur in a two-part determination, and if the Governor complies with all requirements or limitations State law imposes on the Governor in relation to issuing a concurrence.  *See Pueblo of Santa Ana v. Kelly*,

104 F.3d 1546, 1555 (10th Cir. 1997).  Additionally, as *Pueblo of Santa Ana* instructs, a federal

officer cannot "ratify or authorize an unauthorized state actor's conduct."  *Pueblo of Santa Ana*,

104 F.3d at 1557.

If, as Stand Up claims in the Fifth Appellate District Court Action, Governor Brown

lacked the authority to issue the concurrence, then the exemption from the general prohibition

against gaming on lands acquired after October 17, 1998, found at 25 U.S.C. § 2719(b)(1) is

inapplicable.  Thus, if Stand Up prevails in the Fifth Appellate District Court Action, the Madera

Site will not qualify as "Indian lands" and will not be eligible for gaming activities because the

necessary concurrence never became effective.  *See* 25 U.S.C. § 2719(b)(1)(A).

Secondarily, a ruling that Governor Brown lacked the authority to unilaterally issue a

concurrence in would have further implications in that it would cause the Secretary's favorable

two-part determination for the Madera Site to expire—a problem that cannot be rectified without

the issuance of a new favorable two-part determination.  This is so because Federal regulations

provide that a concurrence must be issued within one year from the date of the Secretary's

request for a concurrence.  If a concurrence does not issue within that one-year window, the two-

part determination expires and is no longer valid.  25 C.F.R. § 292.23 (providing that without the

Governor's concurrence, "the Secretarial Determination will no longer be valid").  Thus, if Stand

Up prevails on its claims that under California law Governor Brown's concurrence was invalid

and never became effective, the Secretary's two-part determination regarding the Madera Site is

no longer valid.  Therefore, due to the nature of the issues presented in the Fifth District Court of

Appeal Action, the decision there will directly affect whether the Interior Department can issue

Procedures under IGRA and whether North Fork has standing to demand such a remedial

1    measure through this bad faith suit.  The appeal is scheduled for argument (which is to include

2    the participation of North Fork's counsel) on July 26, 2016.

3                    **3.      The Chukchansi Madera Action impacts the Madera Site's eligibility
                              for gaming.**

4

5          On or about March 21, 2016, Chukchansi filed an action in Madera County Superior

6    Court challenging the effectiveness of Governor Brown's purported concurrence in the two-part

7    determination ("Chukchansi Madera Action").  Distinct from the *authority* issue on appeal in the

8    Fifth District Court of Appeal Action, the Chukchansi Madera Action addresses the *process* for

     the Governor to concur.

9          In particular, in two separate cases – one in Madera County and one in Sacramento

10   County – California Superior Courts have ruled that the Governor's authority to issue a

11   concurrence derives from Article IV, § 19(f) of the California Constitution, which provides the

12   Governor authority to negotiate and conclude tribal-state gaming compacts.  *Stand Up for

13   California v. State of California,* No. MCV062850 (Madera County Superior Court, Ruling on

14   Demurrers to First Amended Complaint, Mar. 3, 2014, app. pending, FO69302); *United Auburn

15   Indian Community of the Auburn Rancheria v. Edmund G. Brown,* No. 34-2013-80001412

16   (Sacramento County Superior Court, Ruling on Demurrers to First Amended Petition, August 19,

17   2013).

18         The Chukchansi Madera Action alleges that if the Governor's authority to concur in a

19   two-part determination derives from his authority to negotiate and conclude a gaming compact,

20   which, under the state constitution, is "subject to ratification by the legislature," then the

21   Governor's derivative authority to concur must also be subject to ratification by the legislature.

22   Cal. Const. art. IV, § 19(f).  Chukchansi alleges that because the California Legislature never

23   ratified the Governor's concurrence in the two-part determination for the Madera Site, the

24

concurrence was never valid and never became effective.  Additionally, Chukchansi alleges that even if the California Legislature implicitly ratified the Governor's concurrence when it enacted AB 277, that ratification was rejected when the overwhelming majority of California voters overturned AB 277.

If Chukchansi prevails in the Chukchansi Madera Action, then for the same reasons discussed immediately above relative to the Fifth Appellate District Court Action, the concurrence was never valid and never went into effect.  Similarly, again for reasons stated immediately above, if the concurrence never went into effect the Madera Site is not eligible for gaming because it is not "Indian lands" under IGRA and the previously issued two-part determination for the Madera Site is no longer valid or effective.  Thus, if Chukchansi prevails in the Chukchansi Madera Action, North Fork will not have standing to pursue this action and the Secretary will be prohibited from issuing the procedures that must result from this Court's current Order.

