John M. Peebles (SBN 237582)
Steven J. Bloxham (SBN 96384)
Michael A. Robinson (SBN 214666)
Tim Hennessy (SBN 233595)
James Qaqundah (SBN 270700)
Fredericks Peebles & Morgan LLP
2020 L Street, Suite 250
Sacramento, CA 95811
Telephone:  (916) 441-2700
Facsimile:  (916) 441-2067
mrobinson@ndnlaw.com

*Attorneys for Amicus Curiae*
*Picayune Rancheria of Chukchansi Indians*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA,<br><br>          Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>          Defendant. | Case No. 1:15-cv-00419-AWI-SAB<br><br>**RESPONSE BRIEF OF AMICUS CURIAE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY**<br><br>Date:     TBA<br>Time:    TBA<br>Court:   2, 8th Floor<br>Judge:   Hon. Anthony W. Ishii |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

   I.   RESPONSE TO NORTH FORK ..................................................................................... 1

      A.   A stay will protect the Court's limited jurisdiction over cases and controversies by allowing serious standing issues to be resolved before this action concludes prematurely. ........................................................................................................... 1

      B.   The status of the 2012 Compact under IGRA is critical to whether the Court validly can order Secretarial procedures and whether the Secretary can prescribe them. ..................................................................................................................... 4

      C.   A stay would avoid imposing a court-ordered obligation upon the Secretary that conflicts with other court orders or with IGRA. ............................................ 7

      D.   A stay will promote judicial economy and the orderly course of justice. ....................... 9

   II.   RESPONSE TO THE STATE ........................................................................................ 12

CONCLUSION .......................................................................................................................... 13

RESPONSE BRIEF OF AMICUS CURIAE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY

i

# TABLE OF AUTHORITIES

**Cases**

*Big Lagoon Rancheria v. California*,
   759 F.Supp.2d 1149 (N.D.Cal. 2010) .................................................................................. 2, 3

*Big Lagoon Rancheria v. California*,
   789 F.3d 947 (9th Cir. 2015) (en banc) ................................................................................ 1, 2

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ................................................................................................................ 11

*Frederick County Fruit Growers Ass'n, Inc. v. McLaughlin*,
   703 F.Supp. 1021 (D. D.C. 1989) ........................................................................................... 11

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
   445 U.S. 375 (1980) ................................................................................................................ 11

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .................................................................................................................. 3

*Lew v. Countrywide Financial Corp.*,
   2009 WL 1384975 (N.D. Cal. Feb. 24, 2009) ....................................................................... 12

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ................................................................................................. 3

*Pueblo of Santa Ana v. Kelly*,
   104 F.3d 1546 (10th Cir. 1997) ............................................................................................. 4, 5

*Rincon Band of Luiseno Mission Indians v. Schwarzenegger*,
   602 F.3d 1019 (9th Cir. 2010) .............................................................................................. 2, 10

*Stand Up for California v. State of California*,
   Cal. Court of Appeal, Fifth Appellate Dist., Case No. F069302 ............................................. 12

*Stand Up for California v. U.S. Dept. of Interior*,
   919 F.Supp.2d 51 (D. D.C. 2013) ..................................................................................... 3, 4, 10

*United States v. Backlund*,
   689 F.3d 986 (9th Cir. 2012) ..................................................................................................... 2

*United States v. Spokane Tribe of Indians*,
   139 F.3d 1297 (9th Cir. 1998) ................................................................................................... 6

**Federal Statutes**

18 U.S.C. § 1166(d) .................................................................................................................... 6

25 U.S.C. § 2710(d)(3)(A) ......................................................................................................... 1

25 U.S.C. § 2710(d)(3)(B) ......................................................................................................... 5

25 U.S.C. § 2710(d)(7)(A)(i) ..................................................................................................... 1

25 U.S.C. § 2710(d)(7)(B)(ii)(I) ................................................................................................ 5

25 U.S.C. § 2710(d)(7)(B)(iii) ................................................................................................... 6

25 U.S.C. § 2710(d)(7)(B)(iv) ................................................................................................. 10

25 U.S.C. § 2710(d)(7)(B)(vi) ................................................................................................. 10

