CHRISTOPHER E. BABBITT (SBN 225813)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
E-mail: christopher.babbitt@wilmerhale.com

JOHN A. MAIER (SBN 191416)
MAIER PFEFFER KIM GEARY & COHEN LLP
1440 Broadway, Suite 812
Oakland, CA  94612
Telephone:  (510) 835-3020
Facsimile:  (510) 835-3040
E-mail: jmaier@jmandmplaw.com

Attorneys for Plaintiff
NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>Defendant. | Case No. 15-cv-00419<br><br><br><br>**PLAINTIFF'S SUPPLEMENTAL RESPONSE BRIEF OPPOSING A STAY** |

# INTRODUCTION

The North Fork Rancheria of Mono Indians ("North Fork") demonstrated in its opening brief that a stay of the effectiveness of this Court's judgment would not promote the orderly administration of justice.  Nothing in the amicus brief filed by the Picayune Rancheria of Chukchansi Indians ("Picayune") calls that conclusion into doubt.  To the contrary, Picayune's submission merely highlights the inefficiency and further delay that would result from imposing a stay now—well after this Court entered its judgment, the judgment became final, the parties completed the remedial process, and the Secretary has commenced work on developing Secretarial procedures.

A stay is not needed to address the Court's concerns over the justiciability of the underlying dispute.  The statutory prerequisites for the good-faith action here, as both parties agree, are satisfied.  As this Court has recognized, a tribe is not required to wait for the exhaustion of every possible challenge to the multiple determinations necessary to engage in class III gaming before bringing a good-faith suit:  It is enough that, when the suit is filed, the tribe has jurisdiction over gaming-eligible land and the State has failed to enter into an enforceable compact in response to the tribe's request.  That was true here, and is still true.  The possibility that Secretarial procedures *might* no longer be needed if Picayune or its allies were to prevail in other litigation in the future is not a reason to stay this Court's final judgment indefinitely while that litigation is pending—particularly given that no court has yet found any of Picayune's claims to have merit.

A stay is not necessary to protect the Secretary of the Interior against inconsistent obligations.  The Secretary has notified the court in the District of Columbia Action (*Stand Up v. Dep't of Interior*, No. 12-2039 (D.D.C)) that procedures are inevitable and has taken the position that the 2012 Compact will remain in effect until those procedures issue—at which time any legal challenge involving the 2012 Compact will be moot.  She has also taken the position that additional briefing in that action should await issuance of Secretarial procedures.  That in itself demonstrates that the Secretary does not view the 2012 Compact as a barrier to complying with this Court's order and that there is no risk of inconsistent obligations.  Nor would a decision

setting aside the Secretary's trust decision or the Governor's concurrence create any inconsistent obligations; it would simply create an independent barrier to North Fork's gaming project.

In short, a stay would do nothing but further prolong legal proceedings that have already been excessively delayed, and that Picayune has continued to multiply even after this Court's judgment issued.  Staying this Court's judgment for later-filed or slower-moving challenges would be the opposite of efficient.  And it would cause significant harm to North Fork.  Picayune advocates delay because it knows that delay will not only reduce the much-needed revenues North Fork will realize from the project, but could scuttle the project altogether.  Staying this Court's judgment now would thus frustrate IGRA's intention to provide an expeditious means for tribes to invoke their federal rights and realize the economic and societal benefits IGRA is designed to help tribes attain.

**ARGUMENT**

**I. THE OTHER PENDING LITIGATION DOES NOT RENDER THIS CASE NONJUSTICIABLE OR CALL THIS COURT'S JUDGMENT INTO QUESTION**

As North Fork and the State explained in their opening briefs, the other pending cases related to North Fork's Madera gaming project provide no grounds for a stay of the effectiveness of this Court's judgment.  This case was justiciable when filed and remains so today, and this Court's judgment was correct when rendered and remains so today.  Picayune's speculation that one of the multiple overlapping lawsuits Picayune and other challengers have brought in their attempts to derail North Fork's project *might*, in the fullness of time, invalidate one of the state or federal determinations required for the project—and thus deprive North Fork of standing—provides no basis for a stay.

