IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

**NORTH FORK RANCHERIA OF MONO INDIANS OF CALIFORNIA**,

Plaintiff,

v.

**STATE OF CALIFORNIA**,

Defendant.

1:15-cv-00419-AWI-SAB

**ORDER DECLINING TO IMPOSE A STAY OF JUDGMENT**

### I. Introduction

Plaintiff North Fork Rancheria of Mono Indians of California ("North Fork") has obtained judgment on the pleadings against the State of California ("State" or "California") based on the failure of the State to negotiate with the tribe for the purpose of entering into a Tribal-State compact governing the conduct of class III gaming activities as required by the Indian Gaming Rights Act ("IGRA"), *see* 25 U.S.C. § 2710(d)(3)(A), after the California electorate voted down Proposition 48, the referendum that would have ratified the gaming compact between North Fork and California. Doc. 25. In response to issues highlighted by the Picayune Rancheria of Chukchansi Indians ("Chukchansi") in its motion to intervene, Doc. 31, the Court ordered additional briefing from the parties regarding whether a decision in one of the other actions regarding the proposed North Fork gaming site might impact this Court's

1

jurisdiction over this case, Doc. 36. North Fork and the State agree that this matter is justiciable regardless of the outcome of the other actions. Docs. 37, 38. They also agree that no stay should be imposed. *Id.* Chukchansi submitted briefing as *amicus curiae*, wherein it argues that this matter could be rendered non-justiciable by decisions in other proceedings. Doc. 39.

For the following reasons, this Court will decline to issue a stay.

## II. Background

The Court set forth a detailed summary of the factual and statutory background relevant to North Fork's Indian Gaming Regulatory Act ("IGRA") claim in its Order dated November 13, 2015. Doc. 25. Here, the Court will detail the scope of this proceeding and the other six proceedings relating to the North Fork gaming at the Madera parcel.

A. The Scope of This Action

North Fork initiated negotiation with the State pursuant to 25 U.S.C. § 2710(d)(3)(A) which provides that "[a]ny Indian tribe having jurisdiction over lands upon which a class III gaming activity … is to be conducted, shall request the State in which such lands are located to enter into negotiations for purposes of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact." On August 30, 2012, North Fork and Governor Brown agreed on the terms of a Tribal-State compact. The compact was then forwarded to the legislature for ratification. Ratification of the compact was proposed as Assembly Bill ("AB") 277. On May 2, 2013, the California Assembly passed AB 277; on June 27, 2013, the California Senate passed AB 277; and on July 3, 2013, the governor signed AB 277. Then-Secretary of State, Deborah Bowen, forwarded the compact to the United States Secretary of the Interior for review and approval pursuant to 25 U.S.C. § 2710(d)(8). On October 22, 2013, the Secretary of the Interior published notice of the Tribal-State compact taking effect. 78 FR 62649-01 (Oct. 22, 2013).

On October 1, 2013, opponents of the North Fork casino garnered sufficient signatures from California registered voters to place a veto referendum, known as California Proposition 48, on the November 2014 ballot. On November 4, 2014, California voters overturned AB 277.

Based on that referendum vote, the State of California refused to recognize the existence of a valid Tribal-State compact with North Fork. The State also refused to negotiate with North Fork regarding conducting gaming on the Madera parcel, indicating that such negotiation would be futile in light of the outcome of Proposition 48.