The Madera County Superior Court will hear demurrers from the State and from North Fork (which intervened in the case as a defendant) on October 27, 2016.

> **4.** **The Chukchansi Eastern District Action impacts the Madera Site's eligibility for gaming.**

The concurrence and two-part determination issues are also the subject of the Chukchansi Eastern District action against the Interior Department.  That case, which is assigned to Judge Ishii, seeks a judicial declaration that because of the lack of a valid gubernatorial concurrence, the two-part determination is invalid, and the Madera site is not eligible for gaming under IGRA.

Chukchansi also asks in that case for an injunction that would prohibit the Interior Department from prescribing Procedures for gaming on the Madera Site.[7]

**B.      The Court should impose a stay to ensure judicial efficiency and integrity.**

The Court correctly noted that a "district court may stay a proceeding pending the resolution of a matter before another court that impacts standing to litigate the matter before the district court."  Doc. 36 at 14.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Patel v. City of Los Angeles*, 594 Fed.Appx. 415, 416 (9th Cir. 2015); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  It is proper to impose such a stay where another action is pending that "will directly impact whether, as a matter of law, Plaintiff has standing to bring this action."  *Larroque v. First Advantage Lns Screening Solutions, Inc.*, 2016 WL 39787, *2 (N.D.Cal. Jan. 4, 2016).  The Court may impose a stay even at a relatively "late stage in the proceedings."  Doc. 36 at 15.  In *Big Lagoon Rancheria v. California*, 2012 WL 298464 (N.D.Cal. Feb. 1, 2012), *rev'd in part on other grounds* by *Big Lagoon Rancheria*, 789 F.3d 947, the district court imposed a stay on the remedial proceedings in an IGRA bad faith suit at the final stage of the process, temporarily suspending the Interior Secretary's development and issuance of procedures for class III gaming.  2012 WL 298464 at *5-6.

The Ninth Circuit adheres to the following framework for evaluating the imposition of a stay:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.

---

[7] In part, the Chukchansi Eastern District Action seeks to stop the Interior Department from acting prematurely while the Madera site's eligibility for gaming is in doubt.  In the event the Court imposes a stay in this case, temporarily lifting the requirement for the Interior Department to prescribe Procedures, Chukchansi anticipates that an application for a stay of similar duration will be made in the Chukchansi Eastern District Action as well.

> Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer  v. Mirant Corp.*, 398 F.3d at 1110, quoting *CMAX, Inc. v. Hall*, 300 F.3d at 268.[8]  The balance of the competing interests that would be affected by a stay in this case favors the imposition of a stay.

A temporary stay is favored where it will further the "orderly course of justice."  *CMAX, Inc. v. Hall*, 300 F.3d at 268.  A stay in this case will allow several essential and substantial questions to be answered with finality, avoiding the possibility that the Department of the Interior will waste its time and efforts on Procedures that, if they are not simply a nullity from the moment they are prescribed, turn out to be contrary to IGRA, engendering still more litigation.  Additionally, as the Court stated, a stay "would likely lessen the risk of potentially inconsistent requirements being imposed upon the Secretary of the Interior by this Court and the D.C. District Court."  Doc. 36 at 15.  A stay will lessen the same risk with respect to inconsistent orders from the actions in California courts as well.

Neither North Fork nor the State will suffer hardship as a result of the stay.  Depending on the outcome of the related cases, North Fork may well end up deprived of the remedy it sought to obtain in this action, but "this is not the kind of prejudice which should move a court to deny a requested postponement."  *CMAX, Inc. v. Hall*, 300 F.2d at 269.  Rather, "justice will be

---

[8] In *Landis*, the Court stated that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Landis v. N. Am. Co.*, 299 U.S. at 255.  That observation is not applicable in the present case because North Fork will have its say as a litigant in the District of Columbia Action, the Fifth District Court of Appeal Action, and the Chukchansi Madera County Action.  *See CMAX, Inc. v. Hall*, 300 F.2d at 269 n.8.