25 U.S.C. § 2710(d)(8) .............................................................................................................. 5

**Other Authorities**

Indian Gaming, 78 Fed. Reg. 62649 (Oct. 22, 2013) ............................................................ 4, 5

RESPONSE BRIEF OF AMICUS CURIAE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY

iii

# INTRODUCTION

*Amicus curiae* Picayune Rancheria of the Chukchansi Indians ("Chukchansi") submits this brief in response to the Defendant State of California's ("State") Response to Order Requiring Briefing on Whether the District Court Should Stay This Action (Doc. 37) and Plaintiff North Fork Rancheria of Mono Indians' ("North Fork") Opening Supplemental Brief Opposing a Stay (Doc. 38).[1]

## I. RESPONSE TO NORTH FORK

### A. A stay will protect the Court's limited jurisdiction over cases and controversies by allowing serious standing issues to be resolved before this action concludes prematurely.

North Fork begins with the misdirected assertion that a stay is unwarranted because "this Court's judgment does not depend on whether the Madera Parcel is gaming-eligible 'Indian lands.'" Doc. 38 at 1. *See also id.* at 9 (quoting the Court's order noting that trust status is "irrelevant to whether the State was obligated to negotiate in good faith"). However, this question is critical to the existence of a case or controversy for the Court to adjudicate, and to the plaintiff's standing to seek and obtain the remedy for bad faith negotiation available under IGRA, as a statutory right of action only arises if the plaintiff tribe has jurisdiction over Indian lands on which class III gaming may be conducted. 25 U.S.C. §§ 2710(d)(7)(A)(i), 2710(d)(3).

The *Big Lagoon* case, on which North Fork relies to minimize the importance of this question, is distinguishable from this action because it arose in completely different procedural circumstances. *See Big Lagoon Rancheria v. California*, 789 F.3d 947 (9th Cir. 2015) (en banc).

---

[1] Depending on the Court's inclination, the nature of the stay could be to suspend the effectiveness of the Court's Order dated November 13, 2015. Or the Court may vacate that order and stay further proceedings, if it concludes it would benefit the parties to restart the negotiation and mediation process against the backdrop that emerges when the stay is lifted, which, if nothing else, will feature less uncertainty. The Court might also, or alternatively, affirmatively order the Interior Secretary not to prescribe gaming procedures.

There, the Ninth Circuit held that "belated collateral" challenges to the validity of decades-old actions by the Department of the Interior were not proper subjects of an Indian tribe's bad faith litigation. *Id.* at 953-54.  The Court explained that "parties cannot 'use a collateral proceeding to end-run the procedural requirements governing appeals of administrative decisions.'" *Id.* at 953 (quoting *United States v. Backlund*, 689 F.3d 986, 1000 (9th Cir. 2012)).  "The proper vehicle to make such a challenge is a petition for review pursuant to the APA[.]" *Big Lagoon* at 953.   In *Big Lagoon*, California had not brought an APA action, nor had it joined any federal agency or official. *Id.*  And with good reason, as "such an action would [have] be[en] time barred." *Id.*  Thus, *Big Lagoon* involved the State's effort to challenge the basis of the tribal plaintiff's standing on grounds that were simply not subject to review at that time and with those parties.  Big Lagoon Rancheria's federally-recognized tribal status and the status of its trust land were, by that point, not alterable through litigation.  In contrast, the facts required to establish and maintain North Fork's standing in this case are not only subject to change, but are presently the subject of pending litigation.  If the Court cannot resolve these questions as part of its adjudication of North Fork's bad faith claim, then the Court should wait for the questions to be answered in the related actions to ensure its order is founded on valid jurisdiction.[2]