Courts assess whether a plaintiff has standing "at the outset of the litigation," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180 (2000), based on facts in existence at the time, not speculation about what may occur in the future, *Jim 72 Properties, LLC v. Montgomery Cleaners*, 2015 WL 9093421 at *6 (C.D. Cal. Dec. 16, 2015) ("[T]he mere

1  possibility that a party may lose standing at a later time does not negate standing at the outset of
2  a claim.").[1]

3       In addition to the initial standing requirement, courts have an obligation to ensure that a
4  case does not become moot in the course of the litigation. *Arizonans for Official English v.*
5  *Arizona*, 520 U.S. 43, 68 n.22 (1997) ("'The requisite personal interest that must exist at the
6  commencement of the litigation (standing) must continue throughout its existence
7  (mootness).'"); *Timbisha Shoshone Tribe v. U.S. Dep't of Interior*, 2016 WL 3034671, at *4 (9th
8  Cir. May 27, 2016) ("Where an actual controversy does not persist throughout litigation, '[a]
9  case becomes moot.'"); *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, 2015 WL 1538259, at *2 (N.D.
10 Cal. Apr. 6, 2015) ("Standing is to be determined as of commencement of suit.  In contrast, the
11 question of whether the court *loses* jurisdiction over a case where a plaintiff has standing at the
12 outset is properly characterized as one of mootness.") (alterations, footnotes, and internal
13 quotation marks omitted; emphasis in original).  But as with standing, a case will not be
14 dismissed as moot based on speculation about what may happen in the future.  *Hunt v. Imperial*
15 *Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) ("[W]e are not required to dismiss a live
16 controversy as moot merely because it may become moot in the near future.").  Indeed, the
17 possibility that a case will become moot is typically a factor in favor of *expediting* resolution of a
18 case.  *See, e.g.*, *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 997 (10th Cir. 2005)
19 (noting that party can request expedited review where "case will become moot because events
20 are moving too quickly").  Here, there was an actual controversy when this case was filed and
21 there is an actual controversy today—and Picayune's speculation that later developments in other
22 litigation might moot this case cannot justify a stay.

---

[1] Picayune cites *Larroque v. First Advantage Lns Screening Solutions, Inc.*, 2016 WL 39787, at *2 (N.D. Cal. Jan. 4, 2016), for the proposition that a court should stay a case when pending litigation may impact standing.  *Larroque*, however, is limited to the narrow circumstance in which *standing itself* is at issue in the pending litigation.  Specifically, the court in *Larroque* issued a stay pending the outcome of a Supreme Court decision that would resolve a circuit split regarding whether an individual has standing to sue a defendant for violation of the Fair Credit Reporting Act without alleging actual harm.  Here, there is no such legal question in dispute.  The outcome of the pending lawsuits will not affect whether North Fork had standing at the outset of this case.

Three prerequisites for a determination that a State has not negotiated in good faith are relevant here: (1) the tribe must have jurisdiction over "Indian land," 25 U.S.C. § 2710(d)(3)(A); (2) the Indian land must be eligible for class III gaming, *id.*; and (3) the tribe must have asked the State to negotiate and no compact has been entered into in response to that request, *id.* § 2710(d)(7)(B)(ii). Whether one views them as elements of standing necessary for a tribe to bring suit or as elements of a cause of action, *see* Order Requiring Briefing, Dkt. 36 at 11-14 (June 27, 2016), all three of those prerequisites were satisfied when this suit was filed and continue to be satisfied. Regarding the first two prerequisites, the Secretary of the Interior took the Madera parcel into trust for North Fork in 2013 pursuant to a two-part determination, *see* 25 U.S.C. § 2719(b)(1)(A), and the Madera parcel is thus "Indian land" eligible for gaming—as this Court has already recognized. *See* Dkt. 36 at 9 ("As it exists now, the Madera parcel is Indian land that is eligible for gaming.").