North Fork filed suit with this Court pursuant to 25 U.S.C. § 2710(d)(7)(A)(i), alleging that the "State [failed] to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact … or [failed] to conduct such negotiations in good faith." The parties filed cross-motions for judgment on the pleadings wherein each agreed that the Madera parcel was Indian land made eligible for gaming pursuant to 25 U.S.C. § 2719. The parties' dispute surrounded only whether the State could refuse to negotiate regarding a specific parcel of Indian land. The Court determined that the State's refusal to negotiate regarding the Madera parcel violated the State's obligation under section 2710(d)(3)(A).[1] The parties were directed to conclude a compact within 60 days of the date of the Court's order. See 25 U.S.C. § 2710(d)(7)(B)(iii). The parties failed to do so. The Court then appointed a mediator pursuant to 25 U.S.C. 2710(d)(7)(B)(iv). The parties were directed to submit "a proposed compact that represents their last best offer for a compact." 25 U.S.C. § 2710(d)(7)(B)(iv). The mediator was directed to "select from the two proposed compacts the one which best comports with the terms of [IGRA], … any other applicable Federal law[,] and with the findings and order (Doc. 25) of th[is] court." *Id.* The mediator selected the North Fork compact. At that point, the State was permitted sixty days within which to consent to the proposed compact. *Id* at § 2710(d)(7)(vi), (vii). The State did not consent within that sixty day period and the mediator notified the Secretary of the Interior. On July 29, 2016, the Secretary of the Interior issued Secretarial procedures governing the conduct of Class III gaming on North Fork's Indian lands. *See* Doc. 42 at 2; *Id* at § 2710(d)(7)(vii).

///

///

---

[1] The Court accepted the parties' representations that the Madera parcel is Indian land that is eligible for gaming. The Court also accepted the parties' representation that no compact was in effect.

B. Related Actions

North Fork has identified five other actions relating to the subject matter of the action before this court.

**1. The District of Columbia Action**

In December 2012, Stand Up for California!, a "community watchdog group that focuses on gambling issues affecting California citizens," and several other plaintiffs filed suit against the United States Secretary of the Interior, challenging both the Secretary's two-part after-acquired lands determination ("two-part determination"), *see* 25 U.S.C. § 2719, and decision to take the Madera parcel into trust for North Fork ("fee-to-trust determination"), *see* 25 U.S.C. § 465, under the Administrative Procedures Act ("APA"). *Stand Up for California! v. U.S. Dept. of Interior*, Case No. 1:12-cv-02039-BAH, Doc. 1 (D.D.C. Dec. 19, 2012). At the end of the same month, Chukchansi filed a similar action that the district court consolidated with the *Stand Up for California* case (collectively the "District of Columbia Action"). *Picayune Rancheria of the Chukchansi Indians v. United States*, Case No. 1:12-cv-2071-BAH, Doc. 1 (D.D.C. Dec. 31, 2012).

*Stand Up* sought and was denied a preliminary injunction preventing acquisition of the Madera parcel on behalf of North Fork. *Stand Up for California v. U.S. Dept. of the Interior*, 919 F.Supp.2d 51, 81 (D.D.C. Jan. 29, 2013) (noting that none of the four of the factors—likelihood of success on the merits, irreparable harm, balance of the equities, and the public interest—weigh in favor of granting a Stand Up's motion for preliminary injunction).

Thereafter, Stand Up twice amended its complaint to challenge (1) Governor Brown's concurrence with the Secretary's two-part determination, *Stand Up for California! v. United States Department of the Interior*, Case No. 1:12-cv-02039-BAH, Doc. 56 (D.D.C. June 27, 2013), and (2) the validity of the compact in light of the Proposition 48, *Id.*, Doc. 103 (D.D.C. Dec. 3, 2014). The parties filed cross-motions for summary judgment. *Id.*, Docs. 106, 108, 111, 112. As a result of the amendments and the parties' cross-motions, the court in the District of Columbia Action had ordered briefing on whether the State of California is a required party under Federal Rule of Civil Procedure 19. *Id.*, Doc. 135 (D.D.C. Sept. 30, 2015). Briefing on that

issue has concluded. The court in the District of Columbia action has yet to rule on the cross-motions for summary judgment or determine whether California is a required party.

### 2. California Third District Court of Appeal Action

In November 2012, Chukchansi brought an action in the Sacramento County Superior Court, contending that the Governor's concurrence in the Secretary's two-part determination "constituted an 'approval' of a 'project' under [the California Environmental Quality Act ("CEQA")] that 'must be the subject of the CEQA environmental review process.'" *Picayune Rancheria of Chukchansi Indians v. Brown*, 229 Cal.App.4th 1416, 1421 (Cal. Ct. App. 2014). The superior court granted Governor Brown's demurrer, explaining that the Governor is not a "public agency" for purposes of CEQA and that his concurrence was not subject to CEQA. *Id*. The California Third District Court of Appeal affirmed. *Id*. at 1431. The California Supreme Court denied Chukchansi's petition for review on January 14, 2015. That case is now closed.