1    served" if the absence of a case or controversy and North Fork's lack of standing are revealed

2    before to the final consummation of the Court's remedial order.  *Id.*  The Court has a continuing

3    obligation to examine its jurisdiction to grant relief.  *B.C. v. Plumas Unified School Dist.*, 192

4    F.3d 1260, 1264 (9th Cir. 1999).  In this case, that depends on whether the Madera Site

5    constitutes Indian lands eligible for gaming under IGRA – which turns on the validity of the two-

6    part determination, the Governor's concurrence in that determination, and the trust acquisition –

7    and on whether an effective gaming compact is already in place.  The Court has held that

8    litigation of the legal issues which determine North Fork's standing and the Court's ability to

9    grant the relief allowed under IGRA is "outside the appropriate scope of this action[.]"  Doc. 36

10   at 10.  But because there are serious questions about whether these statutory prerequisites have

11   been met, and the questions are all being litigated in the related cases, the Court's duty to ensure

12   the plaintiff's Constitutional standing requires the Court to impose a stay on this action, wait for

13   the other courts' determinations, and then conclude this case as appropriate in light of the

14   complete picture.

15        The Fifth Appellate District Court Action and the Chukchansi Madera Action in

16   particular support the imposition of a stay on the issuance Secretarial procedures.  As explained

17   above the two cases raise important matters of California Constitutional law that have a direct

18   impact on whether North Fork ever had a right to pursue this action in the first instance—and

19   this Court's ultimate ability to hear and decide North Fork's claims.  Because, as the Court ruled

20   in its June 26, 2016, Order, none of the California Constitution issues "are subject to a

21   determination in this action" (Doc. 36, at 8), the Court should impose a stay on the issuance of

22   Secretarial procedures until the California courts have had an opportunity to determine critical

issues concerning the contours of the Governor's constitutional authority as it pertains to granting a concurrence to a Secretarial two-part determination.

In addition to the practical considerations addressed above, the delay resulting from the stay will be a "reasonable time in relation to the urgency of the claims." *Levya v. Certified Grocers of California*, 593 F.2d at 864. North Fork commenced its efforts to conduct gaming at the Madera site more than ten years ago, and one or more years have often separated the key milestones in its progress. The prerequisite issues are set to be decided by the courts in which they are pending in fairly short order – in the District of Columbia Action, cross-motions for summary judgment are fully briefed; the Fifth District Action will be argued on July 26, 2016; and in the Chukchansi Madera Action, the court will hear the State's and North Fork's demurrers on October 27, 2016.

There is no certainty that a stay will cause any actual delay at all because the stay may end before the Interior Department would have issued procedures and before North Fork would have taken any further steps toward opening a gaming facility. IGRA does not impose any time requirement on the Secretary for the prescription of gaming procedures. Congress was evidently aware the process could be lengthy, depending on the circumstances of each case. Moreover, even now there is no fundamental legal impediment to North Fork constructing and completing a gaming facility at the Madera site, to a point just short of conducting gaming activities, but North Fork has not done so.[9] Presumably, this is because it, and its financial backers, recognize that substantial legal uncertainties still exist which present a risk too great to devote resources to the project. North Fork's intervention in the related cases is an acknowledgment that the issues

---

[9] The D.C. district court has ordered North Fork to notify the parties and the court at least 120 days before undertaking any "physical alteration of the land at the Madera Site." District of Columbia Action, Docs. 41 at 1-2, 42 at 50.

therein are critical to its project.  Given these uncertainties, the project is not likely to break

ground until the legal questions are finally resolved.  If the related cases all conclude in favor of

North Fork, then it will be able to begin building and operating its gaming facility without active

litigation threatening to undo its work, and with all significant legal hurdles behind it.  A

temporary stay will cause little or no hardship to North Fork.

While the hardship arising from the imposition of a stay is uncertain, the fact that a stay

would promote judicial economy is not.  The Court has already recognized that the issues raised

in three of the other four pending cases have direct implications for this action.  The imposition

of a stay allows those issues to be resolved with certainty in such a way as to confirm or deny the

Court's ability to allow the Secretary to establish procedures for the conduct of gaming at the

Madera Site.  Conversely, allowing the Secretary to establish procedures at this juncture serves

no purpose other than to put all of the interested parties in a position of uncertainty that will only

be resolved with additional, and necessarily more complex litigation in the future.

## CONCLUSION

For the foregoing reasons, the Picayune Rancheria of Chukchansi Indians respectfully

urges the Court to impose a stay on this action pending final resolution of the related litigation of

prerequisite issues.

Dated:  July 15, 2016                               Respectfully submitted,

By:   /s/ *Michael A. Robinson*
                                                             Michael A. Robinson
                                                             Fredericks Peebles & Morgan LLP
                                                             2020 L Street, Suite 250
                                                             Sacramento, California 95811
                                                             T: (916) 441-2700/F: (916) 441-2067

                                                             Attorneys for Picayune Rancheria of Chukchansi
                                                             Indians