---

[2] North Fork also relies on a decision by the district court in the *Big Lagoon* litigation, but mischaracterizes the decision.  Doc. 38 at 10.  North Fork claims the court "denied the State's motion to stay the litigation pending the adjudication of the status of the Tribe and its land '[b]ecause the status of the Tribe and its eleven-acre parcel has no bearing on whether the State negotiated in good faith.'" *Id.* (quoting *Big Lagoon Rancheria v. California*, 759 F.Supp.2d 1149, 1160 (N.D. Cal.  2010)).  In fact, the quoted rationale applied to the court's denial of the State's request for a continuance of the Tribe's summary judgment motion to allow the State to undertake additional fact-finding, pursuant to former Federal Rule of Civil Procedure 56(f).  759 F.Supp.2d at 1160.  The court also denied the State's request for a stay, but that was not sought "pending the adjudication of the status of the Tribe and its land," as North Fork states.  Rather, the State sought a stay "pending the United States Supreme Court's decision on its petition for a writ of certiorari in *Rincon* [*Band of Luiseno Mission Indians v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010)]," a case bearing on IGRA bad faith actions but unrelated to the status of Big

RESPONSE BRIEF OF AMICUS CURIAE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY

2

1       North Fork also focuses on the fact that, if the District of Columbia District Court sets aside the Secretary's two-part determination, that decision "would independently preclude the Tribe from gaming on that land." Doc. 38 at 10. This argument ignores the premise of this Court's suggestion that a stay appears to be warranted: if the two-part determination is vacated, then North Fork will not have had standing to maintain this suit and to obtain a court order requiring the Secretary to prescribe gaming procedures. *See* Doc. 36 at 13.[3]

      North Fork also suggests that the Court should disregard the possibility that the basis for North Fork's standing may be invalidated based on its characterization that the claims in question have minimal likelihood of success. Doc. 38 at 10 & fn.5. Primarily, North Fork points to the District of Columbia District Court's 2013 order denying the motion for preliminary injunction sought by plaintiff Stand Up for California ("Stand Up"). *Stand Up for California v. U.S. Dept. of Interior*, 919 F.Supp.2d 51 (D. D.C. 2013) (the "District of Columbia Action"). It is important to note that Chukchansi did not seek a preliminary injunction in the District of Columbia Action, and Stand Up has since amended its Complaint, so the court's conclusions regarding the likelihood of success apply only to those Stand Up claims then at issue.[4] Several new and different claims are presented in the plaintiffs' motions for summary judgment now before the District of Columbia District Court. These include claims that the Governor's

---

Lagoon Rancheria or its land. 759 F.Supp.2d at 1160. The court did not explain its rationale for denying the stay except to cite *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005), and *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), cases which describe the authority and the test for such a stay.

[3] Contrary to North Fork's assertions in its brief, a decision in the District of Columbia Action to set aside the two-part determination would not necessarily require the Madera site to be taken out of trust. The two-part determination and trust decision are separate (though related), and the land could remain in trust for North Fork but not be "Indian lands" eligible for gaming.

[4] In addition, as discussed below, likelihood of success on the merits is not one of the factors considered when determining whether to stay an action pending the outcome of another action.

RESPONSE BRIEF OF AMICUS CURIAE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE
ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY
3

concurrence is invalid, and that Proposition 48's rejection of the Madera site for gaming and rejection of the 2012 Compact render the Secretary's decisions invalid. *Compare* District of Columbia Action, 919 F.Supp.2d 51 (Doc. 42, Memorandum Opinion denying Stand Up's motion for preliminary injunction), *with* Doc. 106 (Stand Up's Motion for Summary Judgment) *and* Doc. 108 (Picayune Rancheria's Motion for Summary Judgment). The court has not made any ruling regarding these issues, preliminary or otherwise.

Some of the pertinent facts have also changed in the intervening years, including the California referendum rejecting the 2012 Compact. In determining that the Secretary had likely reached a rational conclusion regarding the economic detriment to Chukchansi, the District of Columbia District Court cited the provisions of the 2012 Compact which required "the North Fork Tribe to pay the Picayune Tribe what will likely amount to millions of dollars each year until 2020 '[t]o mitigate the potential economic impact'" of North Fork's casino. *District of Columbia Action*, 919 F.Supp.2d at 76. With such provisions now in question, the court might reach a different conclusion.