Picayune contends that a court in another pending case *might* conclude at some future date—possibly years in the future—that either the Secretary's trust determination or the Governor's concurrence is invalid. But that is not grounds for staying the effectiveness of the judgment in this action, which issued seven months ago, is now final, and based on which the parties and the Secretary have all taken significant actions. The parties have proposed new compacts and completed mediation, and North Fork understands that the Secretary has already devoted resources toward the completion of Secretarial procedures. Even if the trust determination or concurrence were ultimately overturned—and it should be noted that Picayune and the other challengers have had no success with their claims to date—the upshot would simply be that North Fork could not game on the Madera parcel for reasons entirely independent of the Secretarial procedures.

The third prerequisite—the failure to enter into a compact in response to the tribe's request—has also been met. Although the Governor signed a tribal-state compact with North Fork in 2012, a referendum in 2014 rejected the legislature's ratification of that compact, and the State thereafter refused to perform under the 2012 Compact. North Fork asked the State to negotiate over a new compact that would be enforceable, and, as this Court found, the State

refused to enter into a compact in response to that request.  *See* Order on Cross-Motions for Judgment on the Pleadings, Dkt. 25 at 13-15 (Nov. 13, 2015) (noting that North Fork "request[ed] that the State enter into negotiations regarding the Madera parcel" and that "[t]he State's … response … can only be reasonably interpreted as a denial of that request").

Picayune argues that the Secretary has taken the position in the District of Columbia Action that the 2012 Compact remains in effect, and suggests that a ruling in favor of the Secretary would deprive North Fork of standing, warranting a stay of this action.[2]  That is wrong for two reasons.  *First*, the Secretary's position that the 2012 Compact remains in effect cannot alter this Court's finding that the State refused to negotiate or enter into a new, enforceable compact pursuant to North Fork's request following the referendum rejecting the 2012 Compact.  That is the question asked in a good-faith suit:  not whether a compact was entered into at some point, but whether a compact was entered into *in response to a tribe's particular request for negotiations*.  *See* 25 U.S.C. § 2710(d)(7)(B) (a tribe must show that "a Tribal-State compact has not been entered into" within "the 180-day period beginning on the date on which the Indian tribe requested the State to enter into negotiations").  Thus, a State may violate its duties under IGRA when it refuses to negotiate in good faith over amendments to an existing, valid compact.  *See, e.g.*, *Rincon Band of Luiseno Mission Indians of Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019, 1024 (9th Cir. 2010) ("By 2003, Rincon desired to expand its operations beyond what the 1999 compact permitted.  Accordingly, in March of that year, Rincon notified the State of its interest in renegotiating certain provisions of the 1999 compact."); *id*. at 1042 ("We AFFIRM the district court's finding that the State of California negotiated with Rincon in bad

---

[2] Picayune also points out that the Secretary has not issued a notice in the Federal Register that the 2012 Compact is no longer valid and in effect.  But that step is not required by IGRA, and is not the Secretary's practice.  For example, after the Tenth Circuit invalidated a series of tribal-state compacts in *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997), the Secretary did not rescind the initial Federal Register notice.  *See* 60 Fed. Reg. 15,194 (Mar. 22, 1995).  Instead, the Secretary simply issued a new Federal Register notice when the tribes successfully negotiated new compacts with the State.  72 Fed. Reg. 36,717 (July 5, 2007).