### 3. California Fifth District Court of Appeal Action

In March of 2013, Stand Up filed suit in the Madera County Superior Court, contending that the Governor lacked the authority under California law to concur in the Secretary of the Interior's two-part determination. *Stand Up for California v State of California et al.*, 5th DCA Case No. F069302. The Madera County Superior Court held that the Governor's authority to concur with the Secretary's determination is implicit in the Governor's authority to negotiate and conclude Tribal-State compacts on behalf of the state. *Id*. Stand Up appealed. The matter has been fully briefed and argued and is now under submission before the California Fifth District Court of Appeal.

In February 2014, North Fork filed a cross-complaint before the Madera County Superior Court, challenging the validity of Proposition 48 and arguing that the Tribal-State compact was in effect. The superior court dismissed the cross-complaint and North Fork appealed to the California Fifth District Court of Appeal. The two cases were consolidated. On June 3, 2016, based on the parties' stipulation, the Fifth District Court of Appeal dismissed North Fork's appeal.

///

**4. The Second Madera Superior Court Action**

On March 18, 2016, Chukchansi filed suit in the Madera County Superior Court, challenging the Governor's concurrence with the Secretary of the Interior's two-part determination. *See Picayune Rancheria of Chukchansi Indians v. U.S. Dept. of the Interior*, Case No. 1:16-cv-00950-AWI, Doc. 2 (E.D. Cal. July 1, 2016). North Fork has been granted leave to intervene in that action and has filed a demurrer. Doc. 38 at 11.

It has not been made clear to this Court how the issues presented in the Second Madera Superior Court Action differ from those presented by Stand Up in the California Fifth District Court of Appeal Action.

**5. The Second California Eastern District Court Action**

On July 1, 2016, Chukchansi filed an action with this Court, again challenging the validity of the Governor's concurrence with the Secretary of the Interior's two-part determination. *Picayune Rancheria of Chukchansi Indians v. U.S. Dept. of the Interior*, Case No. 1:16-cv-00950-AWI, Doc. 1 (E.D. Cal. July 1, 2016). An initial scheduling conference is set before the Magistrate Judge on October 20, 2016. *Id*. at Doc. 4 (E.D. Cal. July 5, 2016).

### III. Legal Standard

A district court's power to control its docket includes broad discretion to grant a *Landis* stay—a stay in the proceedings pending resolution of other actions that bear on the case. *Errington v. Time Warne Cable Inc.*, 2016 WL 2930696, *3-4 (C.D. Cal. May 18, 2016); *Larroque v. First Advantage Lns Screening Solutions, Inc*., 2016 WL 39787, *2 (N.D. Cal. Jan. 4, 2016); *see Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.") In determining whether to grant such a stay, the Ninth Circuit requires a district court to consider "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are [(1)] the possible damage which may result from the granting of a stay, [(2)] the hardship or inequity which a party may suffer in being required to go forward, and [(3)] the orderly course of justice

6

measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.3d 265, 268 (9th Cir 1962)) (internal quotation marks omitted).  Moreover, "[a] stay should not be granted unless it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the Court." *Id*. (quoting *Leyvla*, 593 F.2d at 864) (internal quotation marks omitted).

The "proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). If there is "even a fair possibility" of harm to the opposing party, the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1112 (9th Cir. 2005).

**IV. Discussion**

A stay in the matter would be appropriate only if a determination in one or more of the other proceedings might impact the justiciability of this action.[2] As described in *Section IV(A)*, the Court will assume that the statutory prerequisites to an IGRA good faith action are jurisdictional and consider the *Landis* factors. As set out in *Section IV(B)*, the *Landis* factors do not support issuance of a stay of this matter.