**B.     The status of the 2012 Compact under IGRA is critical to whether the Court validly can order Secretarial procedures and whether the Secretary can prescribe them.**

More than a year before North Fork commenced this action, the Secretary of the Interior published notice that North Fork's 2012 Compact "is considered to have been approved[.]" Indian Gaming, 78 Fed. Reg. 62649 (Oct. 22, 2013). That agency action has been in effect since 2013, and it is still in effect.[5] On that basis, this action was, and remains, premature. Although

---

[5] To be clear, Chukchansi believes that the Secretary never should have deemed the 2012 Compact approved or placed it into effect, and that the agency action doing so should be set aside. Briefly, this is because "the compact must be validly entered into by a state before it can go into effect," *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1555 (10th Cir. 1997), and "state law determines the procedures by which a state may validly enter into a compact," *id.* at 1553.

this provides grounds to dismiss the complaint entirely, in the present procedural posture it also supports imposing a stay and then restarting the action if and when the controversy ripens.

IGRA provides, "Any State and any Indian tribe may enter into a Tribal-State compact governing gaming activities on the Indian lands of an Indian tribe, but such compact shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register."  25 U.S.C. § 2710(d)(3)(B).  The Secretary of the Interior published notice of the 2012 Compact taking effect in October, 2013.  Indian Gaming, 78 Fed. Reg. 62649.  The Secretary has not subsequently rescinded or otherwise acted to undo this 2013 agency action, and no court has set it aside.

To pursue a bad faith suit, a tribal plaintiff must show that "a Tribal-State compact has not been entered into[.]"  25 U.S.C. § 2710(d)(7)(B)(ii)(I).  The Secretary's notice of deemed approval of the 2012 Compact, which caused the Compact to "take effect," carries the necessary implication that the Compact was "entered into" – because IGRA only contemplates the publication of notice of approval of "such compact," i.e., one that a State and an Indian tribe have "enter[ed] into."  25 U.S.C. § 2710(d)(3)(B).  *See also* 25 U.S.C. § 2710(d)(8) (authorizing the Secretary to approve, disapprove, or "consider[] to have been approved" "any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe."); *Pueblo of Santa Ana v. Kelly*, 104 F.3d at 1555 ("the compact must be validly entered into by a state before it can go into effect, via Secretarial approval, under IGRA").[^]

---

[^]: Under California law, the 2012 Compact was not validly entered into because Proposition 48 vetoed the required legislative ratification of the compact.  The Secretary's action ignored state law and placed the put the compact into effect so that it is, for now at least, "entered into" for purposes of IGRA and federal law, but not under state law.

The Court has recognized that "[u]nless and until the District of Columbia orders the Secretary of the Interior to take the Madera parcel out of trust for North Fork or determines that the Secretary's two-part after-acquired lands determination was in error, those decisions stand; the Madera parcel is Indian land, eligible for Class III gaming." Doc. 36 at 9. The same is true of the 2012 Compact. Unless and until the District of Columbia District Court orders the Secretary to undo the agency action which placed the 2012 Compact into effect, that decision stands; the agency's action remains effective.[6]

The consequence of the Secretary's action placing the 2012 Compact into effect is that North Fork lacked standing, and continues to lack standing, to bring this suit. Under the statutory framework, only if a Tribal-State compact has not been entered into may the Court find that the State has failed to negotiate with the tribal plaintiff in good faith, and only after making that finding shall the Court order the statutory remedy. 25 U.S.C. § 2710(d)(7)(B)(iii).

The gaming compact issue therefore is notably different from the issues regarding the status of the Madera site as "Indian lands" that are eligible for gaming. On one hand are the agency decisions regarding the *Madera site itself*, the current status of which supports North Fork's present standing in this action, though the decisions are being challenged and standing may be lost. But the agency decision regarding the *2012 Compact*, on the other hand, currently

---

[6] North Fork's suggestion that the State has the last word on whether the 2012 Compact was "entered into," Doc. 38 at 11, ignores the federal government's role as the gatekeeper for approving gaming compacts and putting them into effect, and as the sole authority to enforce the prohibition against gaming in Indian country without an effective compact. *See* 18 U.S.C. § 1166(d); *United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1299 (9th Cir. 1998). In the face of the Interior Department's action making the 2012 Compact effective, it is contrary to IGRA to ignore that action and vest authority in the State and North Fork to decide between themselves whether the Compact was entered into under IGRA. When the parties are given that authority in order to maintain a federal lawsuit between them, it is also contrary to Article III of the Constitution.

exists as a bar to North Fork's standing in this action, though this too may change if the judicial challenge succeeds.