1  faith by conditioning its agreement to expand Rincon's class III gaming rights on Rincon's
2  agreement to pay a percentage of its revenues to the State's general fund.").
3       *Second*, even if the validity of the 2012 Compact is relevant, both of the parties to that
4  compact—the State and the tribe—agree that the 2012 Compact is not enforceable in light of the
5  State's refusal to recognize it.  The Secretary's position in the District of Columbia Action—that
6  the 2012 Compact will remain in effect until the issuance of Secretarial procedures—cannot
7  change that fact.  The State is not a party to the District of Columbia Action, nor can it be joined,
8  and (as North Fork has stated in the District of Columbia Action) its rights under the 2012
9  Compact accordingly cannot be adjudicated in that forum.  *See Kickapoo Tribe v. Babbitt*, 43
10 F.3d 1491, 1495 (D.C. Cir. 1995).  Finally, the Secretary has stated that she views the 2012
11 Compact as in effect *only* until Secretarial procedures issue, *Stand Up v. Dep't of the Interior*,
12 Dkt. 155 at 1-2 (D.D.C. Apr. 29, 2016)—confirmation that the Secretary perceives no
13 inconsistency between her position in the District of Columbia Action and the implementation of
14 Secretarial procedures pursuant to this Court's judgment.
15      If this Court remains concerned about the potential for the Secretary to face inconsistent
16 obligations, the Court should, at a minimum, invite the Secretary to weigh in before taking action
17 that could hinder her from issuing the procedures now in progress.  *See, e.g.*, *Universal Oil*
18 *Prods. Co. v. Root Ref. Co.*, 328 U.S. 575, 581 (1946) ("[A] federal court can always call on law
19 officers of the United States to serve as amici."); *Roberts v. Ayala*, 709 F.2d 520, 521 n.1 (9th
20 Cir. 1983) ("Should the district court on remand find it necessary to decide the question, it may
21 wish to invite the views of the NLRB as amicus curiae."); *De La Cruz v. Tormey*, 582 F.2d 45,
22 61 n.15 (9th Cir. 1978) ("Although it is for the District Court to ponder, rather than for us to
23 suggest, an invitation extended to the Department of Health, Education and Welfare to
24 participate as Amicus curiae could perhaps prove useful to the resolution of the case.").  If the
25 Court's decision whether to issue a stay turns in part on the effect of its judgment on the
26 Secretary, North Fork submits that the Secretary should be asked to provide her views on the
27 wisdom of such a stay.
28

## II. A STAY WOULD NOT FURTHER JUDICIAL EFFICIENCY AND WOULD SERIOUSLY HARM NORTH FORK

Stays pending related litigation are not granted as a matter of course, but will generally be granted only in "extraordinary" cases, and only where the delay is "not immoderate in extent and not oppressive." *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). In making that determination, as Picayune observes (at 16), courts weigh "the possible damage which may result from the granting of a stay, the hardship … which a party may suffer in being required to go forward, and the orderly course of justice." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). None of those factors supports a stay here. To the contrary, as North Fork demonstrated in its opening brief (at 14-16) (1) a stay will interfere with efficient resolution of the challenges to the Madera project; (2) denying a stay would not harm the parties (who both oppose a stay), Picayune, or the Secretary; and (3) a stay would cause significant harm to North Fork.

### A.   A Stay Would Not Further The "Orderly Course Of Justice"

Courts assess the "[o]rderly course of justice" factor "in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110. A stay would interfere with the "orderly course of justice" codified in IGRA's scheme for the approval of tribal gaming.

Among other things, issuance of Secretarial procedures would simplify the issues in dispute by mooting Stand Up's and Picayune's claims in the District of Columbia Action related to the 2012 Compact—as the Secretary has explained to the D.C. Court. *Stand Up v. Dep't of the Interior*, Dkt. 159 at 1 (D.D.C. June 20, 2016); *Stand Up v. Dep't of the Interior*, Dkt. 155 at 1-2 (D.D.C. Apr. 29, 2016). And Picayune has already raised new challenges to the Secretary's and the Governor's actions in multiple fora that turn on what precisely the forthcoming Secretarial procedures will provide. For instance, in the District of Columbia Action, Picayune has argued that the Secretary's land-into-trust decision and two-part determination are invalid because "the Secretarial procedures at issue here are far different from the compact contemplated when the decisions at issue here were made." *Stand Up v. Dep't of Interior*, Dkt. 158 at 4 (D.D.C. June 3, 2016). Likewise, in the California Superior Court Action, Picayune has

1  challenged the Governor's concurrence in part on the ground that the concurrence relied on
2  certain revenue-sharing terms in the 2012 Compact that will not be included in Secretarial
3  procedures.  *See* Compl. ¶ 35, *Picayune v. Brown*, Case No. MCV072004 (Cal. Super Ct.
4  Madera Cty. Mar. 21, 2016).  Those claims cannot be resolved until Secretarial procedures
5  actually issue.