A. The Statutory Prerequisites to Filing an IGRA Good Faith Action

As North Fork and Chukchansi both recognize, three statutory prerequisites for bringing an IGRA action pursuant to section 2710(d)(3)(A) are at issue in the other actions involving the Madera parcel: (1) tribal exercise of jurisdiction over "Indian land" (the Secretary's fee-to-trust determination); (2) eligibility for class III gaming (the Secretary's two-part determination); and (3) non-existence of an enforceable Tribal-State compact. *See* Docs. 39 at 12, 41 at 5.

North Fork and the State agree that, even insofar as the other pending litigations address the statutory prerequisites to filing suit in this IGRA action, the other actions do not impact the

---

[2] If no jurisdictional component were implicated, the Court's factual determinations based on the parties' stipulations to the satisfaction of statutory prerequisites would not now be subject to challenge.

7

justiciability of this action. Chukchansi differs on this point. It argues each of the statutory prerequisites implicates the "actual injury" requirement of Article III. According to Chukchansi, if the Secretary's fee-to-trust determination or two-part determination were void or the Tribal-State compact was in effect then North Fork lacked standing to initiate this action at the time of filing.[3]

As the Court noted in its order requiring supplemental briefing, "authority exists for the proposition that holding Indian lands is an Article III standing requirement for an Indian tribe alleging an IGRA claim." Doc. 36 at 12 (citing, *inter alia*, *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Engler*, 304 F.3d 616, 618 (6th Cir. 2002); *Mechoopda Indian Tribe of Chico Rancheria, Cal. v. Schwarzenegger*, 2004 WL 1103021, *7 (E.D. Cal. Mar. 12, 2004)).

North Fork does not address this issue directly. Instead, it notes that standing is determined "at the outset of litigation." Doc. 41 at 3 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). North Fork is certainly correct. However, the Court's concern was that one of the other actions might impact whether North Fork had standing at the outset of this action. For instance, the court in the District of Columbia Action could determine that the Secretary's fee-to-trust or two-part determinations were void ab initio. If that takes place, North Fork would not lose standing after the fact; it would be as though North Fork never had standing in the first instance.[4]

---

[3] Regardless of whether or not the statutory prerequisites are jurisdictional requirements, the parties and Chukchansi all agree that determinations in any of the pending actions that (1) the Madera parcel is not Indian lands (within the meaning of 25 U.S.C. § 2703(4)), or that (2) the Secretary's two-part determination (pursuant to 25 U.S.C. § 2719) is void, would each operate as independent barriers to operation of a class III gaming activity on the Madera parcel.

[4] In that respect, North Fork's reliance on *Jim 72 Properties, LLC v. Montgomery Cleaners*, 151 F.Supp.3d 1092, 1101 (C.D. Cal. 2016) is misguided. In *Jim 72*, the plaintiff in a Resource Conservation and Recovery Act ("RCRA") action was, among other things, in contract to purchase a home (and assume the attendant rights to litigate a RCRA action) damaged by the defendants' chemical emissions. *Id*. at 1095, 1101. The defendant challenged the plaintiff's standing, arguing that the plaintiff had standing only so long as it intended to purchase the house. *Id* at 1101. The Court explained that plaintiff was assigned the rights to litigate and those rights were immediately effective. *Id*. Even if, at some time in the future, the plaintiff did not purchase (or no longer intended to purchase) the house, the plaintiff had standing at the outset of the action and some other successor in interest would have standing. *Id*. at 1101-1102.

The issue before the Court is distinct. Unlike *Jim 72*, if the Secretary inappropriately took the Madera parcel into trust, by the operation law, that land was never Indian land to begin with and there would be no successor in interest.

8

For the reasons set forth in the Court's order requiring supplemental briefing, Doc. 36 at 12-13, the statutory prerequisites are likely jurisdictional requirements. That said, the Court need not conclusively make that determination. Instead, the Court assumes that the statutory prerequisites to filing an IGRA action are standing requirements; the litigation of those requirements in other actions does not compel the Court to stay this matter until those requirements are finally adjudicated.