North Fork argues that "issuance of Secretarial procedures will moot further litigation over the status of the 2012 Compact." Doc. 38 at 11. This puts the cart before the horse. The Secretary cannot – does not have statutory authority to – prescribe gaming procedures while there is already a gaming compact in effect. IGRA does not allow the Secretary both to approve a compact and to prescribe procedures, and then choose which of the two actions to recognize. Imposing a stay on the effectiveness of the Court's November order, or vacating the order and staying further proceedings, would alleviate this untenable situation.

**C.    A stay would avoid imposing a court-ordered obligation upon the Secretary that conflicts with other court orders or with IGRA.**

North Fork is incorrect to argue that the Secretary of the Interior faces no risk of inconsistent obligations. *See* Doc. 38 at 13. North Fork describes events occurring in a certain order, starting with the Secretary prescribing procedures. After that occurs, North Fork argues, then the Secretary will not be bound by this Court's order (having discharged her obligation), and the chips will fall where they may with respect to the legal status of the Madera site. Further, it is argued, when the Secretary prescribes procedures, the challenge against the effectiveness of the 2012 Compact approval will be mooted.[7] But, of course, it is also possible

---

[7] Somehow, in this scenario, the Secretary will prescribe procedures for North Fork despite a gaming compact already being in effect between the State and North Fork, the existence of which should preclude Secretarial gaming procedures. Perhaps the Secretary intends to rescind approval of the 2012 Compact simultaneously with issuing procedures. She has not done so yet, however, and instead she defends the approval decision and asserts that it cannot be undone. The federal defendants argue in the District of Columbia Action that the "deemed approval … is reasonable and complies with IGRA," District of Columbia Action, Doc. 112-1 at 26, and that "[n]othing in IGRA permits the Secretary to revisit, or otherwise rescind, publication of a compact in the Federal Register," *id.* at 30. If IGRA does not authorize this solution now, it is difficult to see how it would allow the Secretary to decide to replace an effective compact with

RESPONSE BRIEF OF AMICUS CURIAE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY
7

that the District of Columbia District Court will rule *before* the Secretary prescribes procedures. And if that ruling vacates either the two-part determination or the land-into-trust decision, or upholds the approval of the 2012 Compact, then the Secretary would have conflicting court orders to comply with. Similar scenarios arise from the state court cases: if, before the Secretary prescribes gaming procedures, the Fifth District Court of Appeal were to hold that the California Governor lacked authority to concur in the two-part determination, or the Madera County Superior Court were to hold that the Governor's concurrence never went into effect for lack of an effective ratification by the legislature, then the two-part determination would be invalidated, the Madera site would be ineligible for gaming, and the Court's order to prescribe gaming procedures would be in conflict with IGRA.

Contrary to North Fork's argument, *see* Doc. 38 at 13, the fact that the Secretary of the Interior (a non-party) has not sought to stay this case is not a reason to allow the action to conclude prematurely. First, if the Secretary desired additional time to issue procedures, she could simply take more time, within reasonable limits. IGRA does not impose a time limit on the Secretary's issuance of gaming procedures. Second, a primary reason a stay is necessary in this case is to confirm the plaintiff's standing to obtain court-ordered gaming procedures under IGRA. The Court should not abdicate its responsibility to ensure it has jurisdiction over this action. North Fork asserts that "no one's rights will be lost in the absence of a stay," Doc. 38 at 13, but if this is true, it is only because all those directly involved – the State, North Fork, and the Interior Department – appear to be aligned or at least resigned to the inevitability of North Fork operating a gaming facility pursuant to Secretarial procedures at the Madera site. IGRA does not

---

procedures. Rather than mooting any outstanding questions, prescribing procedures at this point would only lead to more questions and a thicker tangle of uncertainty.

allow them to agree on this outcome among themselves; it requires a court order, and it is the Court's constitutional duty to be sure its order arises from an actual case or controversy.