6       Picayune contends (at 16) that "[a] stay in this case will allow several essential and
7  substantial questions to be answered with finality, avoiding the possibility that the Department of
8  the Interior will waste its time and efforts on Procedures that, if they are not simply a nullity
9  from the moment they are prescribed, turn out to be contrary to IGRA, engendering still more
10 litigation."  As discussed above, however, the Court issued its judgment in this case many
11 months ago, and the parties and the Department have already expended substantial time and
12 energy complying with IGRA's remedial process and developing Secretarial procedures.
13 Permitting that process to reach its natural conclusion, rather than putting it in indefinite
14 suspense based on the theoretical possibility that Picayune will succeed in one of its challenges,
15 is the best way to resolve the overall dispute here as quickly as possible.  And while North Fork
16 expects that Secretarial procedures may well "engender more litigation" from Picayune and its
17 allies, that would be true even if every pending suit is resolved in North Fork's favor.  A stay
18 would simply postpone any challenge to Secretarial procedures—further dragging out this
19 already prolonged process.

20      Picayune also argues that a stay would lessen the risk that the Secretary will face
21 inconsistent obligations.  As explained in North Fork's opening brief (at 9-13), this is not the
22 case.  Inconsistent obligations occur "when a party is unable to comply with one court's order
23 without breaching another court's order."  *Cachil Dehe Band of Wintun Indians of the Colusa*
24 *Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008) (internal quotation marks omitted).
25 No order issued by another court has any prospect of putting the Secretary in such a position.
26 Even if another court were ultimately to invalidate the land-into-trust decision or two-part
27 determination, that would not create inconsistent obligations for the Secretary; it would simply
28 bar North Fork from gaming on independent grounds.  Likewise, because the Secretary has

- 8 -
PLAINTIFF'S SUPPLEMENTAL RESPONSE BRIEF OPPOSING A STAY

1  informed the D.C. Court of the forthcoming Secretarial procedures and asked that supplemental
2  briefing be delayed until the procedures issue, it is unlikely that the D.C. Court will issue a ruling
3  with regard to the 2012 Compact that will conflict with this Court's order.

### B. A Stay Would Not Prevent Any Harm

The parties to this litigation oppose a stay.  The only question, then, is whether failure to grant a stay would impose any cognizable harm on non-parties.  In its brief, Picayune fails to identify *any* harm that it would suffer if a stay is not granted.  As explained in North Fork's opening brief (at 16), to the extent Picayune is aggrieved by Secretarial procedures, it can challenge them directly (and has already sought to do so).  Accordingly, even if harm to Picayune were relevant, because Picayune has not "ma[d]e out a clear case of hardship or inequity in being required to go forward," a stay should not be granted.  *Landis v. N. Am. Co.*, 299 U.S. at 255.

Nor can Picayune rely on any supposed harm to the Secretary, even if it were in a position to speak for her (which it is not).  As previously discussed, issuance of this decision poses no risk of inconsistent obligations to the Secretary—and if the Court is concerned about that possibility, North Fork urges it to seek the views of the Secretary herself.

### C. North Fork Would Be Seriously Harmed By A Stay

Picayune argues that North Fork will not suffer hardship as a result of the stay because there is a possibility that North Fork will not be entitled to the relief it seeks.[3]  But this inverts the relevant legal standard:  the question is whether there is a "fair possibility" that a stay will "damage" North Fork, not whether there is a possibility it might not.  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).  Numerous courts have rejected the premise that a party must wait indefinitely for related legal proceedings to conclude. *See, e.g.*, *id*. (district court abused its discretion by granting indefinite stay pending arbitration); *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1414 (Fed. Cir. 1997) (district court,

---

[3] Picayune's lone authority for this proposition, *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962), has no bearing on this case.  In *CMAX*, the court found no potential for irreparable harm where the action being stayed sought only money damages.  *Id*. at 268-69.  North Fork will never be able to recover the financial carrying costs and forgone revenue from its long-delayed project.