In this action, North Fork and the State agreed that all three prerequisites were met. Doc. 1 at ¶ 4 ("The Madera Parcel is 'Indian land' … and is eligible for gaming."), ¶ 6 ("[T]he State has taken the position that the compact has not been ratified in accordance with California law and that the state therefore has not entered into a compact with the Tribe."); Doc. 9 at ¶ 12 (North Fork "exercises jurisdiction over the Madera Parcel, which constitutes 'Indian lands' under IGRA."), ¶ 6 (It is "the State's position that … the statute ratifying the North Fork Compact never took effect.), ¶ 39 ("[T]he State admits that Governor Brown concurred in the Secretary's [two-part] determination.) However, because the Court assumes that the statutory prerequisites are jurisdictional the parties' agreement as to the statutory prerequisites is not treated as determinative.

Even without the parties' stipulations, no authority presently exists that would cast North Fork's standing into doubt. The Madera County Superior Court considered two of the statutory prerequisites and found that (1) Proposition 48 was effective under state law to reverse the ratification of the Tribal-State compact and (2) the Governor had the authority to give his concurrence to the Secretary's two part determination. The first determination is no longer under appeal. The second remains under appeal. In the District of Columbia Action, the Court denied a preliminary injunction preventing the Secretary of the Interior from taking land into trust on behalf of North Fork. The court found that Stand Up had failed to show a likelihood of success on the merits—the Secretary's decision to take the land into trust was not in error. That action proceeds on the merits. As it stands now, there is sufficient information for the Court to conclude that North Fork had and has standing to litigate this action. *See* Doc. 36 at 9.

9

## 2. The Jurisdictional Nature of the Statutory Prerequisites Does Not Restrict The Court's Discretion to Impose or Decline to Impose a Stay

A roughly parallel situation to the case at bar was presented in the wake of the Supreme Court's grant of certiorari in *Robins v. Spokeo, Inc.*, 742 F.3d 409, (9th Cir. 2014) *vacated sub nom by* --- U.S. ----, 136 S.Ct. 1540 (2016). In *Spokeo*, the plaintiff alleged a website operator disseminated inaccurate information about him in violation of the Fair Credit Reporting Act of 1970 ("FCRA"). *Spokeo,* 136 S.Ct. at 1544. The plaintiff did not allege that he suffered any loss as a result of the dissemination of misinformation. *Id*. The Ninth Circuit opined that Congress could confer Article III standing to a plaintiff who had suffered no concrete harm by authorizing a private right of action based on violation of a federal statute. *Strubel v. Capital One Bank (U.S.A.), N.A.*, --- F.Supp.3d ----, 2016 WL 1271067, *3 (S.D. N.Y. Mar. 29, 2016) (citation omitted); *see Spokeo*, 136 S.Ct. at 1544-1545 ("The Ninth Circuit noted, first, that Robins had alleged that 'Spokeo violated his statutory rights, not just the statutory rights of other people,' and, second, that 'Robins's personal interests in the handling of his credit information are individualized rather than collective.' … Based on these two observations, the Ninth Circuit held that Robins had adequately alleged injury in fact, a requirement for standing under Article III of the Constitution.") (internal citation omitted). A little over a year later the Supreme Court granted certiorari. *Spokeo*, 135 S.Ct. 1892 (Apr. 27, 2015).

In the period between the Supreme Court's grant of certiorari and its eventual decision on May 16, 2016, numerous district courts were met with requests to stay actions pending the resolution by the Supreme Court of whether the plaintiffs in such cases had standing. *E.g. Strubel,* 2016 WL 1271067 at *3; *Zia v. CitiMortgage, Inc.*, 2016 WL 1230597 (S.D. Fla. Mar. 22, 2016); *Speer v. Whole Food Market Group, Inc*., 2015 WL 2061665, *1 (M.D. Fla. Apr. 29, 2015).