### D. A stay will promote judicial economy and the orderly course of justice.

Recognizing "the interrelated nature of the government actions involved in a project like this," North Fork argues that a stay is unwise because "staying one case may keep others from moving forward." Doc. 38 at 14. As support, North Fork points to a brief filed by the federal defendants in the District of Columbia Action, in which they argued against Chukchansi's request for supplemental briefing to address the impact of this Court's order and the resulting remedial process and stated the position that "the appropriate time to brief the issues raised in Picayune's motion is after the Department of the Interior issues secretarial procedures[.]" District of Columbia Action, Doc. 159 at 1; *see* Doc. 38 at 15.

Even if the District of Columbia District Court accepts this argument (which is far from certain) it does not mean the entire District of Columbia Action will be suspended, but rather only that the Court may refrain from making decisions based on the issues not yet briefed: if the 2012 Compact was not entered into, or is not enforceable, or is not in effect, how would that affect the validity of the Secretary's two-part determination and land-into-trust decision, both of which appear to have relied on the existence of the 2012 Compact? And how would the terms of the Secretarial procedures affect the answer to that question? Meanwhile, the District of Columbia District Court could proceed to set aside either of the Secretarial actions on other grounds, and would never need to reach these questions. Or, the Court could reject the plaintiffs' other arguments and reserve judgment on this outstanding issue pending further briefing or developments.

RESPONSE BRIEF OF AMICUS CURIAE PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS ON THE ISSUE OF WHETHER THE COURT SHOULD IMPOSE A STAY

Like the various government actions necessary to North Fork's gaming project,[8] all the pending litigation is interrelated, and to allow the gears to mesh smoothly without unduly disrupting the entire machine, the courts should endeavor to take judicial actions in a rational order.  In this case, that means first allowing the facts and legal outcomes that have an impact on the plaintiff's standing in this action to fully develop in the other actions, and then conclude this case accordingly.  Nothing to be decided in this case, however, is so fundamental to any other action that such other action would need to be entirely stayed to await the conclusion here.

North Fork cites *Rincon* out of context to suggest that a stay of this action would be contrary to Congressional intent.  Doc. 38 at 19.  *Rincon* stated, "the function of the good faith requirement and judicial remedy is to permit the tribe to process gaming arrangements on an expedited basis, not embroil the parties in litigation over their subjective motivations." *Rincon Band of Luiseno Mission Indians v. Schwarzenegger*, 602 F.3d at 1041.  The *Rincon* Court was discussing whether the court should evaluate the State's good faith objectively or subjectively, quickly concluding that an objective analysis was appropriate, based in part on the fact that objective analysis would streamline the litigation, a goal in support of the statute.  But that part of this litigation is over, and with respect to the only part that remains – the prescription of Secretarial gaming procedures – Congress gave the Secretary no time limits.  This is in contrast to the 60-day limit on the court-ordered Tribal-State negotiation period and the 60-day limit on the period for the State to consent to a mediator-selected compact.  25 U.S.C. § 2710(d)(7)(B)(iv), (vi).  At this stage of a bad faith suit, the imposition of a stay would not be

---

[8] *See*, *e.g.*, *District of Columbia Action*, 919 F.Supp.2d at 71 (the court noting that "the Secretary's decision under the IGRA must logically be finalized *before* the Secretary's decision under the IRA can be made. … Similarly, the governor's concurrence is plainly required before gaming on trust land can be permitted.").

contrary to the letter or the spirit of IGRA.  There is no indication that either *Rincon* or IGRA support turning a blind eye to the potential for fundamental Article III standing deficiencies in the interest of expediting litigation.

North Fork's argument that no stay is necessary because Secretarial gaming procedures can be challenged in separate litigation is not persuasive.  Judicial economy disfavors adding to the litigation burden of the courts, the parties, or the public if it reasonably can be avoided.  A future APA action to challenge the Secretarial procedures is avoidable by keeping the steps of this multi-court process in a rational sequence.  Furthermore, it is far from clear that a plaintiff can bring an APA challenge to the prescription of Secretarial procedures under section 2710(d)(7), since the prescription will have been mandated by court order.  "An agency acting on the express instructions of a federal court simply cannot be deemed to have violated the APA; at the very least, the agency cannot be deemed to have acted in an arbitrary or capricious manner." *Frederick County Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F.Supp. 1021, 1026 (D. D.C. 1989); *see also GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) (noting "the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order"); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (collateral jurisdictional attack on a court order "seriously undercut[s] the orderly process of the law").