1  which "indefinitely stayed its proceedings pending the prosecution of quiet title actions," abused
2  its discretion in "[f]inding that it could not adjudicate the Tribes' claims until ownership in the
3  tribal lands is conclusively fixed"); *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E.*
4  *Div.*, 565 F.2d 393, 396 (6th Cir. 1977) (district court abused its discretion by granting stay of
5  enforcement action pending challenge to EPA's decision to approve emission limitations, given
6  that "a party has a right to a determination of its rights and liabilities without undue delay");
7  *Hines v. D'Artois*, 531 F.2d 726, 736 (5th Cir. 1976) (district court abused its discretion by
8  granting stay of § 1981 suit pending action by the Equal Employment Opportunity commission
9  under Title VII); *see also Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("If a stay is
10 especially long or its term is indefinite, we require a greater showing to justify it.").

11     Picayune perversely argues (at 18) that the delay caused by a stay would be a "reasonable
12 time in relation to the urgency of the claims," on the basis that North Fork began the approval
13 process twelve years ago.  It is this very delay, however, that strongly counsels against a stay.
14 The approval process has not taken over a decade because North Fork has not been diligent in
15 pursuing its gaming rights, but because of the complexity of the statutory scheme and the sheer
16 number of challenges to its project that North Fork has had to fend off, at great expense.  As
17 demonstrated by the two suits filed by Picayune in the last few months, opponents of North
18 Fork's project will continue to find ways to keep this process from coming to a close.  The Court
19 should not encourage this gamesmanship by issuing an indefinite stay while multiple cases
20 brought by opponents of North Fork's project, which were either filed *after* this Court's
21 judgment or have made far less progress than this case, remain pending.

22     Picayune suggests (at 18) that a stay would not cause any actual delay, noting that "IGRA
23 does not impose any time requirement on the Secretary for the prescription of gaming
24 procedures."   But this claim is belied by Picayune's own actions.  Concerned that "the
25 Department of the Interior currently is preparing to issue procedures," Picayune has moved for
26 declaratory and injunctive relief to prevent those procedures from issuing.  *Picayune v. Dep't of*
27 *Interior*, No. 16-00950, Dkt. 1 (E.D. Cal. July 1, 2016).  Picayune also speculates that North
28 Fork will not begin building and operating its gaming facility as long as the project is subject to

active litigation.  To the contrary:  North Fork does not intend to wait until the last statute of limitations has expired and the last meritless appeal has been decided.  But until Secretarial procedures are issued, North Fork will have no legal entitlement to conduct class III gaming.  Permitting that process to move forward would remove one significant hurdle to gaming and help bring the overall dispute to a close.

## CONCLUSION

For the foregoing reasons, North Fork respectfully requests that this Court not stay the case pending the resolution of related litigation.

DATED:  July 22, 2016                          Respectfully submitted,


By:  /s/ Christopher E. Babbitt


CHRISTOPHER E. BABBITT (SBN 225813)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
E-mail: christopher.babbitt@wilmerhale.com

JOHN A. MAIER (SBN 191416)
MAIER PFEFFER KIM GEARY & COHEN LLP
1440 Broadway, Suite 812
Oakland, CA  94612
Telephone:  (510) 835-3020
Facsimile:  (510) 835-3040
E-mail: jmaier@jmandmplaw.com

Attorneys for Plaintiff NORTH FORK RANCHERIA
OF MONO INDIANS OF CALIFORNIA

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>Defendant. | Case No. 15-cv-00419<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that, on July 22, 2016, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Eastern District of California using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

    /s/ Christopher E. Babbitt

CHRISTOPHER E. BABBITT (SBN 225813)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
E-mail: christopher.babbitt@wilmerhale.com