In each of those actions, it was clear that jurisdiction might be eroded if the Supreme Court decided that a plaintiff in a FCRA action could not establish Article III standing by alleging a bare procedural violation of the FCRA, because such a violation might not result in actual harm. However, even in light of that recognition, some district courts denied a stay, noting

...

that the grant of certiorari did not change the law and to stay the action based on a presumption that the Supreme Court would come to one outcome would not serve judicial economy. *Strubel*, 2016 WL 1271067 at *3; *Robrinzine v. Big Lots Stores, Inc.*, 2016 WL 741352 (N.D. Ill. Feb. 11, 2016); *Speer*, 2015 WL 2061665 at *1.

The district courts that did issue a stay recognized that the stay in those cases was within the discretion of the court and—generally because the actions were their early stages—would serve judicial economy. *See, e.g., In re Michaels Stores, Inc.*, 2016 WL 947150, *4 (D. N.J. Mar. 14, 2016); *Provo v. Rady Children's Hosp. San Diego*, 2015 WL 6144029, *2 (S.D. Cal. July 29, 2015). Regardless of the outcome, each of the district courts to have considered the issue recognized that the result of another case could destroy standing, considered the *Landis* factors (even if not in depth), and made clear that the issuance or denial of a stay was within that court's discretion.

This Court faces largely the same situation; determinations in the other actions could impact standing of North Fork to litigate this action. Much in the same way that the Supreme Court's grant of certiorari does not predict an outcome, the parties' decisions to pursue relief in the other actions involving the Madera parcel do not tend to indicate an outcome. The Court faces a situation where standing is—at least for the time being—established but could be eroded by a decision in another court.[5] The result of pending actions may bear upon this case. This Court must exercise its discretion to issue or decline to issue a stay. To do so the Court will consider the *Landis* factors.

B. Application of the *Landis* Factors

As noted, the Court assumes that the statutory prerequisites to filing an IGRA good faith action are jurisdiction. That assumption in mind, the Court applies the *Landis* factors.

///

///

---

[5] To be clear, this Court does not purport to consider the merits of those other actions. This Court simply finds that, at present, the Madera parcel *is* in trust for North Fork; the Governor *did* give his concurrence to the Secretary's two part determination; and the State *refused* to recognize the validity of the 2012 Compact such that it cannot be characterized as having been in effect.

11

**1. The Possible Damage Which May Result from Granting a Stay**

Chukchansi argues that it is unclear whether North Fork will face any damage at all if a stay is issued because, depending on the result of the other actions, North Fork may not be entitled to conduct gaming on the Madera parcel. It is certainly possible that no damage will result. However, that is not the focus of this inquiry. Instead, the Court looks to whether there is a "fair possibility" that a stay will "work damage" to North Fork. *Landis*, 299 U.S. at 255.

Chukchansi has filed at least two actions this year relating to Governor Brown's concurrence with the Secretary's two-part determination. *See Picayune Rancheria of Chukchansi Indians v. U.S. Dept. of the Interior*, Case No. 1:16-cv-00950-AWI, Docs. 1 & 2 (E.D. Cal. July 1, 2016). Without speaking to the merits of either action, the Court notes that the relief sought in both of those actions is inconsistent with a finding that North Fork has standing to litigate this action. *E.g.*, *Id.*, Doc. 1 at ¶ 52 ("Because the Governor's concurrence was never ratified by the California Legislature it is invalid under California law, and never went into legal effect.") Those litigations are in the infancy stages. In fact, in the action before this court, the Secretary of the Interior has yet to even file an appearance. *Id*. The Court sees no reason, if a stay is to be granted, why it would not remain in place until those newly filed cases resolve. In the interim, North Fork would be precluded from operating any gaming activity.[6] Presuming North Fork's success in defending the Tribal land status of the Madera parcel and its gaming eligibility, North Fork will have lost gaming revenue for duration of time that the stay was in place. There is more than a fair possibility of harm to North Fork if a stay is imposed. *See Lockyer*, 398 F.3d at 1112 (drawing a distinction between imposing a stay that would delay a plaintiff's potential recovery of damages for past harm, which does *not* support denial of a stay, and imposing a stay that would cause a plaintiff future economic harm, which does support denial of a stay).