A stay would similarly avoid unnecessary litigation in Chukchansi's suit against the Interior Department that is already before this Court, as the purpose of that action is largely to stop the Interior Department from prematurely issuing procedures.  There is no barrier in the fact that the imposition of a stay in this case "would effectively be granting Picayune the relief it

1  seeks in its new complaint, without requiring Picayune to satisfy the legal requirements for
2  injunctive relief," Doc. 38 at 16, because as North Fork agrees, the factors the Court is to
3  consider when determining whether to stay an action pending the outcome of related litigation
4  are different from the legal requirements for injunctive relief.  *See* Doc. 38 at 8 (stating the legal
5  standard for such a stay).  *See also Lew v. Countrywide Financial Corp.*, 2009 WL 1384975, *2
6  (N.D. Cal. Feb. 24, 2009) (holding that the likelihood of success on the merits is not among the
7  factors to be considered when deciding whether to grant a stay pending the outcome of a
8  different case).  It is particularly clear in this case why the legal standards are different – why, for
9  example, the likelihood of success on the merits is not part of the Court's calculus – as the Court
10 has stated, the issues in question are not "subject to determination in this action."  Doc. 36 at 8.
11 The issues are "outside the appropriate scope of this action," *id.* at 10, and the Court therefore
12 should not be expected to evaluate their merits.
13   Finally, although North Fork laments the lost economic opportunity caused by further
14 delays, North Fork years ago elected to embark on the long and uncertain process of off-
15 reservation gaming, rather than the simpler path to gaming on its already-eligible Rancheria
16 lands.
17 **II. RESPONSE TO THE STATE**
18   The State focuses on the Fifth District Court of Appeal Action, *Stand Up for California v.*
19 *State of California*, Cal. Court of Appeal, Fifth Appellate Dist., Case No. F069302.  The State
20 offers a summary of the basis for the Governor's authorization to concur in the Secretary's two-
21 part determination.  Doc. 37 at 3.  In the end, the State's summary begs the question Chukchansi
22 is pursuing in the Madera County Superior Court:  if the Governor's authority to concur depends
23 on the legislature retaining "the power to ratify or reject the North Fork Compact," *id.*, and the
24

1 legislature's curative ratification of that compact, then what of Proposition 48, which vetoed the
2 ratification? Where does that leave the concurrence? Regarding the issue at hand, the State
3 suggests it is likely to succeed in the Fifth District Court of Appeal. As discussed above, a
4 professed likelihood of success is not relevant to whether the Court should stay this action to see
5 where things stand at the conclusion of other actions bearing on the plaintiff's standing.

6 The State's argument that there are no further issues for this Court to adjudicate ignores
7 the Court's responsibility at all stages of the action to assure itself of jurisdiction, including the
8 constitutional requirement for a live and redressable case or controversy.

9 Finally, like North Fork, the State argues a stay is unnecessary because the same result
10 might be obtained through additional litigation among different parties. Again, the purpose of
11 imposing a stay is to promote judicial economy and to allow this Court the benefit of final
12 decisions, in actions already being adjudicated in appropriate fora, on issues which directly bear
13 on North Fork's constitutional ability to maintain this suit and the Court's constitutional
14 authority to issue an enforceable order and judgment. The State's proposed solution is in
15 opposition to these goals, and is no solution at all.

## CONCLUSION

17 For the foregoing reasons, the Picayune Rancheria of Chukchansi Indians respectfully
18 urges the Court to issue an order imposing a stay pending final resolution in the related litigation
19 of the issues necessary to establish North Fork's standing to bring and maintain this action.

21 / / /
22 / / /
23 / / /

Dated: July 22, 2016							Respectfully submitted,

							By:	/s/ *Michael A. Robinson*
								Michael A. Robinson
								Fredericks Peebles & Morgan LLP
								2020 L Street, Suite 250
								Sacramento, California 95811
								Telephone: (916) 441-2700
								Fax: (916) 441-2067
								mrobinson@ndnlaw.com

								Attorneys for Picayune Rancheria of Chukchansi Indians