///

///

---

[6] Chukchansi's reliance on *CMAX, Inc.*, 300 F.3d at 269, for the proposition that North Fork will suffer no injury is in error. In *CMAX*, the party opposing the stay sought only monetary damages for past injuries. The Ninth Circuit noted that delay of recovery of a fixed amount of monetary damages or discovery of adverse evidence do not constitute the kind of prejudice that justifies denial of a stay. *Id*. In this instance, staying the proceedings would preclude gaming activity on the Madera parcel going forward. That is a distinct and cognizable harm.

**2. The Hardship or Inequity Which May Be Suffered Due to the Action Moving Forward**

The Court considers whether to impose a stay *sua sponte*. As a result, there is no party "seeking the stay" that would suffer hardship or inequity. That said, Chukchansi is a proponent of the stay and the Court will consider the impact on Chukchansi if this Court declines to impose a stay and, more generally, the inequity that could result if the Court declined to issue a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d at 1112 (Once a showing is made 'that there is even a fair possibility that the stay … with work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'")

The principal potential inequity in this situation is that North Fork will be authorized to conduct gaming on land that could be determined to be (1) not Indian land or (2) otherwise not eligible for gaming. If either of those determinations is made in the other actions, any gaming being conducted will stop on the Madera parcel. Reversal of the Madera parcel's designation as Indian land or the Secretary's two-part determination would constitute independent barriers to gaming on the Madera parcel—as North Fork recognizes. If such a reversal takes place, at most, this Court's refusal to issue a stay would have allowed gaming on the Madera parcel between the date that gaming takes place on the Madera parcel and the date of resolution of the action reversing either or both of those determinations. Moreover, the Courts in the other actions—each of which are in better positions to assess the validity of the claims before them than this court—could (as the court did in the District of Columbia Action) craft restrictions on construction or gaming at the Madera parcel until the issue is finally resolved.

Chukchansi has presented only one argument to suggest that non-issuance of a stay will cause hardship to party or non-party to this action. It contends that without a stay the Department of the Interior may waste its time producing procedures that may be a nullity. The Department of the Interior has already issued such procedures. Chukchansi's argument is now moot. The Court can see no other hardship that would result from non-issuance of a stay.

In short, any possible inequity that would result from this Court's refusal to issue a stay would be relatively short in time and could be mitigated by the courts presiding over the other

actions to the extent that those courts see fit. The potential inequity that may result in allowing the action to move forward is not so clear or substantial as to require a stay.

### 3. The Orderly Course of Justice

In considering whether a stay would advance the orderly course of justice the court considers whether delaying the action pending resolution of the other actions would simplify any of the questions to be resolved in this action. *CMAX, Inc.*, 300 F.2d at 268. Everything that IGRA permits the Court to determine has been determined. With the issuance of secretarial procedures on July 29, 2016, the process set out by IGRA has been completed. Issuance of a stay would not promote judicial efficiency and would place a potentially lengthy hold on the carefully constructed timeframe set by IGRA.

### 4. Likelihood that the Other Proceedings Will Conclude Within a Reasonable Time

As noted, at least two of the actions that may bear upon this case are in very early stages. The Court will not attempt to estimate the amount of time that resolution of those matters will take at the trial court level, much less on appeal. Suffice it to say that finality is not in sight. Issuance of a stay in this action could extend by years proceedings that are now complete. In light of the statutorily set timeline for IGRA good faith actions, *see* 25 U.S.C. § 2710(d)(7), a potentially lengthy stay of this action is not reasonable. *See Leyva*, 593 F.3d at 864 ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."); *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1160 (9th Cir. 2015) (IGRA was passed in part "to provide 'a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments….'") The likely delay also weighs against imposition of a stay.

### 5. Conclusion

Based on the above application of the *Landis* factors, the Court will exercise its discretion to decline to issue a stay.

///

///

## V. Order

Based on the foregoing, the Court DECLINES to issue a stay.

This Order terminates this action in its entirety. The Clerk of the Court is respectfully directed to close this case.

IT IS SO ORDERED.

Dated:   August 9, 2016                                    _____
                                                                               SENIOR  DISTRICT  JUDGE